UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WHITMAN & COMPANY, INC.,<br>      Plaintiff,<br>  v.<br>LONGVIEW PARTNERS (GUERNSEY) LIMITED,<br>LONGVIEW PARTNERS LLP,<br>      Defendants. | CIVIL ACTION<br>NO. 1:14-cv-12047 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
LONGVIEW PARTNERS (GUERNSEY) LIMITED'S
<u>MOTION TO DISMISS COUNTS VIII AND IX OF THE COMPLAINT</u>**

Patrick J. O'Toole, Jr. (BBO #559267)
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, MA 02110
Tel.: (617) 772-8300
Fax: (617) 772-8333
Email: patrick.otoole@weil.com

David R. Fertig
Allen Yancy
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
Email: david.fertig@weil.com
Email: allen.yancy@weil.com

*Counsel for Longview Partners (Guernsey)
Limited*

Defendant Longview Partners (Guernsey) Limited ("Longview Guernsey") respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss Counts VIII and IX of the Complaint that was filed on May 7, 2014 in the above-captioned action (the "Complaint") by Plaintiff Whitman & Company, Inc. ("Whitman").

## PRELIMINARY STATEMENT

In its Complaint, Whitman purports to assert contract-based and quasi-contractual claims against Longview Guernsey on account of its supposed failure and refusal to pay amounts allegedly owed to Whitman under an agreement, styled as an "Exclusive Agency Agreement," dated January 1, 2006 and amended on or about January 31, 2007 (the "Agreement"). Whitman's duties under the Agreement involved the identification of, and procurement of introductions to, prospective clients of Longview Guernsey. Although Longview Guernsey disputes Whitman's breach of contract claims and believes such claims have no merit, there is no dispute that Longview Guernsey and Whitman entered into the Agreement and later amended that Agreement. Thus, for purposes of this motion, Longview Guernsey is not moving to dismiss Whitman's breach of contract claims. Longview Guernsey, however, hereby moves to dismiss Count VIII (unjust enrichment) and Count IX (implied covenant of good faith and fair dealing) because such claims fail as a matter of law.

First, the undisputed existence of the Agreement between the parties requires dismissal of Whitman's unjust enrichment claim. The very existence of the Agreement prohibits Whitman from seeking recovery on a quasi or implied contract theory such as unjust enrichment. Because Whitman has an available remedy at law for its alleged claims for breach of the Agreement, there is no basis in the law for Whitman to seek recovery on equitable principles such as unjust enrichment. Moreover, in order to establish a right to unjust enrichment, Whitman necessarily would need to rely on an implied contract theory and not the parties' written Agreement. The

Massachusetts Statute of Frauds, however, expressly bars implied contract claims for compensation arising from an undertaking to identify or procure introductions to prospective purchasers. Thus, Whitman's unjust enrichment claim is fatally flawed and should be dismissed.

Whitman's claim for the breach of the covenant of good faith and fair dealing also fails as a matter of law. To properly plead such a claim under Massachusetts law, a party is required to plead more than a simple breach of contract. Rather, the law requires additional factual allegations that a party unfairly leveraged the contract to achieve unfair economic advantage. Whitman's complaint, however, merely claims an alleged breach of contract and is utterly devoid of the required additional factual allegations for such a claim. Accordingly, Whitman's claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

## FACTUAL BACKGROUND[1]

### A. The Agreement Between Whitman and Longview Guernsey

According to the Complaint, "[o]n January 1, 2006, Whitman entered into [the Agreement] with Longview Guernsey, which is the contract under which Whitman's claims arise in this case." Compl. ¶ 7. The Agreement originally was signed only by R. Eugene Whitman ("Mr. Whitman") on the one hand and Longview Guernsey on the other hand (acting by and through Anthony LeTissier and Philip Corbet, its Managing Director and Office Manager, respectively). *See* Compl., Ex. A at 1, 6.

