UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WHITMAN & COMPANY, INC.,<br>                   Plaintiff,<br>    v.<br>LONGVIEW PARTNERS (GUERNSEY) LIMITED,<br>LONGVIEW PARTNERS LLP,<br>                   Defendants. | CIVIL ACTION<br>NO. 1:14-cv-12047 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT LONGVIEW PARTNERS LLP'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

Patrick J. O'Toole, Jr. (BBO #559267)
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, MA 02110
Tel.: (617) 772-8300
Fax: (617) 772-8333
Email: patrick.otoole@weil.com

David R. Fertig
Allen Yancy
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
Email: david.fertig@weil.com
Email: allen.yancy@weil.com

*Counsel for Longview Partners LLP*

Defendant Longview Partners LLP ("Longview LLP") respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss the Complaint that was filed on May 7, 2014 in the above-captioned action (the "Complaint") by Plaintiff Whitman & Company, Inc. ("Whitman").

## PRELIMINARY STATEMENT

In its Complaint, Whitman purports to assert contract-based and quasi-contractual claims against Longview LLP on account of its supposed failure and refusal to pay amounts allegedly owed to Whitman under an alleged agreement, styled as an "Exclusive Agency Agreement," dated January 1, 2006 and amended on or about January 31, 2007 (the "Agreement"). Yet, as Whitman's own Complaint readily admits, Longview LLP is not—and never was—a party to that Agreement, and it neither requested nor offered to pay Whitman for any services provided thereunder. Rather, as Whitman's Complaint unequivocally confirms, the only party to the alleged Agreement—the admitted "contract under which [all of] Whitman's claims arise in this case"—was Longview Partners (Guernsey) Limited ("Longview Guernsey"), an entity which, while an affiliate of Longview LLP, is a separate and legally distinct entity. *See* Compl. ¶ 7.

Indeed, Whitman's Complaint affirmatively alleges that Longview LLP is a U.K. limited liability partnership which maintains its principal place of business in London, England, and that Longview Guernsey is a separate and distinct Guernsey registered company with a principal place of business in St. Peter Port, Guernsey. *See id.* ¶¶ 2-3. And Whitman's Complaint further expressly admits that "Whitman entered into the [Agreement] with *Longview Guernsey*." *See id.* ¶ 7. Whitman thus cannot possibly assert claims sounding in breach of contract or breach of the implied covenant of good faith and fair dealing against Longview LLP because Whitman has not pled—and cannot possibly plead—essential elements of such claims: namely, the existence

of a valid and enforceable contract between Whitman and Longview LLP and a breach by Longview LLP of payment obligations thereunder.

Moreover, because Whitman has not alleged (and cannot possibly allege) the existence of any written agreement *signed by Longview LLP*, *all* of Whitman's purported claims against Longview LLP—including its unjust enrichment claim—are barred by G.L. ch. 259 § 7, the Massachusetts Statute of Frauds. Indeed, the Massachusetts Statute of Frauds expressly precludes any claim arising out of an agreement, such as the one alleged by Whitman, to pay compensation for service as a broker or finder *unless such agreement is in writing and signed by the party to be charged*. *See* Mass. Gen. Laws Ann. ch. 259, § 7. It thus prohibits reliance not only on the purported Agreement but on any theory of quasi-contract, or "implied agreement," as a basis for recovering from Longview LLP the finder's or brokers' fees claimed to be due and payable. Accordingly, Longview LLP respectfully submits that Whitman's Complaint against Longview LLP should be dismissed in its entirety.

## FACTUAL BACKGROUND[1]

**A.  The Parties**

According to the Complaint, Whitman is "a domestic corporation organized and existing under the laws of the Commonwealth of Massachusetts," with a "principal place of business at 10 Oak Street, #46, Wellesley, Massachusetts 02482." *See* Compl. ¶ 1. Longview LLP, in turn, "is a foreign entity organized and existing under the laws of the United Kingdom," with "its

---

[1] Because, on a motion to dismiss, the properly pleaded facts of the Complaint must be accepted as true, *see Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013), the facts set forth below are taken from the allegations in Whitman's Complaint, as well as from documents "central to [Whitman's] claims" and "sufficiently referred to in the [C]omplaint," including the alleged Agreement, which is annexed as Exhibit A thereto. *See Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 164 (D. Mass. 2013); *see also Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013) ("We may supplement those factual allegations by examining "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice"). Longview LLP accepts these facts as true solely for purposes of the instant motion to dismiss, however, and for no other purpose.

principal place of business at Thames Court, 1 Queenhithe, City of London, EC4V 3RL, United Kingdom," while Longview Guernsey is a separate "foreign entity organized and existing under the laws of Guernsey," with "its principal place of business at P.O. Box 559, Sarnia House, Le Truchot, St. Peter Port, Guernsey, GY1 6JG." *See id.* ¶¶ 2, 3.

