UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WHITMAN & COMPANY, INC., <br>                 Plaintiff, <br>    v. <br> LONGVIEW PARTNERS (GUERNSEY) LIMITED, LONGVIEW PARTNERS LLP, LONGVIEW PARTNERS (UK) LIMITED,[1] <br>                 Defendants. | CIVIL ACTION <br> NO. 1:14-cv-12047 <br><br> ORAL ARGUMENT REQUESTED <br><br> LEAVE TO FILE GRANTED ON OCTOBER 21, 2014 |

**JOINT REPLY BRIEF IN SUPPORT OF LONGVIEW PARTNERS LLP'S AND LONGVIEW PARTNERS (UK) LIMITED'S MOTION TO DISMISS THE AMENDED COMPLAINT AND LONGVIEW PARTNERS (GUERNSEY) LIMITED'S MOTION TO DISMISS COUNTS IX AND X OF THE AMENDED COMPLAINT**

Patrick J. O'Toole, Jr. (BBO #559267)
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, MA 02110
Tel.: (617) 772-8300
Fax: (617) 772-8333
patrick.otoole@weil.com

David R. Fertig
Robert S. Levine
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
david.fertig@weil.com
robert.levine@weil.com

*Attorneys for Longview Partners (Guernsey) Limited, Longview Partners LLP, and Longview Partners (UK) Limited*

---

[1] Plaintiff filed a Stipulation to Correct Caption and Name of Defendants on October 8, 2014 (Dkt. 29), but it has not yet been so ordered by the Court.

In its Memorandum of Law in Opposition to the Motions to Dismiss of Defendants Longview Guernsey,[2] Longview LLP and Longview UK ("Opp. Br."), Whitman asserts a series of facts that are found nowhere in its Amended Complaint and relies on recent authority that was published after the Defendants' Motions to Dismiss the Amended Complaint were filed. To address Whitman's newly added facts and the recent authority on which it relies, Defendants submit this Joint Reply Brief in support of Longview Partners LLP's and Longview Partners (UK) Limited's Motion to Dismiss the Amended Complaint and Longview Partners (Guernsey) Limited's Motion to Dismiss Counts IX and X of the Amended Complaint.

I. **The Statute Of Frauds Absolutely Bars Whitman's Claims Against Longview LLP And Longview UK Because There Is, In Fact, No Writing Signed By "The Parties"**

Whitman tries to persuade the Court that the Statute of Frauds does not bar its claims against Longview LLP and Longview UK because the statute applies only "to suppress … cooked up claims of agreement, sometimes fathered by wish … and sometimes simply conjured up." Opp. Br. at 7 (citing *Pappas Indus. Parks. Inc. v. Psarros*, 24 Mass. App. Ct. 596, 598 (1987)). But that is *precisely* the scenario here because, as Whitman's own Amended Complaint admits[3]—and as its opposition papers once again confirm[4]—Whitman *had no agreement with Longview LLP or Longview UK, written or otherwise.* Accordingly, Whitman cannot maintain its purported unjust enrichment, Chapter 93A, or civil conspiracy claims against Longview LLP

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Memorandum of Law In Support of Longview Partners LLP's and Longview Partners (UK) Limited's Motion To Dismiss The Amended Complaint (the "LLP/UK Br.") and the Memorandum of Law in Support of Defendant Longview Partners (Guernsey) Limited's Motion to Dismiss Counts IX and X of the Amended Complaint (the "Guernsey Br.").

[3] *See* Am. Compl., ¶ 10 ("On January 1, 2006, Whitman entered into an Exclusive Agency Agreement (the 'Agreement') *with Longview Guernsey*, which is the contract under which Whitman's contract claims arise in this case." (emphasis added)); *see id.,* Exh. A.

[4] *See* Opp. Br. at 2 ("On January 1, 2006, Whitman entered into the Exclusive Agency Agreement (the 'Agreement') *with Longview Guernsey*, the contract at issue in this case." (emphasis added)).

and Longview UK. *See, e.g.*, *Corporate Dev. Assocs, Inc. v. Staples, Inc.*, MICV201100958F, 2013 WL 597488, *6 (Mass. Super. Jan. 31, 2013).