Pursuant to the terms of the Agreement, Longview Guernsey retained Mr. Whitman to assist it in soliciting prospective investment advisory clients for itself and its affiliate, Longview

---

[1] Because, on a motion to dismiss, the properly pleaded facts of the Complaint must be accepted as true, *see Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013), the facts set forth below are taken from the allegations in Whitman's Complaint, as well as from documents "central to [Whitman's] claims" and "sufficiently referred to in the [C]omplaint," including the alleged Agreement, which is annexed as Exhibit A thereto. *See Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 164 (D. Mass. 2013); *see also Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013) ("We may supplement those factual allegations by examining 'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice'"). Longview Guernsey accepts these facts as true solely for purposes of the instant motion to dismiss, however, and for no other purpose.

Partners LP ("Longview LP").[2] Indeed, pursuant to the express terms of the Agreement, "Longview Partners (Guernsey) Limited … retained R. Eugene Whitman … to serve as exclusive marketing agent in connection with the solicitation of prospective investment advisory clients for Longview Partners (Guernsey) Limited and Longview Partners LP" in the United States, Canada and Bermuda. *See id.* at 1. The services that Mr. Whitman was to perform as "exclusive marketing agent," in turn, were specifically set forth in the Agreement.

As set forth in Section 1 of the Agreement and as alleged in Whitman's Complaint, the services that Mr. Whitman was to perform "consist[ed] of marketing the Advisory Services and arranging meetings at which principals of [Longview Guernsey] and/or [Longview Partners LP] w[ould] make presentations concerning the Advisory Services to Prospective Clients who, in Whitman's best judgment, will consider committing capital to the Advisory Services." *See id.* at 1, § 1. In addition, Mr. Whitman was to "provide follow-up to all such presentation meetings and such additional assistance to [Longview Guernsey] and [Longview Partners LP] in connection therewith as shall be agreed upon." *Id.*; *see also* Compl. ¶ 10 ("In this position, Whitman was responsible for performing Agency Services, including introducing prospective investors … to Longview [LP]'s investment management and advisory services, arranging meetings between Longview Guernsey and/or Longview [LP] and Prospective Clients, [and] providing follow-up to all meetings and such additional assistance to Longview Guernsey and/or Longview [LP] as might be needed.").

In return, it is alleged, "any investment made by any [Prospective Client] that was introduced by Whitman triggered Agency Fees due to Whitman under the Agreement," with such fees to be "calculated as a percentage of the Management Fees received by Longview" and paid

---
[2] Longview LP is not named as a defendant in this action.

to Whitman "over the course of a five-year period [ ] commenc[ing] 'on the date(s) on which such Clients placed assets under the management of Longview." *See* Compl. ¶¶ 11, 12.

According to the Complaint, "[o]n January 31, 2007, the Agreement was amended to substitute Whitman as the sole contracting party following the death of [Mr. Whitman], President of Whitman & Co." *See id.* ¶ 8. The Amendment expressly provides that, apart from the substitution of Whitman for Mr. Whitman as Longview Guernsey's contracting counterparty, "[a]ll other terms and conditions of the Agreement shall remain in full force and effect without modification." *Id*. The Agreement was terminated effective December 31, 2010. *See id.* ¶ 9.

### B. The Breach of Contract Claims

The Complaint alleges that "Whitman introduced the Defendants to at least seven (7) current Clients of Longview," including Pfizer, Inc. ("Pfizer"), Deseret Mutual Insurance Company ("Deseret Mutual"), Utah Retirement Systems ("Utah"), North Carolina Retirement Systems ("NCRS"), Maryland State Retirement and Pension System ("Maryland"), Washington State Investment Board ("WSIB") and the Public Retirement System of Idaho ("PERSI"). *See* Compl. ¶¶ 16, 18, 24, 30, 36, 44, 49, 59. Moreover, the Complaint alleges that each of these seven clients subsequently invested funds with Longview, *id*. ¶¶ 19, 25, 31, 38-39, 45, 55, 63, and that Whitman "made written demand … for payment of the amounts owed under the Agreement" in respect of each of these clients. *See id.* ¶¶ 23, 29, 35, 43, 48, 58, 66. The Complaint contends, however, that in "violation of the Agreement," *id*. ¶¶ 21, 27, 33, 41, 46, 56, 64, Longview Guernsey "failed to make each of the contractually required Agency Fee payments owed [allegedly] to Whitman." *See id.* ¶¶ 72, 79, 86, 93, 100, 107, 114. The Complaint therefore prays for judgment against Longview Guernsey on seven separate counts of breach of

the Agreement. *See id.* ¶¶ 68-74 (Count I); ¶¶ 75-81 (Count II); ¶¶ 82-88 (Count III); ¶¶ 89-95 (Count IV); ¶¶ 96-102 (Count V); ¶¶ 103-109 (Count VI); ¶¶ 110-116 (Count VII).[3]