**B.     The Agreement Between Whitman's Former Principal and Longview Guernsey**

According to the Complaint, "[o]n January 1, 2006, Whitman entered into [the Agreement] with Longview Guernsey, *which is the contract under which Whitman's claims arise in this case*." Compl. ¶ 7 (emphasis added). The Agreement, which was memorialized on Longview Guernsey letterhead, originally was signed only by R. Eugene Whitman ("Mr. Whitman") on the one hand and Longview Guernsey on the other hand (acting by and through Anthony LeTissier and Philip Corbet, its Managing Director and Office Manager, respectively). *See* Compl., Ex. A at 1, 6. The Agreement was *not* signed by or on behalf of— and in fact nowhere even mentions—Longview LLP. *Id.*

Pursuant to the terms of the Agreement, Longview Guernsey retained Mr. Whitman to assist it in soliciting prospective investment advisory clients for itself and its affiliate, Longview Partners LP ("Longview LP").[2] Indeed, pursuant to the express terms of the Agreement, "Longview Partners (Guernsey) Limited … retained R. Eugene Whitman … to serve as exclusive marketing agent in connection with the solicitation of prospective investment advisory clients for *Longview Partners (Guernsey) Limited* and *Longview Partners LP*" in the United States, Canada and Bermuda. *See id.* at 1 (emphasis added). The services that Mr. Whitman was to perform as "exclusive marketing agent," in turn, were specifically set forth in the Agreement.

---

[2] Longview LP, which is legally separate and distinct from Longview LLP, has not been named as a defendant in this action.

Specifically, as set forth in Section 1 of the Agreement and as alleged in Whitman's Complaint, the services that Mr. Whitman was to perform "consist[ed] of marketing the Advisory Services and arranging meetings at which principals of [Longview Guernsey] and/or [Longview Partners LP] w[ould] make presentations concerning the Advisory Services to Prospective Clients who, in Whitman's best judgment, will consider committing capital to the Advisory Services." *See* Compl., Ex. A at 1, § 1 (emphasis added). In addition, Mr. Whitman was to "provide follow-up to all such presentation meetings and such additional assistance to [Longview Guernsey] and [Longview Partners LP] in connection therewith as shall be agreed upon." *Id.*; *see also* Compl. ¶ 10 ("In this position, Whitman was responsible for performing Agency Services, including introducing prospective investors … to Longview [LP]'s investment management and advisory services, arranging meetings between Longview Guernsey and/or Longview [LP] and Prospective Clients, [and] providing follow-up to all meetings and such additional assistance to Longview Guernsey and/or Longview [LP] as might be needed.").

In return, it is alleged, "any investment made by any [Prospective Client], that was introduced by Whitman, triggered Agency Fees due to Whitman under the Agreement," with such fees to be "calculated as a percentage of the Management Fees received by Longview" and paid to Whitman "over the course of a five-year period [ ] commenc[ing] 'on the date(s) on which such Clients placed assets under the management of Longview." *See* Compl. ¶¶ 11, 12. As both the Complaint and the terms of the alleged Agreement make clear, however, the only entity that was even arguably obligated to make such payments was *Longview Guernsey*. *See id.* ¶ 12 ("Pursuant to Section 4 of the Agreement, *Longview Guernsey* is required to pay Whitman Agency Fees over the course of a five-year period, which commences 'on the date(s) on which such Clients place assets under the management of Longview." (emphasis

4

added)); Compl., Ex. A at 3, § 4 ("Manager [defined in the Agreement as Longview Guernsey] shall pay Whitman as an agency fee ….").

C.   **The Amendment Between Whitman and Longview Guernsey**

According to the Complaint, "[o]n January 31, 2007, the Agreement was amended to substitute Whitman as the sole contracting party following the death of [Mr. Whitman], President of Whitman & Co." *See* Compl. ¶ 8. As was true of the parties' original alleged Agreement, however, the alleged amendatory document (the "Amendment") makes absolutely *no mention whatsoever of Longview LLP*, and was signed only by an officer of Whitman on the one hand, and by Longview Guernsey, on the other hand. *See* Compl., Ex. A at 8. In fact, the Amendment expressly confirmed that the original alleged Agreement was one "between R. Eugene Whitman, as President of Whitman & Company, Inc. *and Longview Partners (Guernsey) Ltd.*," and expressly provides that, apart from the substitution of Whitman for Mr. Whitman as Longview Guernsey's contracting counterparty, "[a]ll other terms and conditions of the Agreement shall remain in full force and effect *without modification*." *Id.* (emphases added). Thus, even as amended, the alleged Agreement does not purport to impose any payment obligations upon, or represent any agreement or undertaking by, Longview LLP or any party other than Longview Guernsey.