In disregard of the plain language of the Statute of Frauds—which *expressly* bars any claim seeking compensation for services rendered as a broker or finder absent a written agreement "*signed by the party to be charged*," *see* Mass. Gen. Laws ch. 259, § 7 (emphasis added)—Whitman incredibly argues that the existence of a written agreement signed by *another* party, Longview Guernsey, somehow "removes this case from the Statute of Frauds." Opp. Br. at 9.[5] But this disingenuous argument only highlights the lengths to which Whitman is willing to go in its effort to maintain baseless claims against Longview LLP and Longview UK purely for *in terrorem* and other tactical reasons. For Whitman's argument finds no support in Judge Casper's recent decision in *Licensed 2 Thrill, LLC v. Rakuten, Inc.*, No. 13-11257-DJC, 2014 WL 4656588 (D. Mass. Sept. 15, 2014)—the one decision on which Whitman purports to base its entire argument—and is fundamentally at odds with basic principles of law.

Indeed, in *Licensed 2 Thrill*, although the plaintiff brought claims against three defendants—FreeCause, Rakuten USA and Rakuten USA's parent, Rakuten, Inc.—Judge Casper merely held that the Statute of Frauds did not bar the plaintiff's claims against two of those entities: FreeCause, *the party with whom the plaintiff had a signed written "finder's" agreement in 2008*, and Rakuten USA, the company "*which purchased FreeCause in 2009*" (and which presumably succeeded to FreeCause's obligations under the 2008 written "finder's" agreement). *See Licensed 2 Thrill*, 2014 WL 4656588 at *1 (emphasis added). Judge Casper emphasized that the plaintiff's claims were based "on the written contract," and notably did *not* even consider whether the plaintiff's claims against Rakuten USA's parent company, Rakuten, Inc., were

---

[5] Notably, Whitman *admits* that Longview Guernsey, Longview LLP and Longview UK are *separate* and *distinct* corporate entities, and that there is no basis for alleging—and that Whitman has not alleged—"that the Defendants are one corporate enterprise or that their corporate veils should be pierced." *See* Opp. Br. at 20 n.14.

barred by the Statute of Frauds.[6] Her decision in *Licensed 2 Thrill*, therefore, hardly stands for the proposition suggested by Whitman: namely, that the Statute of Frauds does not apply—or that a court has discretion to refrain from applying it—to bar a finder's claim for compensation against defendants with whom the finder has *no written agreement* as long as *some affiliate* of those parties have a written agreement with the finder.

Nor could the *Licensed 2 Thrill* decision reasonably be construed to stand for that proposition since such a proposition contravenes well-settled law, including: (i) the plain text of the Statute of Frauds, which not only requires an agreement in writing signed "by the party to be charged," but which further expressly provides that it applies to claims founded upon express contracts *as well as to claims founded on "contract[s] implied in fact or in law,"* Mass. Gen. Laws ch. 259, § 7 (emphasis added)—language that routinely has been held to foreclose quasi-contract claims sounding in unjust enrichment where the gist of the claim is to seek compensation for services rendered as a broker or finder[7]; and (ii) the law concerning respect for the corporate form.[8]

---

[6] *See Licensed 2 Thrill*, 2014 WL 4656588 at *1 & n.1 (noting that the claims at issue were asserted only against "FreeCause" or the "Defendants" and that "[f]or purposes of this Memorandum and Order, the Court refers to FreeCause and Rakuten USA collectively as 'Defendants.'").

[7] *See* LLP/UK Br. at 3-4 and cases cited therein.

[8] Absent allegations justifying piercing of the corporate veil, corporate affiliates are not liable for one another's contractual obligations or other debts. And under Massachusetts law, disregarding the corporate form is permissible only in "rare situations in order to prevent gross inequity," such as situations where an entity misled the plaintiff as to the identity of the entity with which it contracted. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 127-29 (2006). As Whitman has conceded in its Opposition, Longview Guernsey, Longview LLP, and Longview UK are separate and distinct corporate entities, and there is no basis for piercing the corporate veil. *See* Opp. Br. at 20 n.14.