### C. The Breach of the Covenant of Good Faith and Fair Dealing Claim

In addition to asserting seven counts of breach of contract, Whitman also purports to assert one claim for breach of the implied covenant of good faith and fair dealing. Indeed, contending that "[t]he Agreement is a valid and enforceable contract which contained an implied covenant of good faith and fair dealing," the Complaint asserts that Longview Guernsey breached the implied covenant by "refus[ing] to compensate Whitman." *See* Compl. ¶¶ 123, 124 (Count IX). Notably, however, Whitman offers no additional factual allegations in support of its purported implied covenant claim beyond those pled in support of Whitman's purported breach of contract claims. Indeed, Whitman's claim for breach of the covenant of good faith and fair dealing is based *only* on the allegation that "[b]y failing to pay all amounts currently due and … repudiating the Agreement … without any factual or legal basis to do so, [Longview Guernsey] ha[s] breached the implied covenant of good faith and fair dealing owed to Whitman." *Id.* ¶ 125. Whitman quite conspicuously does *not* allege any bad faith by Longview Guernsey or any attempt by Longview Guernsey to leverage the contract for undue economic advantage.

### D. The Unjust Enrichment Claim

Finally, in spite of its insistence that the Agreement constitutes "a valid and enforceable contract" which governs Whitman's alleged right to payments—and in spite of its admission that all of its claims "arise under" the Agreement, *see* Compl. ¶ 7—Whitman purports to assert against Longview Guernsey a claim sounding in unjust enrichment. *See id.* ¶¶ 117-121 (Count VIII). Like Whitman's purported implied covenant claim, however, this claim is based upon *the*

---

[3] Although Longview Guernsey does not, through this motion, presently seek the dismissal of Whitman's breach of contract claims, Longview Guernsey specifically denies that they have any merit or that Longview Guernsey owes Whitman any payment whatsoever, under the Agreement or otherwise.

*very same set of facts* as Whitman's purported breach of contract claims, and seeks payment for monies allegedly owed under the Agreement. Indeed, Whitman's unjust enrichment claim is expressly premised on the allegation that "Whitman provided the Longview Defendants with introductions to Pfizer, Deseret Mutual, Utah [ ], [NCRS], Maryland[ ], W[SIB], and P[ERSI]," but that Longview Guernsey failed to "fully compensat[e] Whitman *under the terms of the Agreement.*" *See id.* ¶¶ 118-119 (emphasis added). Whitman's purported unjust enrichment claim, therefore, simply represents another attempt by Whitman to recover purported finder's fees allegedly owing under the Agreement, albeit under a theory of implied or quasi-contract—a fact which is unambiguously confirmed by Whitman's own allegation that the Agreement "*is the contract under which Whitman's claims arise in this case.*" *Id.* ¶ 7 (emphasis added).

## ARGUMENT

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). This does not mean, however, "that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

Here, as demonstrated in Point I below, the factual allegations within the Complaint make clear that any entitlement to payment that Whitman may possess is governed by the

express terms of the Agreement, a written contract that, if Whitman's claims are meritorious, necessarily would afford Whitman an "adequate remedy at law." Accordingly, Whitman has not stated—and cannot possibly state—an essential element of an equitable unjust enrichment claim: namely, the absence of an express written contract and an adequate remedy at law. *See Cooper v. Charter Commc'ns., Inc.*, 945 F. Supp. 2d 233, 244 (D. Mass. 2013) (dismissing plaintiff's unjust enrichment claim because service agreements governed the relationships between the parties). Accordingly, Count VIII of Whitman's Complaint must be dismissed.