D.   **Whitman's Claims: A Demand For Fees Allegedly Owed Under The Agreement Between Whitman and Longview Guernsey**

The Complaint alleges that "Whitman introduced the Defendants to at least seven (7) current Clients of Longview," including Pfizer, Inc. ("Pfizer"), Deseret Mutual Insurance Company ("Deseret Mutual"), Utah Retirement Systems ("Utah"), North Carolina Retirement Systems ("NCRS"), Maryland State Retirement and Pension System ("Maryland"), Washington State Investment Board ("WSIB") and the Public Retirement System of Idaho ("PERSI"). *See*

5

Compl. ¶¶ 16, 18, 24, 30, 36, 44, 49, 59. Moreover, the Complaint alleges that each of these seven clients subsequently invested funds with Longview, *id.* ¶¶ 19, 25, 31, 38-39, 45, 55, 63, and that Whitman "made written demand … for payment of the amounts owed *under the Agreement*" in respect of each of these clients. *See id.* ¶¶ 23, 29, 35, 43, 48, 58, 66 (emphasis added). The Complaint contends, however, that in *"violation of the Agreement,"* *id.* ¶¶ 21, 27, 33, 41, 46, 56, 64, the so-called "Longview Defendants"—a self-styled term arbitrarily defined by Whitman to include *both* Longview Guernsey *and* Longview LLP—have "failed to make each of the *contractually required* Agency Fee payments owed [allegedly] to Whitman." *See id.* ¶¶ 72, 79, 86, 93, 100, 107, 114 (emphasis added). Disregarding the fact that Longview LLP is not a party to the alleged Agreement and that the alleged Agreement does not even purport to obligate any entity other than Longview Guernsey to make payment to Whitman, the Complaint therefore prays for judgment against both Longview Guernsey *and Longview LLP* on seven separate counts of breach of the Agreement. *See id.* ¶¶ 68-74 (Count I); ¶¶ 75-81 (Count II); ¶¶ 82-88 (Count III); ¶¶ 89-95 (Count IV); ¶¶ 96-102 (Count V); ¶¶ 103-109 (Count VI); ¶¶ 110-116 (Count VII).

In addition, contending that "[t]he Agreement is a valid and enforceable contract which contained an implied covenant of good faith and fair dealing," the Complaint purports to assert against both Longview Guernsey *and Longview LLP* one count for breach of the implied covenant of good faith and fair dealing based upon each Defendant's alleged "fail[ure] to pay all amounts currently due and [their supposed] repudiat[ion] of the Agreement … without any factual or legal basis." *See id.* ¶¶ 122-126 (Count IX).

Finally, in spite of its insistence that the Agreement constitutes "a valid and enforceable contract" which governs Whitman's alleged right to payments—and in spite of its admission that

all of Whitman's claims "arise under" the Agreement, *see id.* ¶ 7—Whitman purports to assert against both Longview Guernsey *and Longview LLP* a claim sounding in unjust enrichment. *See id.* ¶¶ 117-121 (Count VIII). Significantly, this claim—like Whitman's purported claim for breach of the implied covenant of good faith and fair dealing—is based upon the very same set of facts as Whitman's purported breach of contract claims. Indeed, Whitman's unjust enrichment claim is expressly premised on the allegation that "Whitman provided the Longview Defendants with introductions to Pfizer, Deseret Mutual, Utah [ ], [NCRS], Maryland[ ], W[SIB], and P[ERSI]," but that the "Longview Defendants" failed to "fully compensat[e] Whitman under the terms of the Agreement." *See id.* ¶¶ 118-119. Whitman's purported unjust enrichment claim, therefore, simply represents another attempt by Whitman to recover purported finder's fees allegedly owing under the Agreement, albeit under a theory of implied or quasi-contract.

## ARGUMENT

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

"In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). This does not mean, however, "that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." *United*

*States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In addition, the court need not accept as true "facts which have been conclusively contradicted by plaintiffs' concessions or otherwise." *Soto-Negron v. Taber Partners I*, 339 F.3d 35, 38 (1st Cir. 2003); *Riccio v. Ford Motor Credit Co.*, 238 F.R.D. 44, 46 (D. Mass. 2006) (same).