## II. Whitman's Opposition Fails To Demonstrate That The Amended Complaint States A Plausible Chapter 93A Claim Against Any Of The Defendants

### A. Whitman's Mere Allegation That "Each Defendant" Engaged In The Allegedly Unfair & Deceptive Acts Is Insufficient To State A Plausible Claim Against Longview LLP or Longview UK

Accusing Defendants of "overstretch[ing] the *Twombly/Iqbal* standard," Opp. Br. at 2, Whitman argues that the Amended Complaint adequately alleges a Chapter 93A claim against Longview LLP and Longview UK because a single paragraph of the Amended Complaint alleges that "each of the Defendants" acted "in an unfair and deceptive effort to coerce Whitman into unfairly compromising or abandoning its rights to receive the amounts due to it under the Agreement." *See* Am. Compl. ¶ 141; Opp. Br. at 12. But it is Whitman that seeks to "overstretch" the applicable pleading standards because, under settled law, the self-serving use of the phrase "each of the Defendants" coupled with a threadbare recitation of elements of a claim does not suffice to state a plausible claim for relief against Longview LLP and Longview UK.

Indeed, courts repeatedly hold that the group pleading tactic of indiscriminately "'lumping' of all of the defendants together" is "impermissible" and fails to satisfy even Rule 8's liberal pleading standard. *See, e.g.*, *Tolbert v. Clarke*, No. 10-11643-RWZ, 2011 WL 797372, *3 (D. Mass Feb. 28, 2011). And as the Supreme Court explained in *Twombly* and *Iqbal*, even the "short and plain statement" standard of Rule 8(a)(2) requires "that the plain statement possess enough heft to show that the pleader is entitled to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Thus, a complaint which merely rests on legal conclusions couched as fact cannot survive a motion to dismiss— particularly where, as here, those conclusions are belied by specific allegations in the complaint or written instruments annexed thereto or referenced therein. *See Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("[W]hen a written instrument contradicts allegations in the

complaint to which it is attached, the exhibit trumps the allegations."); *Soto-Negron v. Taber Partners I*, 339 F.3d 35, 38 (1st Cir. 2003) (court should not accept as true "'facts' which … have been conclusively contradicted by plaintiffs' concessions or otherwise").

As explained in Defendants' moving papers, Whitman's assertion that "each of the Defendants" acted "in an unfair and deceptive effort to coerce Whitman into unfairly compromising or abandoning its rights to receive the amounts due to it under the Agreement" is not only wholly conclusory,[9] it is also belied by the specific *factual* allegations in the Amended Complaint and the documents incorporated by reference therein.

Indeed, Whitman asserts that the allegedly unfair and deceptive "acts of coercion" complained of consisted of: (i) "ignor[ing]" Whitman's "requests for payment" under the Agreement; and (ii) "reneg[ing] on the agency fees" allegedly owed under the Agreement in reliance on a purportedly "bogus" reason. Opp. Br. at 10-11. The Amended Complaint and the Agreement unequivocally confirm, however, that only Longview Guernsey ever had or discharged any payment obligations under the Agreement and that only Longview Guernsey was requested by Whitman to make payment.[10] Consequently, Longview LLP and Longview UK had neither the ability nor any occasion to ignore Whitman's requests for payment under the Agreement, to "renege" on any promise to pay Whitman, or to assert *any* basis whatsoever for non-payment under the Agreement. Moreover, Whitman's contrary assertion notwithstanding, *see* Opp. Br. at 5, the February 5, 2014 email from Wes Camden—which purportedly constituted the allegedly "unfair and deceptive" assertion of a "frivolous" ground for non-payment under the

---

[9] *Cf. Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 8-9, n.3 (1st Cir. 2011) (explaining that, in *Twombly*, the Court "disregarded the complaint's allegations that the defendants had 'entered into a contract, combination or conspiracy' and had 'agreed not to compete with one another'" because those were "merely legal conclusions" that did not "provide[ ] the defendants with the notice required by Rule 8(a)(2)").