Moreover, as explained in Point II below, the Complaint is bereft of any factual allegation that Longview Guernsey has in bad faith unfairly sought to leverage any terms of the Agreement for undue economic advantage, a "material element necessary to sustain recovery" under a theory of the breach of the implied covenant of good faith and fair dealing. Accordingly, Whitman has failed to plead an essential element of the claim for breach of the implied covenant of good faith and fair dealing, and Count IX of the Complaint must likewise be dismissed. *See Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 226–29 (D. Mass. 2005) (dismissing plaintiff's claim for violation of the covenant of good faith and fair dealing where plaintiff did not allege her contract was breached in bad faith or for any reason other than budgetary and fiscal constraints).

## I. WHITMAN HAS FAILED TO ALLEGE, AND CANNOT POSSIBLY PLEAD, A VIABLE CLAIM SOUNDING IN UNJUST ENRICHMENT

As discussed more specifically below, Whitman's claim of unjust enrichment (Count VIII) fails as a matter of law because unjust enrichment is an equitable remedy that is available only when there is no contract governing the plaintiff's alleged right to remuneration. Here, Whitman's own allegations make crystal clear that any compensation allegedly owed to it would

be due under, and governed by, the terms of the Agreement between Whitman and Longview Guernsey.

Moreover, and in all events, the Massachusetts Statute of Frauds expressly bars any claim sounding in quasi-contract—such as a claim for unjust enrichment—when, as here, the plaintiff's claim relates to an alleged right to compensation for "broker" or "finder" services, or other services involving the identification of, and procurement of introductions to, prospective clients for the defendant.

### A. Whitman's Unjust Enrichment Claim Is Foreclosed By The Existence Of An Express Written Contract Which *Admittedly* Governs Whitman's Alleged Entitlement To Payment

Under Massachusetts law, "[t]o satisfy the elements of unjust enrichment, a plaintiff must show: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification *and* (5) *the absence of a remedy provided by law*." *Mass. v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (emphasis added). Accordingly, unjust enrichment is an equitable claim that is only available "to plaintiffs who lack adequate remedies at law." *Ruiz v. Bally Total Fitness Holding Corp.*, 447 F. Supp. 2d 23, 29 (D. Mass. 2006), *aff'd*, 496 F.3d 1 (1st Cir. 2007); *Cooper*, 945 F. Supp. 2d at 244; *see also Stone v. White*, 301 U.S. 532, 534 (1937).

Indeed, it is well-settled that, under the theory of unjust enrichment, "[t]he law creates an obligation under a quasi or implied contract theory for the reasons of justice." *Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404, 423 (D. Mass. 1995) (internal citation omitted). "Where there is an existing express contract, however, the law will not imply a contract. Accordingly, there is no basis for recovery on equitable principles where the express contract covers the same subject matter." *Cooper*, 945 F. Supp. 2d at 244 (citations omitted); *see also Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006) ("Massachusetts

law does not allow litigants to override an express contract by arguing unjust enrichment."), *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 162 (1st Cir. 2005) ( "[T]he existence of a valid express contract between the parties … bars the application of the equitable doctrines ….").

Here, Whitman's own Complaint *affirmatively alleges* that its entitlement to payment (if any) from Longview Guernsey arises under, and is governed by, the express terms of the written Agreement between Whitman and Longview Guernsey. Indeed, Whitman alleges that it served as "exclusive marketing agent" for Longview Guernsey "*[p]ursuant to Section 1 of the Agreement*," and that, "[i]n this position, Whitman was responsible for … introducing prospective investors … to Longview's investment management and advisory services [and] arranging meetings between Longview Guernsey and/or Longview and Prospective Clients." *See* Compl. ¶¶ 9-10. And Whitman further alleges that "any investment made by any [Prospective Client] that was introduced by Whitman triggered Agency Fees due to Whitman *under the Agreement*." *Id.* ¶ 11 (emphasis added). In fact, Whitman specifically alleges that its purported right to compensation in respect of any client introductions it may have made to Longview Guernsey is a right that exists "*pursuant to Section 4 of the Agreement*." *Id.* ¶ 12 ("*Pursuant to Section 4 of the Agreement,* Longview Guernsey is required to pay Whitman Agency Fees over the course of a five year period, which commences 'on the date(s) on which such Clients place assets under the management of Longview." (emphasis added)).[4]