Here, as demonstrated in Point I below, despite Whitman's disingenuous suggestion that each of the so-called "Longview Defendants"—and thus Longview LLP—was "contractually required" to make payment to Whitman under the terms of the Agreement, Whitman's own Complaint actually concedes (and the terms of the alleged Agreement make abundantly clear) that *only* Longview Guernsey executed the alleged Agreement, and that *Longview LLP* is neither a party to that Agreement nor chargeable with (or otherwise responsible for) any payment obligations to Whitman thereunder. Accordingly, Whitman has not pleaded—and cannot possibly plead—facts sufficient to prove essential elements of *each* of the claims asserted against Longview LLP in Counts I through VII and IX of the Complaint: to wit, the existence and breach of a valid and enforceable contract between Whitman and Longview LLP.

Moreover, as explained in Point II below, *all* of Whitman's claims against Longview LLP—including Count VIII, which purports to state a claim sounding in unjust enrichment—are barred by Mass. Gen. Laws ch. 259, § 7, Massachusetts' Statute of Frauds. Accordingly, Whitman's allegations about Longview LLP do not state any claim to relief that is "plausible on its face," but instead make clear that Whitman's claims against Longview LLP must be dismissed. *See, e.g., FranCounsel Grp., LLC v. Dessange Int'l SA*, 980 F. Supp. 2d 1, 5 (D. Mass. 2013) (granting a motion to dismiss based on the statute of frauds).

**I.  WHITMAN HAS NOT STATED, AND CANNOT POSSIBLY STATE, ANY CLAIM FOR BREACH OF CONTRACT OR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST LONGVIEW LLP BECAUSE LONGVIEW LLP IS NOT A PARTY TO THE ALLEGED AGREEMENT UNDER WHICH WHITMAN'S CLAIMS ADMITTEDLY ARISE**

"To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, (1) that there was a valid contract, (2) that the defendant breached its duties under the contractual agreement, and (3) that the breach caused the plaintiff damage." *Calden v. Arnold Worldwide LLC*, No. 12-cv-10874 (FDS), 2012 WL 5964576, at *6 (D. Mass. Nov. 27, 2012). "Failure to plead any of the[se] elements … warrants dismissal of the claim." *Id.* (citing *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 16 (D. Mass. 2004), *aff'd*, 05-1057, 2005 WL 5493113 (1st Cir. Aug. 23, 2005)).

Likewise, to state a plausible claim sounding in breach of the implied covenant of good faith and fair dealing, a plaintiff "must plead that there existed an enforceable contract between the two parties and that the defendant did something that had 'the effect of destroying or injuring the right of [the plaintiff] to receive the fruits of the contract.'" *Aston Martin Lagonda of N. Am., Inc. v. Lotus Motorsports, Inc.*, No. 13–cv–11213, 2014 WL 1092864, at *7 (D. Mass. Mar. 18, 2014). Indeed, it is hornbook law that, "[t]he implied covenant's scope is 'only as broad as the contract that governs the particular relationship.'" *Id.* (quoting *Chokel v. Genzyme Corp.*, 449 Mass. 272, 867 N.E.2d 325 (2007)). Accordingly, "[a] claim for breach of the covenant of good faith and fair dealing is dependent upon the existence of an enforceable contract between the parties." *Anilus v. OneWest Bank, FSB*, Civ. No. 2010-cv-01774, 28 Mass. L. Rptr. 406, 2011 WL 2735052, at *2 (Mass. Super. Ct. May 3, 2011); *see also Mass Eye & Ear Infirmary v. OLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) ("[T]he implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached.").

Here, while Whitman alleges it made written demand for payment from "*the Defendants*" and that "*the Longview Defendants* have failed to make each of the contractually required Agency Fee payments," both the terms of the alleged Agreement *and Whitman's own concessions* make clear that the only Longview entity that was a party to the alleged Agreement—and the only entity *even arguably* obligated to make any so-called "Agency Fee" payments thereunder—was *Longview Guernsey*. Indeed, on their face, both the Agreement and the Amendment make plain that *Longview Guernsey* was the *only* Longview entity that ever was a party to the alleged Agreement, *see* pp. 3–7, *infra*, and *Whitman in fact expressly admits as much*, its contrary suggestions notwithstanding. *See* Compl. ¶ 7 ("On January 1, 2006, Whitman entered into an Exclusive Agency Agreement (the 'Agreement') *with Longview Guernsey*, which is the contract under which Whitman's claims arise in this case."). Moreover, the plain language of the Agreement confirms—and Whitman further alleges—that the *only* entity that even arguably agreed to pay so-called "Agency Fees" under the Agreement was *Longview Guernsey*. *See* Compl., Ex. A at p. 3, § 4; *see also* Compl. ¶ 12 ("Pursuant to Section 4 of the Agreement, *Longview Guernsey* is required to pay Whitman Agency Fees over the course of a five-year period, which commences 'on the date(s) on which such Clients place assets under the management of Longview.'" (emphasis added)).[3]