[10] *See* Am. Compl., ¶¶ 10, 15, 24, 28, 40, 44, 50, 54, 57, 61, 69, 73, 79, 83; *see also id.*, Exh. A.

Agreement—*nowhere* states that it was sent on behalf of Longview LLP or Longview UK,[11] and logically was sent only on behalf of Longview Guernsey, as only Longview Guernsey had any payment obligation to Whitman and only Longview Guernsey was a party to the referenced agreement with the North Carolina Department of Treasury (the "North Carolina Agreement").[12] Thus, Whitman's mere conclusory allegation that "each of the Defendants" engaged in unfair and deceptive "acts of coercion" fails to salvage Whitman's claims against Longview LLP and Longview UK. *See Iqbal*, 556 U.S. at 678-79 ("A claim has facial plausibility [only] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. … Determining whether a complaint states a plausible claim for relief … requires the reviewing court to draw on … common sense.").

> B. Whitman's Amended Complaint Fails To Plead Any Facts Sufficient To Transform The Mere Breach Of Contract Into A Chapter 93A Violation

In all events, Whitman's Chapter 93A claim fails against *all* Defendants because Whitman has failed to rebut (and cannot possibly rebut) Defendants' showing that the Amended Complaint likewise fails to plead any non-conclusory *facts* showing that the alleged non-payment to Whitman represented "commercial extortion" rather than, at most, a simple breach of contract. *See* Guernsey Br. at 8-10; LLP/UK Br. at 11; Opp. Br. at 13 (conceding that "[t]he breaching party's conduct must exceed the level of mere self-interest, rising instead 'to the level of "commercial extortion" or a similar degree of culpable conduct'").

---

[11] Contrary to Whitman's representation, Mr. Camden never indicated that the term Longview Partners "referred … collectively" to Longview Guernsey, Longview LLP and Longview UK. *See* Opp. Br. at 5; *id.*, Exh. A.

[12] This Court has grounds to dismiss Whitman's deficient Chapter 93A claim without considering the North Carolina Agreement. However, just as this Court may consider the February 5th email without converting Defendants' motions to dismiss to summary judgment motions, Opp. Br. at 5 n.4, it may consider the North Carolina Agreement, which is sufficiently referred to in the Amended Complaint. Due to its confidential nature, Defendants are not at liberty to attach the North Carolina Agreement as an exhibit to this brief, but upon the Court's request, Defendants will file it under seal for the Court's *in camera* review.

Whitman chastises Defendants for attempting to impose upon Whitman a "heightened" pleading standard "akin to a Rule 9(b) argument in a fraud case." Opp. Br. at 2, 11. But as the Supreme Court explained in *Twombly*, even Rule 8 requires a plaintiff to establish plausible grounds for its entitlement to relief, and "a plaintiff's obligation to provide the 'grounds' [for] his 'entitle[ment] to relief' requires more than [mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545. Moreover, as the *Twombly* Court and the First Circuit unequivocally have explained, "requiring a plaintiff to show a plausible entitlement to relief [is] *not* the same as imposing a 'heightened pleading requirement.'" *Ocasio-Hernandez*, 640 F.3d at 10 (quoting *Twombly*, 550 U.S. at 570).

As noted above, Whitman's assertion that Defendants acted "in an unfair and deceptive effort to coerce Whitman into unfairly compromising or abandoning its rights to receive the amounts due to it under the Agreement" is simply a conclusory recitation of the elements of any contract-based Chapter 93A claim couched as factual allegation. *See supra* Part II.A. As such, it is entitled to no weight at all. *See Iqbal*, 556 U.S. at 664 ("A court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). And Whitman's suggestion that the Amended Complaint somehow supplies the necessary factual support by alleging that Defendants' coercive tactics consisted of using "their presence outside of the United States," their "superior resources," and a "frivolous basis" to delay and ultimately refuse payment to Whitman, *see* Opp. Br. at 6, 10 & n.7, is simply untrue.