Moreover, Whitman's unjust enrichment claim is expressly premised on the allegation that "Whitman provided the Longview Defendants with introductions to Pfizer, Deseret Mutual,

---

[4] *See also, e.g.*, Compl. ¶¶ 21, 27, 33, 41 (alleging that, "*in violation of the Agreement*, Defendants failed to make the required quarterly Agency Fee payment" (emphasis added)); *id.* at ¶¶ 46, 56, 64 (alleging that "Defendants have failed to make any Agency Fee payments to Whitman … *which is in direct violation of the Agreement*" (emphasis added)); *id.* at ¶¶ 23, 29, 35, 43, 48, 58, 66 (alleging that "Whitman made written demand on the Defendants for payment of the amounts owed *under the Agreement*" (emphasis added)).

Utah [ ], [NCRS], Maryland[ ], W[SIB], and P[ERSI]," but that the "Longview Defendants" failed to "fully compensat[e] Whitman *under the terms of the Agreement*." *See* Compl. ¶¶ 118-119 (emphasis added). In fact, Whitman affirmatively alleges that all of its claims—including its purported unjust enrichment claim—"arise under" the Agreement. *See id.* ¶ 7 ("On January 1, 2006, Whitman entered into an Exclusive Agency Agreement (the 'Agreement') with Longview Guernsey, *which is the contract under which Whitman's claims arise in this case*." (emphasis added)).

Because Whitman's Complaint clearly sets forth that a valid contract governs the subject matter of the dispute, his unjust enrichment necessarily fails. *See Ruiz*, 447 F. Supp. 2d at 29 (dismissing a claim of unjust enrichment because a valid contract existed between the plaintiff and defendants); *Okmyansky*, 415 F.3d at 162 (holding that the existence of an express contract forecloses the applicability of equitable claims).[5]

### B. Whitman's Unjust Enrichment Claim Is Also Barred By The Statute of Frauds

In addition to being barred by the existence and terms of the express, written Agreement, Whitman's purported unjust enrichment claim is also barred by the Massachusetts Statute of Frauds because "the statute expressly precludes equitable relief." *FranCounsel Grp., LLC v. Dessange Int'l, SA*, 980 F. Supp. 2d 1, 6 (D. Mass. 2013). General Law ch. 259, § 7, Massachusetts' Statute of Frauds, specifically provides that:

> [a]ny agreement to pay compensation for service as a broker or finder or for service rendered in negotiating … the purchase, sale or exchange of a business, its good will, inventory, fixtures, or an interest therein … shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized.

---

[5] Significantly, while Longview Guernsey denies Whitman's entitlement to compensation under terms of the Agreement, "[t]he disposition of [the claims at law] is irrelevant. Their mere availability is a bar to a claim of unjust enrichment." *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass 2010). "Quasi-contract claims are not back-up claims, available to Plaintiffs where their contract claims fail. Once a contract is established, '[t]here is no room for an implied contract.'" *Cooper*, 945 F. Supp. 2d at 244 (internal citations omitted).

G.L. ch. 259, § 7 (West 1984). And significantly, the Statute of Frauds further expressly declares that:

> *The provisions of this section apply to a contract implied in fact or in law to pay reasonable compensation.*

*Id.* (emphasis added). Thus, courts applying Massachusetts law repeatedly have held that a plaintiff claiming an entitlement to compensation on account of "broker," "finder," or other services that fall within the ambit of the Statute of Frauds may not obtain recovery under a theory of unjust enrichment. For, unjust enrichment claims—like other claims sounding in quantum meruit and promissory estoppel—are "quasi-contract" claims that are based on contracts "implied in law." *See, e.g.*, *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 54 (1st Cir. 2007) ("Under Massachusetts law, a quasi-contract may be implied in law to remedy the unjust enrichment of another party, even where the facts do not necessarily support the existence of an express or implied-in-fact contract."). *See also State Tax Auditing & Research, Inc. v. Waters Corp.*, No. 98-2594-B, 2000 WL 782948, at *3 (Mass. Super. Ct. Apr. 5, 2000) (dismissing tax consulting firm's unjust enrichment claim, which demanded a finder's fee in respect of firm's allegedly successful efforts to identify a refund opportunity for defendant, on ground that "the plain language of G.L.c. 259, § 7 makes clear that not only must 'any agreement to pay compensation for services as a finder,' be in writing, but [that] 'contract[s] implied in fact or law to pay reasonable compensation,' *i.e.* [] claims based on unjust enrichment or quantum meruit, are barred").[6]