Consequently, Whitman has not stated—and cannot possibly plead—the existence of a valid and enforceable contract with Longview LLP or any breach by Longview LLP of any

---

[3] "On a motion to dismiss, a court must accept all factual allegations in the complaint as true. But a court will not accept as true any facts that are 'conclusively contradicted by plaintiffs' concessions or otherwise.'" *Carden v. Klucznik*, 775 F. Supp. 2d 247, 249 (D. Mass. 2011). *See also Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987) ("[W]e accept the well-pleaded factual averments of the latest (second amended) complaint as true, and construe these facts in the light most flattering to the plaintiffs' cause. We exempt, of course, those 'facts' which [are] conclusively contradicted by plaintiffs' concessions or otherwise, and likewise eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" (internal citations omitted)).

obligations imposed on it thereunder, and Counts I through VII and Count IX of the Complaint must be dismissed as against Longview LLP.[4]

## II. *ALL* OF WHITMAN'S CLAIMS AGAINST LONGVIEW LLP—INCLUDING ITS PURPORTED UNJUST ENRICHMENT CLAIM—ARE BARRED BY MASS. GEN. LAWS CH. 259, § 7

Not only are Counts I through VII and IX of the Complaint subject to dismissal for the reasons set forth above, but *all* of the claims asserted against Longview LLP—including Count VIII of the Complaint, which purports to assert a claim sounding in unjust enrichment—are barred by G.L. ch. 259, § 7, the Massachusetts Statute of Frauds. For, as explained below, because the alleged Agreement was not signed by Longview LLP, the statute necessarily precludes enforcement of the Agreement against Longview LLP and forecloses any claims against Longview LLP sounding in breach of contract or breach of the implied covenant of fair dealing. And because the statute requires that any agreement to pay compensation in exchange for another's services as a broker or finder be set forth in writing, and signed by the party to be charged, the statute likewise precludes recovery from Longview LLP under the "quasi-contractual" theory of unjust enrichment. Accordingly, all counts of Whitman's Complaint—including Count VIII—necessarily are subject to dismissal as against Longview LLP.

---

[4] *See Kerr v. Vince,* No. 07-30021-MBB, 2010 WL 1416511, at *12 (D. Mass. Apr. 1, 2010) (rejecting contract claim where "there is no evidence of a manifestation of mutual assent between plaintiff and either [non-party] entity."); *Solow v. Aspect Resources, LLC,* No. Civ.A. 20397, 2004 WL 2694916, at *4 (Del. Ch. Oct. 19, 2004) (dismissing breach of contract claims against two non-parties to relevant agreement because the plaintiff "pled no facts, nor argued any law, that would indicate that a person or entity that is not a party to a contract could be liable for a breach thereof"); *MCI Telecomms. Corp. v. John Mezzalingua Assocs., Inc.*, 921 F. Supp. 936, 942 (N.D.N.Y. 1996) (dismissing breach of contract and breach of warranty claims against parent company on summary judgment, where party to the relevant contract was the subsidiary: "Only those who are parties to a contract may be held liable for a breach of that contract").

### A. Gen. Law ch. 259, § 7 Prohibits Enforcement Of The Agreement Against Longview LLP And Thus Precludes Whitman's Claims For Breach Of Contract And Breach Of The Covenant Of Good Faith And Fair Dealing

Even if Whitman attempted to allege that Longview LLP was a party to or bound by the payment provisions of the Agreement, Whitman could not possibly do so because any attempt to do so—and any attempt to enforce the Agreement against Longview LLP—would be precluded by the Statute of Frauds. Under G.L. ch. 259, § 7,

> [a]ny agreement to pay compensation for service as a broker or finder or for service rendered in negotiating … the purchase, sale or exchange of a business, its good will, inventory, fixtures, or an interest therein … shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized.

Mass. Gen. Laws Ann. ch. 259, § 7 (West 1984).