Indeed, not only are such allegations *themselves* conclusory, but the allegations that Defendants "use[d] their significantly larger financial power [and their presence outside of the

7

United States] to coerce or induce Whitman" (Opp. Br. at 4) are *nowhere found in the Amended Complaint*. A plaintiff may not, of course, remedy the deficiencies of a pleading through arguments raised in a memorandum in opposition to a motion to dismiss. *See, e.g.*, *Galvin v. EMC Mortgage Corp.*, 12-CV-320-JL, 2013 WL 1386614, at *1 (D.N.H. Apr. 4, 2013) (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 2004 DNH 047, 3–4 for the proposition that a "court cannot take into account facts or allegations found outside [the] complaint when ruling on [a] motion to dismiss"); *Goodman v. Port Authority of New York and New Jersey*, 850 F. Supp.2d 363, 380 (S.D.N.Y. 2012) ("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint.").

Moreover, the allegation that Defendants "relied upon knowingly frivolous grounds to withhold payment" (Am. Compl. ¶ 141) is not only conclusory, it is belied by the terms of the North Carolina Agreement itself, which arose in connection with a placement agent review by the State of North Carolina into alleged misconduct by, among others, Whitman and resulted in a refund to North Carolina by Longview Guernsey. Thus, Whitman's assertions that the North Carolina Agreement was "unrelated," that it did not give rise to any "good faith dispute as to the funds due and owing to Whitman" (Am. Compl. ¶ 143), and that the reliance on the North Carolina Agreement as a basis for non-payment was "frivolous and [ ] simply part of [a] … scheme to coerce Whitman into reducing its claim or to drop it altogether" (Opp. Br. at 5), are not entitled to any presumption of truth. *See Yacubian*, 750 F.3d at 108. Accordingly, the Amended Complaint fails to plead "factual content that allows the court to draw the reasonable inference" that non-payment to Whitman constituted anything other than, at worst, a mere breach of contract, and it fails to state a plausible claim under Chapter 93A. *Iqbal*, 556 U.S. at 678.

C. Recent First Circuit Precedent Confirms That Whitman's Allegations Do Not Satisfy Chapter 93A's "Trade Or Commerce" Requirement

In an effort to demonstrate that Chapter 93A's "trade or commerce" requirement is satisfied as to Longview LLP and Longview UK, Whitman again resorts to its familiar refrain that "it must be so because I've said so." Indeed, Whitman offers only the *ipse dixit* that "the Amended Complaint states [that] Whitman's business dealings were with *all* of the Defendant entities, not just Longview Guernsey." Opp. Br. at 14. As already noted, however, Whitman's own pleading and the Agreement annexed thereto confirm just the opposite, and Whitman's contrary assertion—based entirely on conclusory and impermissible "group pleading" allegations—is not entitled to any weight.[13]

Furthermore, the First Circuit's recent decision in *Debnam v. FedEx Home Delivery*, No. 13-2335, 2014 WL 4402074 (1st Cir. Sept. 8, 2014) confirms that Whitman has not satisfied Chapter 93A's "trade or commerce" requirement as to *any* of the Defendants. Indeed, while Whitman disparages Defendants' position as "surprising" and "frivolous," asserting that "Whitman has never been a Longview Guernsey employee," Opp. Br. at 14, the First Circuit—upholding a decision of this very Court—affirmed the dismissal of the plaintiff's Chapter 93A claim in *Debnam*, noting that "*regardless of whether Debnam was an employee*, the allegations in [the plaintiff's] complaint d[id] not plausibly establish that his actions satisfied Chapter 93A's conception of 'trade or commerce,'" because they failed to allege that the plaintiff actually performed its services for anyone other than FedEx, and thus pled nothing more than a "strictly

---

[13] Indeed, while Whitman claims that "the Agreement itself shows [that] Whitman's business dealings were with *all* of the Defendant entities," Opp. Br. at 14, the Agreement *nowhere* references Longview UK and was signed by—and expressly imposed obligations upon—*only Longview Guernsey*. Moreover, Whitman's own allegation that the Defendants had certain "overlapping and common principals," Am. Compl., ¶ 3, undermines Whitman's unsupported contention—asserted in its opposition papers but nowhere actually alleged in the Amended Complaint—that Whitman's interactions were actually with "representatives of all three Defendants." Opp. Br. at 14.