---

[6] *See also FranCounsel*, 980 F. Supp. 2d at 3, 6 (dismissing unjust enrichment claim, which sought to recover "compensation for introducing [defendants] and facilitating their initial meetings" under an alleged promise by the defendants' principals to pay the plaintiff a percentage of fees paid and received under their agreement "in the event that FranCounsel's services 'led to the conclusion of a business partnership,'" because, "[a]t most, [plaintiff] had a contract implied in law or fact, and the statute expressly precludes equitable relief"); *Mentuck*, 2013 WL 783050 at *5 (noting that the plaintiff's breach of contract, implied covenant and unjust enrichment claims all "fall together" "because the statute of frauds applies to contracts 'implied in fact or in law'" and "failure to satisfy the statute is

Here, there is (and can be) no genuine dispute that the services which are alleged to be the subject of the Agreement—and for which Whitman now seeks compensation—fall squarely within the ambit of the Statute of Frauds. As this Court noted just last year, for instance, "[a] 'broker' is '[a]n agent who acts as an intermediary or negotiator, esp[ecially] between prospective buyers and sellers,'" and "[a] 'finder' is [a]n intermediary who brings parties together for a business opportunity." *Michael A. Mentuck & Assocs., Inc. v. Lloyds Underwriting Syndicate No. 1209*, CIV.A. 11-10118-GAO, 2013 WL 783050, at *3 (D. Mass. Feb. 28, 2013).[7]

Thus, where a plaintiff claims an entitlement to compensation arising from efforts to "obtain a good faith offer to purchase [the defendant's] product from bona fide purchasers" or to "facilitate the sale thereof," the plaintiff's claim "f[a]ll[s] squarely within the bounds of the statute of frauds." *Id.* at *1, *3–4 ( "The agreement, or agreements, forming the basis of Mentuck's claims allegedly contemplated Mentuck receiving compensation for identifying a prospective buyer of the [defendant's] seafood, 'facilitat[ing] the sale' of the seafood, or negotiating the terms under which a potential buyer would agree to acquire the seafood.").

Moreover, "[t]he statute of frauds … encompasses more than just brokers and finders. It also extends to 'service rendered in negotiating … the purchase, sale or exchange of a business

---

[therefore] fatal to both breach of contract and quantum meruit claims"); *Cantell v. Hill Holliday Connors Cosmopulos, Inc.*, 55 Mass. App. Ct. 550, 552, 772 N.E.2d 1078, 1081 (2002) ("We conclude that [plaintiff's] contract and quantum meruit claims are thus barred by the Statute of Frauds because no contract was signed by [defendant]."); *N. E. Technical Sales. Inc. v. Barshad*, No. 99-1427, 2000 WL 1252184, at *5 (Mass. Super. Ct. Aug. 14, 2000) (dismissing unjust enrichment/quantum meruit claim pursuant to which exclusive sales representative sought a 20% sales commission on all sales of defendant's products ordered within its exclusive territory, noting that "General Law c. 259, § 7 … applies to 'a contract implied in fact or in law" and that "[c]ourts have held that claims of promissory estoppel and quantum meruit are included in this category and that recovery on such claims is therefore barred by statute"); *Cox v. Thornton Assocs., Inc.*, No. Civ. A. 97-00718, 1998 WL 470508, at *3, n.2 (Mass. Super. Ct. Aug. 4, 1998) (same).

[7] *See also Cantell*, 55 Mass. App. Ct. at 553, 772 N.E.2d at 1082 ("A broker is '[a]n agent who acts as an intermediary or negotiator, esp[ecially] between prospective buyers and sellers; a person employed to make bargains and contracts between other persons in matters of trade, commerce, and navigation.' A finder is '[a]n intermediary who brings together parties for a business opportunity… A finder differs from a broker-dealer because the finder merely brings two parties together to make their own contract, whole a broker-dealer usu[ally] participates in the negotiations.'" (internal citations omitted)) (quoting Black's Law Dictionary 187, 686 (7th ed. 1999)).