Here, there is (and can be) no dispute that the Agreement was *not* signed by or on behalf of Longview LLP. *See* Compl., ¶ 7; *id*. at Ex. A. Moreover, there is (and can be) no genuine dispute that the services which are alleged to be the subject of the Agreement—and for which Whitman now seeks compensation—fall squarely within the ambit of the Statute of Frauds.

As this Court noted just last year, for instance, "[a] 'broker' is '[a]n agent who acts as an intermediary or negotiator, esp[ecially] between prospective buyers and sellers," and "[a] 'finder' is [a]n intermediary who brings parties together for a business opportunity." *Michael A. Mentuck & Assocs., Inc. v. Lloyds Underwriting Syndicate No. 1209*, CIV.A. 11-10118-GAO, 2013 WL 783050, at *3 (D. Mass. Feb. 28, 2013).[5] Thus, where a plaintiff claims an entitlement to compensation arising from efforts to "obtain a good faith offer to purchase [the defendant's]

---

[5] *See also Cantell v. Hill Holliday Connors Cosmopulos, Inc.,* 55 Mass. App. Ct. 550, 553, 772 N.E.2d 1078, 1082 (2002) ("A broker is '[a]n agent who acts as an intermediary or negotiator, esp[ecially] between prospective buyers and sellers; a person employed to make bargains and contracts between other persons in matters of trade, commerce, and navigation.' A finder is '[a]n intermediary who brings together parties for a business opportunity… A finder differs from a broker-dealer because the finder merely brings two parties together to make their own contract, whole a broker-dealer usu[ally] participates in the negotiations.'" (internal citations omitted)) (quoting Black's Law Dictionary 187, 686 (7th ed. 1999)).

product from bona fide purchasers" or to "facilitate the sale thereof," the plaintiff's claim "f[a]ll[s] squarely within the bounds of the statute of frauds." *Id*. at *1, *3-4 ("The agreement, or agreements, forming the basis of Mentuck's claims allegedly contemplated Mentuck receiving compensation for identifying a prospective buyer of the [defendant's] seafood, 'facilitating the sale' of the seafood, or negotiating the terms under which a potential buyer would agree to acquire the seafood.").

Moreover, "[t]he statute of frauds … encompasses more than just brokers and finders. It also extends to 'service rendered in negotiating … the purchase, sale or exchange of a business [or component elements] thereof.'" *Id.* at *3 (internal citations omitted). Indeed, the statute literally extends to any service rendered in "negotiating … the purchase, sale or exchange of a business, its good will, inventory, fixtures, or an interest therein," *id.*, and the statute further expressly provides that:

> [f]or the purpose of this section, the term "negotiating" shall include *identifying prospective parties*, providing information concerning prospective parties, *procuring an introduction to a party to the transaction* or *assisting in the negotiation or consummation of the transaction*.

Mass. Gen. Laws ch. 259, § 7 (emphases added). Any claim for compensation arising from an alleged contractual undertaking to *identify or procure introductions to prospective purchasers* of another's business or offerings, therefore, necessarily must satisfy the Statute of Frauds.[6]

---

[6] *See, e.g., FranCounsel*, 980 F. Supp. 2d at 5 (business development advisor's claim that it was entitled to compensation for "introducing" Massachusetts companies to French companies that acquired them was subject to Statute of Frauds where advisor claimed that it "introduc[ed] the French and Massachusetts defendants and [ ] facilitat[ed] their initial meetings"); *Adelson v. Hananel*, 1:04-CV-10357, 2009 WL 5905389, at *5-6 (D. Mass. Feb. 24, 2009) (defendant was "clearly seeking compensation for services as a 'finder' within the meaning of the statute," and his claim for compensation was thus subject to the Statute of Frauds, where, "[i]n his own words, [the alleged] contract provided him with 12% options [if] he identif[ied] an investment opportunity in which [plaintiff] ultimately invest[ed]"); *Bay Colony Marketing Co. v. Fruit Salad, Inc.*, 41 Mass. App. Ct. 662, 672 N.E.2d 987 (1996) (Statute of Frauds applied and compelled directed verdict against food broker on its claim for compensation under an alleged agreement pursuant to which food seller "agreed actively to solicit new accounts and sales territories for the seller's food products … in return for the seller's payment of a commission equalling [sic] three percent of the amount of its gross sales as so placed").