9

private transaction." *Debnam*, 2014 WL 4402074 at *1, 3 (emphasis added). Significantly, in *Debnam*, as in this case, the plaintiff purported to be an "independent contractor," and actually signed an agreement with FedEx classifying him as such. *Id.* at *1. Noting that Chapter 93A creates a cause of action "only if *both parties* were engaged in 'trade or commerce' when they took part in the transactions giving rise to the suit," *id.* at *3 (emphasis added), the First Circuit held that it was immaterial whether the plaintiff was an employee or an independent contractor because, at least "[a]s described in the complaint, Debnam's business was devoted entirely to providing delivery services to FedEx alone." *Id.* at *4. "Consequently," the First Circuit explained, "Debnam ha[d] … failed to allege facts that would plausibly support a conclusion that his interactions with FedEx occurred in trade or commerce within the meaning of Chapter 93A," and his claim was "properly dismissed." *Id.* Given Whitman's failure to allege in the Amended Complaint that it actually offered or provided its purported "Agency Services" to anyone other than Longview Guernsey, the same result is compelled here.

> D. Whitman Admits That Any Allegation Longview LLP or Longview UK "Caused" Its Alleged "Economic Loss" Is Speculative And That, In All Events, Whitman Suffered No Loss Apart From Alleged Breach Of Contract Damages

In an effort to get around the undisputed facts that Longview LLP and Longview UK had no obligation and never were requested to make payment to Whitman[14]—inconvenient facts that render it impossible (and certainly implausible) for Whitman to allege that those entities "caused" the "economic losses" Whitman allegedly suffered—Whitman attempts to cure the uncurable by *now* suggesting that Longview LLP may *indirectly* have contributed to Whitman's failure to receive payments allegedly owed by Longview Guernsey by "cho[o]s[ing] to hold onto the portion of those fees that are required to be transferred to Longview Guernsey, and then paid

---

[14] *See* Am. Compl., ¶¶ 10, 15, 24, 28, 40, 44, 50, 54, 57, 61, 69, 73, 79, 83; *see also id.*, Exh. A.

to Whitman." Opp. Br. at 17. Putting aside that the Amended Complaint *nowhere* pleads that Longview LLP did so—and putting aside that this argument does not even purport to provide a causal link between *Longview UK* and Whitman's alleged "losses"—this argument fails because, by Whitman's own admission, this argument is nothing more than pure conjecture.

Indeed, while the Agreement provides that the "Agency Fees" payable by Longview Guernsey to Whitman are to be "calculated as a percentage of" certain fees received by Longview LLP, *see* Am. Compl., ¶ 15, the Agreement *nowhere* provides—and Whitman nowhere even alleges—that Longview LLP had any obligation to actually remit to Longview Guernsey, for payment to Whitman, any funds actually received by Longview LLP. And even if Longview LLP had such an obligation, Whitman itself *admits* that its suggestion that Longview LLP actually "held onto" any such fees is nothing but rank speculation. *See* Opp. Br. at 8 (explaining that Whitman's position is merely that certain fees "should be transferred to Longview Guernsey—*if they have not already been*" (emphasis added)). It is well-settled, however, that a plaintiff may not survive a motion to dismiss on the basis of mere conjecture. *See Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011) (on a motion to dismiss, "a court does not accept as true allegations that 'while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross "the line between the conclusory and the factual."'"); *Almeida v. Rose*, No. 12–11476–PBS, 2014 WL 4794398, *3 (D. Mass. Sept. 24, 2014) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." (quoting *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).[15]

---

[15] In all events, it is well-settled that an *indirect* causal link between the plaintiff's alleged losses and the defendant's allegedly unfair and deceptive acts and practices is not enough; a plaintiff must allege and show that the defendant's conduct is a *direct and proximate* cause of its alleged "economic loss." *See FundQuest Inc. v. Travelers Cas. & Sur. Co.*, 715 F. Supp. 2d 202, 211 n.17 (D. Mass. 2010) ("In a Mass. Gen. Laws ch. 93A, § 11 context, a showing that