[or component elements thereof].'" *Id.* at *3 (internal citations omitted). Indeed, the statute literally extends to any service rendered in "negotiating … the purchase, sale or exchange of a business, its good will, inventory, fixtures, or an interest therein," *id.*, and the statute further expressly provides that:

[f]or the purpose of this section, the term "negotiating" shall include *identifying prospective parties*, providing information concerning prospective parties, *procuring an introduction to a party to the transaction* or *assisting in the negotiation or consummation of the transaction*.

Mass. Gen. Laws ch. 259, § 7 (emphases added). Any claim for compensation arising from an alleged contractual undertaking to *identify or procure introductions to prospective purchasers* of another's business or offerings, therefore, necessarily must satisfy the Statute of Frauds.[8]

By Whitman's own allegations, the services that Whitman was to perform under the Agreement (and for which Whitman now seeks compensation) consisted of the identification of, and procurement of introductions to, prospective clients of Longview Guernsey. Indeed, as unambiguously set forth in the Agreement, Whitman was retained "to serve as exclusive marketing agent *in connection with the solicitation of prospective investment advisory clients* for Longview Guernsey and Longview [LP]," and its role in that capacity "consist[ed] of … *arranging meetings* at which principals of [Longview Guernsey] and/or [Longview Partners LP] w[ould] make *presentations concerning the Advisory Services to Prospective Clients* who, in

---

[8] *See, e.g.*, *FranCounsel*, 980 F. Supp. 2d at 5 (business development advisor's claim that it was entitled to compensation for "introducing" Massachusetts companies to French companies that acquired them was subject to Statute of Frauds where advisor claimed that it "introduc[ed] the French and Massachusetts defendants and [ ] facilitat[ed] their initial meetings"); *Adelson v. Hananel*, 1:04-CV-10357, 2009 WL 5905389, at *5–6 (D. Mass. Feb. 24, 2009)(defendant was "clearly seeking compensation for services as a 'finder' within the meaning of the statute," and his claim for compensation was thus subject to the Statute of Frauds, where, "[i]n his own words, [the alleged] contract provided him with 12% options [if] he identif[ied] an investment opportunity in which [plaintiff] ultimately invest[ed]"); *Bay Colony Marketing Co. v. Fruit Salad, Inc.*, 41 Mass. App. Ct. 662, 672 N.E.2d 987 (1996) (Statute of Frauds applied and compelled directed verdict against food broker on its claim for compensation under an alleged agreement pursuant to which food seller "agreed actively to solicit new accounts and sales territories for the seller's food products … in return for the seller's payment of a commission equalling [sic] three percent of the amount of its gross sales as so placed").

13

Whitman's best judgment, will consider committing capital to the Advisory Services." *See* Compl., Ex. A at 1 & § 1 (emphasis added). In fact, in Whitman's own words, "Whitman was responsible for … *introducing prospective investors* … to Longview's management and advisory services, *arranging meetings between Longview Guernsey and/or Longview [LP] and Prospective Clients*, [and] providing follow-up to all meetings and such additional assistance to Longview Guernsey and/or Longview [LP] as might be needed." *See* Compl. ¶ 10 (emphasis added).

Moreover, Whitman's claim of entitlement to compensation—including in the purported unjust enrichment Count of the Complaint—is expressly grounded in Whitman's contention that it "*introduced the Defendants to at least seven (7) current Clients*" and that "*any introduction by Whitman* during the term of the Agreement … trigger[ed] Agency Fees owed to Whitman." *Id.* ¶¶ 15-16; *see also id.* ¶¶ 70, 77, 84, 91, 98, 105, 112, 118, 124. There can thus be no doubt that Whitman's claims are subject to the requirements of Mass. Gen. Laws ch. 259, § 7. Indeed, Count VIII of the Complaint is expressly premised on the allegation that "Whitman provided the Longview Defendants with introductions to Pfizer, Deseret Mutual, Utah [ ], [NCRS], Maryland[ ], W[SIB], and P[ERSI]," but that Longview Guernsey failed to "fully compensat[e] Whitman under the terms of the Agreement." *See id.* ¶¶ 118-119. Accordingly, Whitman's purported unjust enrichment claim clearly seeks "compensation for service as a broker or finder" or for "service rendered in negotiating … the purchase, sale or exchange of a business [or component elements thereof]" within the meaning of the Statute of Frauds and that, as a result, Count VIII must be dismissed as barred by the Massachusetts Statute of Frauds.