Here, according to the Agreement and Whitman's own Complaint, the services that Whitman was to perform under the Agreement (and for which Whitman now seeks compensation) unequivocally involved the identification of, and procurement of introductions to, prospective clients of Longview Guernsey and Longview LP. Indeed, as unambiguously set forth in the Agreement, Whitman was retained "to serve as exclusive marketing agent *in connection with the solicitation of prospective investment advisory clients* for Longview Guernsey and Longview [LP]," and its role in that capacity "consist[ed] of … *arranging meetings* at which principals of [Longview Guernsey] and/or [Longview Partners LP] w[ould] make *presentations concerning the Advisory Services to Prospective Clients* who, in Whitman's best judgment, will consider committing capital to the Advisory Services." *See* Compl., Ex. A at 1-2, § 1 (emphases added). In fact, in Whitman's own words, "Whitman was responsible for … *introducing prospective investors* … to Longview's management and advisory services, *arranging meetings between Longview Guernsey and/or Longview [LP] and Prospective Clients*, [and] providing follow-up to all meetings and such additional assistance to Longview Guernsey and/or Longview [LP] as might be needed." *See* Compl. ¶ 10 (emphasis added). Moreover, Whitman's claim of entitlement to compensation is expressly grounded in its contention that "Whitman *introduced the Defendants to at least seven (7) current Clients*" and that "*any introduction by Whitman* during the term of the Agreement … *trigger[ed] Agency Fees* owed to Whitman." *Id*. ¶¶ 15-16; *see also id*. ¶¶ 70, 77, 84, 91, 98, 105, 112, 118, 124. There can thus be no doubt that Whitman's claims are subject to the requirements of Mass. Gen. Laws ch. 259, § 7.

As noted above, however, Whitman has not alleged—and cannot possibly point to—any written agreement signed by or on behalf of Longview LLP that evidences an agreement by Longview LLP to pay the "Agency Fees" to which Whitman claims it is entitled. Instead,

14

Whitman seeks to base its contract-based claims solely on the Agreement—a contract which Whitman *admits* it entered into only "*with Longview Guernsey*," *See* Compl., ¶ 7 (emphasis added), and which, under the Statute of Frauds, cannot be enforced against Longview LLP.[7] Accordingly, Counts I through VII of the Complaint, and Count IX of the Complaint, must be dismissed for failure to satisfy Mass. Gen. Laws ch. 259, § 7.[8]

> **B. Gen. Law ch. 259, § 7 Precludes Recovery In Quasi-Contract For Fees Allegedly Owed In Respect Of Finder Or Broker Agreements, And Thus Forecloses Whitman's Claim For Unjust Enrichment**

Not only does the Massachusetts Statute of Frauds compel the dismissal of Counts I through VII and Count IX of the Complaint as against Longview LLP, but it also compels the dismissal of Count VIII—Whitman's purported claim for unjust enrichment—because "the statute expressly precludes equitable relief." *FranCounsel*, 980 F. Supp. 2d at 6.

Indeed, by its terms, the Statute of Frauds declares that "*[t]he provisions of this section apply to a contract implied in fact or in law to pay reasonable compensation.*" *See* Mass. Gen. Laws ch. 259, § 7 (emphasis added). And under Massachusetts law, unjust enrichment claims, like other claims sounding in quantum meruit and promissory estoppel, are claims based on "quasi-contracts" that are "implied in law." *See, e.g.*, *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 54 (1st Cir. 2007) ("Under Massachusetts law, a quasi-contract may be implied in law to remedy the unjust enrichment of another party, even where the facts do not necessarily support the

---

[7] Indeed, Whitman freely admits that the alleged Agreement "with Longview Guernsey" "*is the contract under which Whitman's claims arise in this case*." Compl. ¶ 7 (emphasis added).

[8] *See N. E. Technical Sales, Inc. v. Barshad*, 99-1427-B, 2000 WL 1252184, at *2 (Mass. Super. Ct. Aug. 14, 2000) (granting a motion to dismiss a breach of contract claim pursuant to the statute of frauds where the plaintiff "presented no evidence of a written contract signed by [the defendant]"); *Corporate Fin. Assocs. of Pittsfield, Inc. v. GEM Indus., N.E., Inc.*, 58 Mass. App. Ct. 1112, 1112, 793 N.E.2d 403, 403 (2003) (ruling in favor of the defendant pursuant to the statute of frauds where the plaintiff sought the payment of a broker's fee, but "there [was] no written broker or finder agreement signed by the parties to be charged"); *see also Christo v. Draper*, 55 Mass. App. Ct. 1108, 1108, 771 N.E.2d 229, 229 (2002) (dismissing the plaintiff's claims pursuant to the statute of frauds where one of the two written documents plaintiff relied on was "not even signed or initialed by the party to be charged").