11

Furthermore, Whitman effectively admits—because it must—that it has suffered no loss beyond, and not already addressed by, the breach of contract damages it seeks against Longview Guernsey. Indeed, in an effort to point to some loss "apart from the amounts owed under the Agreement," Opp. Br. at 16, the best that Whitman can conjure up is that it "lost the use of at least ten million dollars in agency fees." *Id*. Manifestly, however, this is no different than saying that Whitman was deprived of the $10 million in agency fees allegedly owed under the Agreement—the same purported "loss" (in both character *and* amount) for which Whitman seeks breach of contract damages in Counts I-VII of the Amended Complaint. Accordingly, Whitman's Chapter 93A claim is not cognizable as a matter of law. *GMO Trust ex rel. GMO Emerging Country Debt Fund v. ICAP plc*, No. 12–10293–DPW, 2012 WL 5197545, *10 (D. Mass., Oct. 18, 2012) (Chapter 93A claim "not cognizable" where it failed to allege "any additional harm beyond … the breach of commercial obligation already addressed by [plaintiff's] contract claim").

      E.    The Amended Complaint Fails To Satisfy Chapter 93A's "Primarily And Substantially In Massachusetts" Requirement

As demonstrated by Judge Gorton's recent decision in *Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*, No. 13-11302-NMG, 2014 WL 1203106 (D. Mass., Mar. 19, 2014), Defendants' argument that the Amended Complaint must be dismissed for failure to plead that the alleged unfair and deceptive acts occurred "primarily and substantially" in Massachusetts is neither premature nor unfounded. In *Pine Polly*, as here, the plaintiff alleged it was the defendant's former exclusive broker, and brought a Chapter 93A claim against the defendant claiming that, after terminating the plaintiff's exclusive brokerage, the defendant "used

---

an unfair or deceptive act was a proximate cause of a loss of money or property is an essential element of the action.").

[p]laintiff's contacts and resources for its own profits by negotiating sales [for] which the [p]laintiff ha[d] not received commissions." *Id.* at *8. And in *Pine Polly*, as here, the plaintiff alleged that it was "a Massachusetts company," and that it "experienced [its alleged] loss in Massachusetts." *Id.* at *9. The plaintiff's complaint, however, did not allege that the parties negotiated or executed their exclusive contractual arrangement in Massachusetts, "g[a]ve[] no indication of the location of the customers which defendant, a Canadian company, [allegedly] diverted [to] deprive plaintiff of its earned commissions," and further "fail[ed] to articulate where defendant committed [its alleged] misconduct." *Id.* at *8. Judge Gorton thus concluded that, "[m]indful of the purpose and scope of Chapter 93A and applying the Rule 12(b)(6) plausibility standard," the plaintiff's Chapter 93A claim had to be dismissed because "the complaint fail[ed] to sufficiently connect the [defendant's] misconduct with Massachusetts." *Id.* at *8-9.

Here, Whitman's Amended Complaint likewise fails to allege that Whitman and Longview Guernsey negotiated or executed the Agreement in Massachusetts or articulate where any of the Defendants—none of whom operate out of Massachusetts—engaged in the allegedly unfair and deceptive acts, and *affirmatively alleges* that the clients in respect of which it seeks broker or finder fees are all located *outside* of Massachusetts. Accordingly, Whitman's Chapter 93A is likewise subject to dismissal. *See id.*

### III. Whitman's Opposition Fails To Demonstrate That The Amended Complaint States (Or Possibly Could State) A Plausible Civil Conspiracy Claim

For the same reasons noted above, Whitman's naked assertion that "[e]ach of the Defendants, acting through their common and overlapping employees and principals, engaged in a knowing and joint scheme to engage in the above-described unfair and deceptive business practices while conducting business with Whitman," *see* Am. Compl. ¶ 148, is insufficient to

state a cognizable claim for civil conspiracy. *See supra* Parts II.A & II.B. To properly plead a claim for conspiracy as to the individual defendants, Plaintiffs must plead facts that articulate the specific tortious acts through which each defendant substantially assisted in the alleged conspiracy. Furthermore, those facts must support a reasonable inference that each defendant in fact engaged in such alleged tortious acts. *See Iqbal*, 556 U.S. at 678. If the factual allegations made in a complaint are contradicted by the plaintiff's concessions, those factual allegations need not be accepted as true for the purposes of deciding the motion to dismiss. *See supra* Part II.A (citing *Iqbal*, 556 U.S. at 678).