## II. WHITMAN FAILS TO ADEQUATELY ALLEGE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Whitman's claim for breach of the covenant of good faith and fair dealing (Count IX) also fails as a matter of law because Whitman has not pled any of the separate and distinct requirements for such a claim. "Conceptually, claims for breach of the implied covenant of good faith and fair dealing are distinct from simple breach of contract claims and require additional factual allegations of unfairly leveraging the contract terms for undue economic advantage." *Christensen*, 360 F. Supp. 2d at 229. "A mere finding that there was no 'good' reason for the termination in the absence of other indicia of lack of honesty or taking unfair advantage; or bad faith, is insufficient to support a claim [for breach of the covenant of good faith and fair dealing]." *Piantes v. Pepperidge Farm, Inc.*, 875 F. Supp. 929, 938 (D. Mass. 1995).

Whitman's breach of the covenant of good faith and fair dealing claim fails as a matter of law because the Complaint does not contain *any* factual allegations that Longview Guernsey unfairly levered the contract terms for undue economic advantage or acted in bad faith. *See* Compl. ¶¶ 122-126. In fact, with one exception, Whitman's breach of contract claims and good faith and fair dealing claims are nearly identical. *Compare id.* ¶¶ 72-74, 79-81, 86-88, 93-95, 100-102, 107-109, 114-116 (asserting claims for breach of contract) *with* ¶¶ 124-126. The only material difference between Whitman's breach of contract claims and its breach of the covenant of good faith and fair dealing claim is that, in its claim for breach of the covenant of good faith and fair dealing, Whitman alleges that "Defendants" terminated the contract "without any factual or legal basis to do so." *Id.* ¶ 125 ("By failing to pay all amounts currently due and by repudiating the Agreement for all amounts which will be due in future calendar quarters, and without any factual or legal basis to do so, Defendants have breached the implied covenant of good faith and fair dealing owed to Whitman."). But that is not enough to state a claim for

breach of the implied covenant of good faith and fair dealing. As this Court has recognized, simply asserting that "there was no good reason" for terminating a contract is insufficient as a matter of law to establish a breach of the covenant of good faith and fair dealing. *See Piantes*, 875 F. Supp. at 938 ("A mere finding that there was no 'good' reason for the termination in the absence of other indicia of lack of honesty or taking unfair advantage; or bad faith, is insufficient to support a claim. In a word, the absence of good cause is not the equivalent of absence of good faith."). As a result, Whitman's good faith and fair dealing claim fails as a matter of law and must be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, this Court should dismiss Counts VIII and IX of Whitman's Complaint without leave to amend.

Dated: July 15, 2014

Respectfully submitted,

  /s/  Patrick J. O'Toole, Jr.
Patrick J. O'Toole, Jr. (BBO #559267)
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, MA 02110
Tel.: (617) 772-8300
Fax: (617) 772-8333
patrick.otoole@weil.com

David R. Fertig
Allen Yancy
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
david.fertig@weil.com
allen.yancy@weil.com

*Counsel for Longview Partners (Guernsey) Limited*

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Counsel for defendant hereby certifies that they conferred with counsel for plaintiff on July 15, 2014, and were unable to resolve or narrow the issues raised in this motion.

/s/ Patrick J. O'Toole, Jr.

## CERTIFICATE OF SERVICE

I, Patrick J. O'Toole, hereby certify that on the 15th day of July, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification and that I served the foregoing by mail upon any counsel of record not receiving electronic notification:

William L. Prickett, Esq.
Anne V. Dunne, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800
wprickett@seyfarth.com
adunne@seyfarth.com

    /s/ Patrick J. O'Toole, Jr.