existence of an express or implied-in-fact contract."). Thus, courts applying Massachusetts law repeatedly have held that a plaintiff claiming an entitlement to compensation on account of a "broker," "finder," or other services that fall within the ambit of the Statute of Frauds may not obtain recovery under a theory of unjust enrichment. *See, e.g.*, *State Tax Auditing & Research, Inc. v. Waters Corp.*, No. 98-2594-B, 2000 WL 782948, at *3 (Mass. Super. Ct. Apr. 5, 2000) (dismissing tax consulting firm's unjust enrichment claim, which demanded a finder's fee in respect of firm's allegedly successful efforts to identify a refund opportunity for defendant, on ground that "the plain language of G.L. ch. 259, § 7 makes clear that not only must 'any agreement to pay compensation for services as a finder,' be in writing, but [that] 'contract[s] implied in fact or law to pay reasonable compensation,' *i.e.*, [ ] claims based on unjust enrichment or quantum meruit, are barred").[9]

Here, as noted above, Whitman's purported unjust enrichment claim undeniably seeks "compensation for service as a broker or finder" or for "service rendered in negotiating … the purchase, sale or exchange of a business [or component elements thereof" within the meaning of the Statute of Frauds. Indeed, Count VIII of the Complaint is expressly premised on the allegation that "Whitman provided the Longview Defendants with introductions to Pfizer,

---

[9] *See also FranCounsel*, 980 F. Supp. 2d at 3, 6 (dismissing unjust enrichment claim, which sought to recover "compensation for introducing [defendants] and facilitating their initial meetings" under an alleged promise by the defendants' principals to pay the plaintiff a percentage of fees paid and received under their agreement "in the event that FranCounsel's services 'led to the conclusion of a business partnership,'" because, "[a]t most, [plaintiff] had a contract implied in law or fact, and the statute expressly precludes equitable relief"); *Mentuck*, 2013 WL 783050 at *5 (noting that the plaintiff's breach of contract, implied covenant and unjust enrichment claims all "fall together" "because the statute of frauds applies to contracts 'implied in fact or in law' and "failure to satisfy the statute is [therefore] fatal to both breach of contract and quantum meruit claims"); *Cantell*, 55 Mass. App. Ct. at 552, 772 N.E.2d at 1081 ("We conclude that [plaintiff's] contract and quantum meruit claims are thus barred by the Statute of Frauds because no contract was signed by [defendant]."); *N. E. Technical Sales*, 2000 WL 1252184 at *5 (dismissing unjust enrichment/quantum meruit claim pursuant to which exclusive sales representative sought a 20% sales commission on all sales of defendant's products ordered within its exclusive territory, noting that "General Law c. 259, § 7 … applies to 'a contract implied in fact or in law" and that "[c]ourts have held that claims of promissory estoppel and quantum meruit are included in this category and that recovery on such claims is therefore barred by statute"); *Cox v. Thornton Assocs., Inc.*, No. Civ. A. 97-00718, 1998 WL 470508, at *3, n.2 (Mass. Super. Ct. Aug. 4, 1998) (same).

Deseret Mutual, Utah [ ], [NCRS], Maryland[ ], W[SIB], and P[ERSI]," but that the "Longview Defendants" failed to "fully compensat[e] Whitman under the terms of the Agreement." *See* Compl. ¶¶ 118-119. Accordingly, Whitman's purported unjust enrichment claim must be dismissed as barred by the Massachusetts Statute of Frauds.

## CONCLUSION

For the foregoing reasons, Longview respectfully requests that this Court dismiss Whitman's Complaint against Longview LLP, in its entirety, without leave to amend.

Dated: July 15, 2014

Respectfully submitted,

/s/ Patrick J. O'Toole, Jr.
Patrick J. O'Toole, Jr. (BBO # 559267)
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, MA 02110
Tel.: (617) 772-8300
Fax: (617) 772-8333
Email: patrick.otoole@weil.com

David R. Fertig
Allen Yancy
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8143
Fax: (212) 310-8007
Email: david.fertig@weil.com
Email: allen.yancy@weil.com

*Counsel for Longview Partners LLP*

17

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Counsel for defendant hereby certifies that they conferred with counsel for plaintiff on July 15, 2014, and were unable to resolve or narrow the issues raised in this motion.

/s/ Patrick J. O'Toole, Jr.

## CERTIFICATE OF SERVICE

I, Patrick J. O'Toole, hereby certify that on the 15th day of July, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification and that I served the foregoing by mail upon any counsel of record not receiving electronic notification:

William L. Prickett, Esq.
Anne V. Dunne, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800
wprickett@seyfarth.com
adunne@seyfarth.com


    /s/ Patrick J. O'Toole, Jr.