Here, the Amended Complaint is necessarily bereft of any facts, as distinguished from legal conclusions, that support a reasonable inference that Longview LLP and Longview UK did anything to substantially assist in an alleged civil conspiracy. Nor could the Amended Complaint have included such facts, as only Longview Guernsey had any payment obligation to Whitman, and Whitman never made any payment demand upon Longview LLP or Longview UK. Whitman's conclusory assertion that Longview LLP and Longview UK withheld funds is entitled to no weight and does not suffice to state a plausible claim against them. *See supra* Part II.A. Moreover, Whitman's suggestion to the contrary notwithstanding, the law is clear that "substantial assistance" cannot be inferred merely on the basis of common and overlapping principals. *See Platten*, 437 F.3d at 131 ("[A]ll that is shown here is a family relationship, and that is insufficient on its own to support a conspiracy claim."). Whitman attempts to cite caselaw to the contrary to argue that a conspiratorial agreement "may be 'inferred from words, actions, and the interdependence of activities and persons involved.'" Opp. Br. at 19 (citing *Brothers v. Town of Millbury*, CIV.A. 14-10122-TSH, 2014 WL 4102436, at *7 (D. Mass. Aug. 14, 2014). However, in *Brothers*, the plaintiff alleged a number of actual facts that made it "plausible" that

three of the four defendants were acting under a common design. *See Brothers*, 2014 WL 4102436, at *7-8. Whitman, on the other hand, has alleged *only* the existence of a family relationship among the defendants to support its civil conspiracy claim. *See* Am. Compl. ¶ 148. Moreover, *Brothers* actually supports Defendants' argument, because the court dismissed the civil conspiracy count as to one of the alleged conspirators, because the complaint "contains no allegations of facts sufficient to show [one defendant] was involved." *Id.* at *8. Here, Whitman fails to allege any facts as to any defendant. Thus, Whitman's civil conspiracy claim as to all Defendants must fail.

Finally, that Whitman cannot plausibly state a claim for civil conspiracy as to Longview LLP and Longview UK alone precludes a claim against Longview Guernsey, as there can be no "conspiracy of one." *See Platten*, 437 F.2d at 131 ("No civil conspiracy claim can lie under plaintiff's theory because an entity cannot conspire with itself."). In addition, as to Longview Guernsey, the Amended Complaint is likewise bereft of nonconclusory and noncontradictory facts in the same manner as noted above with respect to Longview LLP and Longview UK.

## CONCLUSION

For the foregoing reasons, Defendant Longview Guernsey respectfully requests that the Court dismiss Counts IX and X asserted against it in Whitman's Amended Complaint, without leave to amend, and Defendants Longview LLP and Longview UK respectfully request that the Court dismiss all claims asserted against them in Whitman's Amended Complaint, without leave to amend.

Dated: October 21, 2014					Respectfully submitted,

/s/ Patrick J. O'Toole, Jr.
Patrick J. O'Toole, Jr. (BBO # 559267)
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, MA 02110
Tel.: (617) 772-8300
Fax: (617) 772-8333
Email: Patrick.otoole@weil.com

David R. Fertig
Robert S. Levine
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
Email: david.fertig@weil.com
Email: robert.levine@weil.com

*Attorneys for Longview Partners (Guernsey) Limited, Longview Partners LLP, and Longview Partners (UK) Limited*

**CERTIFICATE OF SERVICE**

    I, Patrick J. O'Toole, hereby certify that on the 21 day of October, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification and that I served the foregoing by mail upon any counsel of record not receiving electronic notification:

William L. Prickett, Esq.
Anne V. Dunne, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800
wprickett@seyfarth.com
adunne@seyfarth.com

/s/ Patrick J. O'Toole, Jr.
Patrick J. O'Toole, Jr.