UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
WHITMAN & COMPANY, INC.,                )
                                        )
        Plaintiff,                      )
                                        )
            v.                          )        Civil Action No. 14-12047-ADB
                                        )
LONGVIEW PARTNERS (GUERNSEY)            )
LIMITED, et al.,                        )
                                        )
        Defendants.                     )
_____)

<u>REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS</u>
[Docket Nos. 18, 20]

June 16, 2015

Boal, M.J.

        In this action, plaintiff Whitman & Company, Inc. ("Whitman") seeks to recover amounts

allegedly due under an Exclusive Agency Agreement.  In addition to claims for breach of

contract, plaintiff brings claims for unjust enrichment, civil conspiracy, and unfair or deceptive

business practices in violation of M.G.L. c. 93A, § 11 ("Chapter 93A").  Pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, Defendants Longview Partners LLP

("Longview") and Longview Partners (UK) Limited ("Longview UK") move to dismiss all of

the claims against them.  Docket No. 18.  Defendant Longview Partners (Guernsey) Limited

("Longview Guernsey") similarly moves to dismiss only two of the counts against it.  Docket

No. 20.[1]  For the following reasons, this Court recommends that the District Judge assigned to

this case grant the motions.

_____
[1] On December 16, 2014, the District Court referred the motions to the undersigned for a report
and recommendation.  Docket No. 35.

I. PROCEDURAL BACKGROUND

Whitman filed this action on May 7, 2014, naming Longview and Longview Guernsey as defendants. Docket No. 1. Whitman asserted claims for breach of contract (Counts I – VII), unjust enrichment (Count VIII), and breach of the covenant of good faith and fair dealing (Count IX).

On July 15, 2014, Longview and Longview Guernsey filed motions to dismiss. Docket Nos. 11, 13. Longview moved to dismiss all claims against it; Longview Guernsey moved to dismiss Counts VIII (unjust enrichment) and IX (breach of the covenant of good faith and fair dealing). On August 5, 2014, Whitman filed an Amended Complaint, rendering the motions to dismiss moot. Docket No. 16.

In addition to dropping some claims and adding new claims against Longview and Longview Guernsey, the Amended Complaint added Longview UK as a defendant.[2] The Amended Complaint contains ten counts. Counts I through VII assert claims for breach of contract against Longview Guernsey. Count VIII asserts a claim for unjust enrichment against Longview and Longview UK. Count IX asserts a claim for violations of Chapter 93A against all Defendants. Finally, Count X asserts a claim for civil conspiracy against all Defendants.

On September 14, 2014, the defendants filed motions to dismiss. Docket Nos. 18, 20. Longview Guernsey moves to dismiss Count IX (Chapter 93A) and Count X (civil conspiracy). Docket No. 20. Longview and Longview UK move to dismiss all claims against them. Docket No. 18. Whitman filed an opposition to the motions to dismiss on October 8, 2014. Docket No.

_____

[2] The Amended Complaint also names as defendants Longview Partners LP and Longview Partners Limited. The parties have stipulated to the removal of Longview Partners LP and Longview Partners Limited as defendants in this case. Docket No. 29.

30.  Defendants filed a consolidated reply on October 21, 2014.  Docket No. 33.  The Court heard oral argument on June 12, 2015.

II.     FACTS[3]

A.      The Defendants

Longview is a foreign entity organized and existing under the laws of the United Kingdom.  Amended Complaint ("AC") ¶ 2.  Longview is a global equity asset manager, and invests funds that have been entrusted to Longview by, among other clients, institutional investors based in the United States.  Id.  Longview is a registered investment advisor with the U.S. Securities and Exchange Commission ("SEC").  Id.

Longview Guernsey is a foreign entity organized under the laws of Guernsey.  AC ¶ 3.  Longview Guernsey is responsible for management and compliance oversight.  Id.  It delegates investment management responsibilities to Longview while retaining reporting and administrative functions, as well as oversight of Longview.  Id.  Longview Guernsey is also a registered investment advisor with the SEC.  Id.

Longview UK is a United Kingdom registered company.  AC ¶ 4.  Longview UK is wholly owned by Longview and serves as the managing member of Longview.  Id.

B.      Facts Giving Rise To This Action

On January 1, 2006, Whitman entered into an Exclusive Agency Agreement (the "Agreement") with Longview Guernsey.  AC ¶ 10.  On January 31, 2007, the Agreement was

---

[3] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Amended Complaint and drawing all reasonable inferences in Whitman's favor.  See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

amended to substitute Whitman as the sole contracting party following the death of R. Eugene Whitman, President of Whitman & Co. AC ¶ 11 and Ex. A thereto.

Pursuant to the Agreement, Whitman served as the exclusive marketing agent in connection with the solicitation of prospective clients for Longview Guernsey and Longview's predecessor, Longview Partners LP, within the United States, Canada and Bermuda (the "Territory"). AC ¶¶ 2, 12; Ex. A at 1-2; see also Docket No. 29. The term of the Agreement was January 1, 2006 through December 31, 2010. AC ¶ 12; Ex. A at 4.

As exclusive marketing agent, Whitman was responsible for, among other things introducing prospective investors to Longview's investment management and advisory services, arranging meetings between Longview Guernsey, Longview and prospective clients, providing follow-up to all meetings and such additional assistance to Longview Guernsey and/or the other Defendants as might be needed. AC ¶ 13. Whitman was the only entity or person who could be considered an introducer of prospective clients located within the Territory. AC ¶ 14.

Pursuant to Section 4 of the Agreement, Longview Guernsey was required to pay agency fees to Whitman over the course of a five year period, which commenced "on the date(s) on which such Clients place assets under the management of Longview." AC ¶ 15; Ex. A at 3. The agency fees due to Whitman were calculated as a percentage of the management fees received by Longview as follows: 25% for the first year, 20% for the second year, 15% for the third and fourth years, and 10% for the fifth year. Id. Agency fees were "due and payable to Whitman within 30 days after the receipt by Longview of the Management Fees on which such Agency Fees are based." AC ¶ 16; Ex. A at 3.

In the event that a client "commit[s] assets to Longview on more than one occasion, the Agency Fee with respect to each such commitment shall be separately calculated in accordance

with the five-year schedule." AC ¶ 17; Ex. A at 3.  In addition, any introduction by Whitman during the term of the Agreement, which later resulted in a client investment with Longview or another Defendant after the expiration of the Agreement, nevertheless triggered Agency Fees owed to Whitman over the succeeding five years following each investment by the client.  AC ¶ 18; Ex. A at 3-4.

Whitman alleges, on information and belief, that "the Agency Fees that Longview Guernsey owe[d] under the Agreement are earned as revenue by Longview or another Defendant."  AC ¶ 3.  In addition, it alleges that, because the Defendants have overlapping and common principals, those individuals are able to move funds from one Defendant to another, in any manner they deem appropriate.  Id.

Under the terms of the Agreement, Whitman introduced the Defendants to at least seven current clients and one prospective client.  AC ¶ 19.  In addition, according to Whitman, there may be additional prospective clients who were introduced to Longview by Whitman, and who, without Whitman's knowledge, have subsequently invested funds with Longview.  AC ¶ 20. Whitman alleges that any such client investments with Longview triggered or would trigger agency fees due to Whitman.  Id.

More specifically, Whitman alleges that it introduced Pfizer, Inc.; Deseret Mutual Insurance Company; Utah Retirement Systems; North Carolina Retirement Systems; Maryland State Retirement and Pension System; Washington State Investment Board; and the Public Retirement System of Idaho to the Defendants (the "Clients") to the Defendants.  AC ¶¶ 21, 29, 37, 45, 55, 62, 74.  Whitman also alleges that the Clients made multi-million dollar investments with Defendants.  AC ¶¶ 22, 30, 38, 47-48, 56, 68, 78.  However, in violation of the Agreement,

Longview Guernsey has failed to make agency fee payments due to Whitman.  AC ¶¶ 24, 32, 40, 50, 57, 69, 79.

Whitman alleges that, following Longview Guernsey's cessation of payments owed to Whitman, Longview Guernsey and the other Defendants ignored Whitman's inquiries and requests for payment.  AC ¶¶ 25, 33, 41, 51, 58, 70, 80.  Whitman alleges, on information and belief, that "Defendants did so in an intentional and calculated effort to use their significantly larger financial bargaining power to coerce or induce Whitman into compromising its claim or to accept a lesser amount than the amount owed to Whitman by Longview Guernsey."  Id.

On February 5, 2014, the Defendants provided written notice to Whitman that Longview Guernsey (and Longview) did not intend to make any additional payments of agency fees due to Whitman under the Agreement, thereby repudiating the Agreement as to any future amounts due to Whitman in connections with the Clients' investments.  AC ¶¶ 26, 34, 42, 52, 59, 71, 81.  In the February 5 communication, Defendants cited a separate negotiation with a Longview client as a purported basis for Longview Guernsey's decision to cease making the payments required under the Agreement.  AC ¶¶ 27, 35, 43, 53, 60, 72, 82.  Whitman alleges that "Defendants each knew full well that this cited 'basis' for non-payment was frivolous and was simply part of their common plan and scheme to coerce Whitman into reducing its claim or to drop it altogether." Id.

By letter dated March 26, 2014, Whitman made further written demand on Longview Guernsey for payment of the amounts allegedly due under the Agreement, which Defendants ignored.  AC ¶¶ 28, 36. 44, 54, 61, 73, 83.  Since this demand, Longview Guernsey and the other Defendants have refused to make any of the payments allegedly owed to Whitman under the Agreement.  Id.

III.    <u>ANALYSIS</u>

A.      <u>Standard Of Review</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 28-29 (1st Cir. 2011) (citation omitted). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. <u>Iqbal</u>, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>; <u>see also</u> <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. <u>Iqbal</u>, 556 U.S. at 679.

B.      <u>Statute Of Frauds</u>

Longview and Longview UK argue that Whitman's claims are barred by the Massachusetts Statute of Frauds, M.G.L. c. 259, § 7, because Longview and Longview UK were

not signatories to the Agreement.  Docket No. 19 at 9-13; Docket No. 33 at 2-4.  The Court agrees.

Before the enactment of M.G.L. c. 259, §7, the Massachusetts Supreme Judicial Court recognized that oral arrangements to pay broker commissions are "unquestionably susceptible of misstatement and exaggeration and can lead to unwarranted claims."  Davidson v. Robie, 345 Mass. 333, 338 n. 6 (1963).  To remedy this problem, the Massachusetts Legislature enacted a Statute of Frauds specific to broker agreements.  The statute provides, in relevant part:

> Any agreement to pay compensation for service as a broker or finder . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized. . .   The provisions of this section shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation for professional services of an attorney-at-law or a licensed real estate broker or real estate salesman acting in their professional capacity.

M.G.L. c. 259, § 7.

Section 7 was enacted in order "to discourage claims for commission based on a conversation which persons heard differently or remembered differently."  Adelson v. Hananel, No. 04-cv-10357-RCL, 2009 WL 5905389, at *5 (D. Mass. Feb. 24, 2009) (quoting Cantell v. Hill Holiday Connors Cosmopoulos, Inc., 55 Mass. App. Ct. 550, 553 (2002)).  Section 7 is construed broadly, and applies to claims for commissions for sales brokerage services in every commercial brokerage context other than the explicit exceptions for services by attorneys or licensed real estate brokers or real estate salesmen acting in their professional capacity.  Bay Colony Mktg. Co. v. Fruit Salad, Inc., 41 Mass. App. Ct. 662, 667 (1996).

Failure to comply with the statute of frauds bars not only contract claims but also any claims based on a contract implied in law, including recovery in quantum meruit.  Cantell v. Hill Holiday Connors Cosmopulos, 55 Mass. App. Ct. 550, 554 n. 6 (2002).  Chapter 93A claims

derivative of the breach of contract claim are also barred.  Id. at 556; see also Michael A. Mentuck & Associates, Inc. v. Lloyds Underwriting Syndicate #1209, No. 11-10118-GAO, 2013 WL 783050, at *5 (D. Mass. Feb. 28, 2013).

Whitman argues that the statute of frauds does not bar its claims because there is a signed enforceable contract here, namely, the Agreement.[4]  Docket No. 30 at 13-16.  The Agreement, however, was only signed by Longview Guernsey, not Longview or Longview UK.

The Massachusetts Statute of Frauds explicitly requires that the contract be "signed by the party to be charged therewith, or by some other person authorized. . ."  M.G.L. c. 259, § 7.  Whitman does not allege that it had a written contract with Longview or Longview UK or that they were a party to the Agreement.  Whitman also does not allege that Longview Guernsey was authorized to bind Longview or Longview UK.  Accordingly, the plain language of the statute bars Whitman's unjust enrichment claim against Longview and Longview UK.

Contrary to Whitman's argument, Judge Casper's decision in Licensed 2 Thrill, LLC v. Rakuten, Inc., No. 13-11257-DJC, 2014 WL 4656588 (D. Mass. Sept. 15, 2014), does not support its position.  In Licensed 2 Thrill, the plaintiff brought several claims against three affiliated defendants, including breach of a referral agreement signed by one of the defendants, FreeCause.  Id. at *1.  The plaintiff also brought claims, inter alia, of unjust enrichment against

---

[4] At oral argument, Whitman's counsel stated that he does not concede that Section 7 applies to this case.  However, Whitman has not argued, either in its papers or at oral argument, that Section 7 does not apply.  In any event, it appears that Whitman is a "finder" under Section 7.  A finder is "[a]n intermediary who brings together parties for a business opportunity . . . A finder locates, introduces, and brings parties to a transaction together . . ."  Cantell, 55 Mass. App. Ct. at 554.  On the facts alleged in the Amended Complaint, Whitman's services appear to be those of a finder within the meaning of the statute.  Among other things, Whitman was responsible for arranging meetings between Longview, Longview UK and Longview Guernsey and prospective investors, becoming entitled to receive agency fees if a prospective investor actually placed assets under the management of Longview.  AC ¶¶ 13, 15.

Rakuten USA and Rakuten USA's parent, Rakuten, Inc.  Id.  Judge Casper held that the statute of frauds did not bar the plaintiff's claims against FreeCause, the party who had signed a written finder's agreement with plaintiff in 2008 and Rakuten USA, the company that purchased FreeCause in 2009.  Id.  Rakuten, Inc. did not move to dismiss the claims against it.  Id. at *1; *6 n. 1.  The parties did not raise, and the opinion did not discuss, the argument presented by Whitman: that the statute of frauds does not bar a finder's claim for compensation against defendants with whom the finder has no written agreement as long as some affiliate of those parties has a written agreement with the finder.  See Licensed 2 Thrill, LLC v. Rakuten, Inc., et al., No. 13-cv-11257 at Docket Nos. 20, 25.  Therefore, Licensed 2 Thrill is inapposite.

The Court also finds that Whitman's Chapter 93A claim against Longview and Longview UK is barred by the statute of frauds.  As more fully discussed below, the gravamen of Whitman's Chapter 93A claims is that the Defendants have refused to pay fees due under the Agreement.  As such, the Chapter 93A claim is derivative of Whitman's breach of contract claims and barred by the statute of frauds as to Longview and Longview UK, as they did not sign the Agreement.

Accordingly, the Court recommends that the District Court dismiss the unjust enrichment and Chapter 93A claims against Longview and Longview UK.

C.     Whitman Has Failed To State A Chapter 93A Claim

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, §2(a).  A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the plaintiff, and (3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury.  Casavant v. Norwegian Cruise Line, Ltd., 76 Mass. App. Ct.

73, 76 (2009), aff'd, 460 Mass. 500 (2011) (citing G.L. c. 93A, § 9); Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc., 445 Mass. 790, 797 (2006)).  "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'"  Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted).  "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law."  Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

All three Defendants move to dismiss the Chapter 93A claim on the grounds that Whitman has not pled facts sufficient to state a Chapter 93A claim.  Docket No. 19 at 13-21; Docket No. 21 at 12-20.  Specifically, the Defendants argue that Whitman has not adequately pled that (1) the Defendants engaged in any unfair or deceptive act; (2) Defendants' conduct caused Whitman to suffer an economic loss; (3) Whitman was engaged in "trade or commerce" with the Defendants; or (4) any unfair or deceptive act occurred "primarily and substantially" in Massachusetts.  The Court finds that while Whitman has sufficiently pled facts to satisfy the loss, trade or commerce, and conduct occurring within Massachusetts requirements, it has failed to plead conduct rising to the level of unfair or deceptive acts.

1.      Whitman Has Not Pled Conduct Rising To
        The Level Of Unfair Or Deceptive Acts

First, Defendants argue that Whitman has not pled conduct rising to the level of an "unfair or deceptive act" under Chapter 93A.  Docket No. 19 at 17-18; Docket No. 21 at 13-15.  They argue that Whitman's allegations plead nothing more than a breach of contract claim, which, alone, cannot be the basis for a Chapter 93A claim.  Id.  This Court agrees.

"[A] simple, or even intentional, breach [of contract] is insufficient in itself to constitute an unfair or deceptive trade practice under Chapter 93A." City of Revere v. Boston/Logan Airport Associates, LLC, 416 F. Supp. 2d 200, 208 (D. Mass. 2005) (citations omitted); see also Massachusetts Employers Insur. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995); Zabin v. Picciotto, 73 Mass. App. Ct. 141, 169 (2008); Pepsi-Cola Met. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985); Mead Corp. v. Stevens Cabinets, Inc., 938 F. Supp. 87, 91 (D. Mass. 1996). Moreover, mere non-payment of a debt does not normally constitute a Chapter 93A violation. Callahan v. Harvest Board Int'l, Inc., 138 F. Supp. 2d 147, 166 (D. Mass. 2001) (citing Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513-14 (1st Cir. 1989)). In order to transform a breach of contract to a Chapter 93A claim, "the breach must be both knowing and intended to secure 'unbargained-for benefits' to the detriment of the other party." City of Revere, 416 F. Supp. 2d at 209 (citation omitted). "[T]he theme of the cases in which a breach of contract has amounted to a 93A violation is 'the use of a breach of contract as a lever to obtain advantage for the party committing the breach in relation to other party; i.e., the breach of contract has an extortionate quality that gives it the rancid flavor of unfairness.'" Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 9 F. Supp. 2d 49, 68-69 (D. Mass. 1998) (citations omitted).

Here, in an effort to show that the Defendants' conduct rose to the level of a Chapter 93A violation, Whitman alleges that:

- The Defendants "acted in concert with one another in an unfair and deceptive effort to coerce Whitman into unfairly compromising or otherwise abandoning its rights to receive the amounts due to it under the Agreement." AC ¶ 141.

- The Defendants have ignored Whitman's efforts to collect the amounts owed to it "as a wedge to coerce Whitman into accepting a substantially lesser settlement between the parties than was contracted for between the parties." Id.

- The Defendants' basis for withholding payment under the Agreement was frivolous. See, e.g., AC ¶¶ 35, 142, 143.

- "By using the undisputed funds due and owing to Whitman and the settlement with a Longview Client as wedges to coerce Whitman, Defendants engaged in conduct in disregard of known contractual arrangements with the intention of securing an unbargained-for-benefit for themselves." AC ¶ 144.

The problem with Whitman's allegations is that these statements are nothing more than conclusory statements "devoid of 'further factual enhancement.'" See Husk, LLC v. Coca-Cola Refreshments USA, Inc., No. 11-11721-JLT, 2013 WL 55815, at *2 (D. Mass. Jan. 2, 2013) (citations omitted). Whitman's allegations simply mirror key language in opinions finding that a breach of contract amounted to a Chapter 93A violation but contain no facts to support those conclusions. In those cases where courts have found Chapter 93A violations arising out of a breach of contract, additional services or advantages were wrestled from the aggrieved party through false promises. See, e.g., Arthur D. Little, Inc., 147 F.3d at 55-56 (court found 93A liability where defendants "wrongful purpose was to extract a favorable settlement from [plaintiff] for less than the amount defendant knew it owed by repeatedly promising to pay, not doing so, stringing out the process, and forcing [plaintiff] to sue."); Pepsi-Cola Metro. Bottling Co., 754 F.2d at 18 (customer withheld payment due distributor as leverage in bargaining to receive more product in the future). While the Amended Complaint alleges that Defendants have resisted Whitman's efforts to collect its fees, it contains no sufficiently pled allegations regarding

any additional services or advantages Defendants sought to obtain.  There are also no allegations that Defendants strung out the process by, for example, promising to mail a payment but then failing to do so.  Whitman's well-pled facts suggest nothing more than a mere breach of contract, even if it is a knowing or intentional breach.  As such, Whitman's Amended Complaint fails to state a Chapter 93A claim.

The Court also notes that Whitman refers collectively to the Defendants when the specific factual allegations do not support a reasonable inference that all of the Defendants were involved in the alleged conduct.  While "group pleading" is not prohibited per se, the complaint must allege a plausible claim against each defendant.  See Zond, Inc. v. Fujitsu Semiconductor Ltd., 990 F. Supp. 2d 50, 53 (D. Mass. 2014).  Based on the Amended Complaint's allegations and the Agreement, only Longview Guernsey ever had the obligation to respond to Whitman's demands or to make any payments under the Agreement.  Therefore, Whitman's conclusory allegations that "each of the Defendants" engaged in unfair or deceptive act practices fails to state a plausible claim against Longview or Longview UK.  Accordingly, even if the alleged conduct gave rise to a Chapter 93A violation, the Amended Complaint fails to state a plausible claim against Longview and Longview UK.

2.     Economic Loss

In order to state a Chapter 93A claim, Whitman must sufficiently allege that it suffered a "loss of money or property."  M.G.L. c. 93A, § 11; Fundquest Inc. v. Travelers Casualty and Surety Co., 715 F. Supp. 2d 202, 211 n. 17 (D. Mass. 2010) (Under M.G.L. c. 93A, § 11, "a showing that an unfair or deceptive act was a proximate cause of a loss of money or property is an essential element of the action.").  "'[M]oney' means money, not time," and "'property' means the kind of property that is purchased or leased, not such intangibles as a right to sense of

security to peace of mind, or to personal liberty." <u>Arthur D. Little, Inc.</u>, 147 F.3d at 56. The loss of money or property must stem from the allegedly deceptive or unfair act. <u>Id.</u> "In the absence of a causal connection between the alleged unfair acts and the claimed loss, there can be no [chapter 93A] recovery." <u>RGJ Assocs., Inc. v. Stainsafe, Inc.</u>, 338 F. Supp. 2d 215, 237 (D. Mass. 2004) (quoting <u>Massachusetts Farm Bureau Federation v. Blue Cross</u>, 403 Mass. 722 (1989)).

The Defendants argue that Whitman's Chapter 93A claim also fails because it cannot establish that it suffered any economic loss beyond the loss already addressed by its breach of contract claims. Docket No. 19 at 19; Docket No. 21 at 15-16. The Defendants appear to be arguing that Whitman has not alleged a loss because the loss is the same unpaid amounts allegedly due under the Agreement. <u>See id.</u> However, the loss of use of money owed under a contract, together with the plaintiff's expenses incurred in attempting to collect the debt, satisfies the loss requirement. <u>See</u> <u>RSA Media, Inc. v. The Mortgage Specialists</u>, No. 014050F, 2005 WL 1009570, at *4 (Mass. Super. 2005) (citing <u>Arthur D. Little</u>, 147 F.3d at 57).

In addition, Defendants argue that Whitman cannot establish that any unfair or deceptive act by Longview or Longview UK caused Whitman to suffer an economic loss. Docket No. 19 at 19. This argument, however, goes to whether Whitman has plausibly alleged that Longview or Longview UK in fact committed an unfair or deceptive act or practice, not whether Whitman suffered a loss.

The Court, therefore, declines to recommend dismissal on this basis.

3.      <u>Trade Or Commerce Requirement</u>

Defendants next argue that Whitman has failed to allege that it was engaged in trade or commerce. Docket No. 19 at 20; Docket No. 21 at 16-19. Though Chapter 93A provides a

broad remedy, it is directed only at unfair or deceptive acts that arose "in the course of trade or commerce."[5]  St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis, 262 F.3d 53, 66 (1st Cir. 2001) (citing Lantner v. Carson, 374 Mass. 606, 607-08 (1978)); First Enters., Ltd. v. Cooper, 425 Mass. 344 (1997)).  As a threshold matter, analysis of the applicability of Section 11[5] of Chapter 93A "requires a dual inquiry whether there was a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, so that they were acting in a 'business context.'" Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008) (citations omitted).  The SJC has stated that Chapter 93A does not apply to "intra-enterprise disputes because they are more similar to purely private disputes and are not 'commercial transaction[s] . . . in the sense required by c. 93A.'" Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 23 n. 33 (1997) (quoting Szalla v. Locke, 421 Mass. 448, 452 (1995)); see also First Enters., 425 Mass. at 347-48 (internal business dispute between parties in the same venture not commercial marketplace transaction); Newton v. Moffie, 13 Mass. App. Ct.

---

[5] The statute defines trade and commerce as:

> . . . the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security  . . . and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.

M.G.L. c. 93A, § 1(b).

[5] A plaintiff seeking damages under Chapter 93A must proceed under one of two statutory sections, Section 9 or Section 11.  Beaudette v. Sentry Ins. Mut. Co., 94 F. Supp. 2d 77, 120 (D. Mass. 1999) (citing Shawmut Cmty. Bank v. Zagami, 411 Mass. 807 (1992)).  Section 9 applies to consumers while Section 11 applies to "any person who engages in the conduct of any trade or commerce."  Id. (quoting M.G.L. c. 93A).  Whitman has alleged that it has engaged in an extended course of commerce with Defendants and brings its claims under Section 11.  AC ¶ 140.

462, 467 (1982) (Section 11 intended to apply to dealings between legally separate persons engaged in arm's length transactions). "Included in this 'intra-enterprise' classification are disputes stemming from an employment relationship, disputes between individual members of a partnership arising from partnership business, and transactions and disputes between parties to a joint venture and between fellow shareholders." Linkage Corp., 425 Mass. at 23 n. 33.

Courts apply the test articulated in Begelfer v. Najarian, 381 Mass. 177, 190-91 (1980), to determine whether the parties were engaged in "trade or commerce" with each other. See Milliken, 451 Mass. at 564. Under that test, courts assess "the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties. Other relevant factors are whether similar transactions have been undertaken in the past, whether the transaction is motivated by personal or business reasons . . . , and whether the participant played an active part in the transaction." Begelfer, 381 Mass. at 191 (internal citation omitted). Whether a particular transaction occurred in the regular course of business or occupation of the defendant is another factor to be considered, but is not dispositive. Id.; All Seasons Services, Inc. v. Commissioner of Health and Hospitals of Boston, 416 Mass. 269, 271 (1993).

It is far from clear that the dispute here qualifies as a private, employment-related or intra-enterprise controversy outside of the trade or commerce requirement of Chapter 93A. Based on the allegations in the Complaint, Whitman was not a stockholder, officer, director, or employee of the Defendants. While the Agreement provided that Whitman was to be the exclusive marketing agent for Longview Guernsey, nothing in it prevents Whitman from providing its services to anyone else. The relationship between the parties alleged in the Amended Complaint appears to be significantly different from the direct employer-employee or shareholder-corporation disputes to which courts have held Chapter 93A is inapplicable.

Accordingly, at this stage of the proceedings, the Court finds that the Chapter 93A claim is not subject to dismissal on this basis.

       4.      <u>Acts Occurring "Primarily And Substantially" Within Massachusetts</u>

Finally, the Defendants argue that Whitman has failed to allege that unfair or deceptive acts occurred primarily and substantially within Massachusetts. Docket No. 19 at 20-21; Docket No. 21 at 19-20. In order to allege a viable Chapter 93A claim, the unfair or deceptive act must occur "primarily and substantially within the Commonwealth." Mass. Gen. Laws c. 93A, § 11. The burden of proof is upon the person claiming that the transaction did not occur in the Commonwealth. <u>Id.</u> "[W]hether the 'actions and transactions occurred primarily and substantially within the commonwealth' is not a determination that can be reduced to any precise formula." <u>Kuwaiti Danish Computer Co. v. Digital Equip. Corp.</u>, 438 Mass. 459, 472 (2003). The Massachusetts Supreme Judicial Court has held that a court should make a determination whether "the center of gravity" of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth "after making findings of fact, and after considering those findings in the context of the entire § 11 claim." <u>Id.</u> at 472. "This would include, but not be limited to, looking at the place of conduct and the 'situs of loss.'" <u>Auto Shine Car Wash Systems, Inc. v. Nice 'N Clean Car</u>, 58 Mass. App. Ct. 685, 689 (2003) (quoting <u>Kuwaiti Danish Computer Co.</u>, 438 Mass. at 472 n.13); <u>see</u> <u>also</u> <u>Workgroup Tech. Corp. v. MGM Grand Hotel, LLC</u>, 246 F. Supp. 2d 102, 117 (D. Mass. 2003) ("It is the location of the person to whom the deceptive statements are made rather than the location of the person who uttered the deceptive or unfair statement that is significant.").

Because the decision as to whether the "center of gravity" is primarily and substantially within the Commonwealth is highly factual and because the defendant bears the burden of proof

on the issue, the issue is not generally the appropriate subject for a motion to dismiss.  See, e.g., Workgroup Tech. Corp., 246 F. Supp. 2d at 118; see also Guest-Tek Interactive Entm't, Inc. v. Pullen, 731 F. Supp. 2d 80, 92 (D. Mass. 2010) (citations omitted) ("For purposes of a motion to dismiss, a 'section eleven cause of action should survive a 'primarily and substantially' challenge so long as the complaint alleges that the plaintiff is located, and claims an injury in Massachusetts.'").

Here, Whitman alleges that it is located in Massachusetts and that the Defendants' alleged actions occurred and impacted Whitman in Massachusetts.  AC ¶¶ 1, 145.  Accordingly, the Court finds that Whitman's allegations are sufficient to overcome the motion to dismiss on this basis, although factual development may reveal that the alleged misconduct occurred predominantly outside of Massachusetts.

Accordingly, while Whitman's Chapter 93A claim is not subject to dismissal on the loss, trade or commerce, or acts occurring primarily and substantially within Massachusetts requirements, Whitman has failed to plead conduct rising to the level of unfair or deceptive acts and its Chapter 93A claim should be dismissed.

D.     Civil Conspiracy

Finally, the Court finds that Whitman has failed to state a claim for civil conspiracy. Massachusetts law recognizes two types of civil conspiracy, so called "true conspiracy" and a conspiracy based on section 876 of the Restatement (Second) of Torts.[6]  Taylor v. American

---

[6] A "true conspiracy," is a "rare" and "very limited" cause of action.  Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994).  In order to state a claim for true conspiracy, the plaintiff must allege and prove that by "mere force of numbers acting in unison," the defendants exercised "some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had."  Fleming v. Dane, 304 Mass. 46, 50 (1939) (citations omitted).  "This cause of action seems to have been applied principally to remedy direct economic coercion, as in 'the combined actions of groups of employers or

Chemistry Council, 576 F.3d 16, 34 (1st Cir. 2009). The second type of conspiracy claim is "akin to a theory of common law joint liability in tort." Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994). To state a claim for this type of conspiracy, the plaintiff must allege "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Id. The plaintiff need not prove the existence of an agreement by direct evidence but the agreement may be inferred from conduct of the parties suggesting that they had an implied meeting of the minds. Payton v. Abbott Labs, 512 F. Supp. 1031, 1035 (D. Mass. 1981) (citations omitted).

"Because it is vicarious liability, this type of civil conspiracy requires an underlying tort." Taylor, 576 F.3d at 35. Here, Whitman bases its claim for civil conspiracy on the Chapter 93A claim. AC ¶¶ 148-151. As the Court has found that Whitman has failed to state a claim under Chapter 93A, its conspiracy claim must necessarily fail as well. Accordingly, the Court recommends that the District Court dismiss the civil conspiracy claim.

IV. RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case grant the Defendants' motions to dismiss (Docket Nos. 18 and 20); dismiss Longview and Longview UK from this action; and dismiss Counts VIII (unjust enrichment), IX (Chapter 93A), and X (Civil Conspiracy) of the Amended Complaint.

---

employees, where through the power of combination pressure is created and results brought about different in kind from anything that could have been accomplished by separate individuals' or in other kinds of concerted refusals to deal." Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 244 (D. Mass. 1999) (quoting Fleming, 304 Mass. at 50). The Amended Complaint does not contain any allegations supporting a true conspiracy and Whitman has not suggested that it brings such a claim. See Docket No. 30 at 24-26.

V.     <u>REVIEW BY DISTRICT JUDGE</u>

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  <u>See</u> Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  <u>See</u> <u>Phinney v. Wentworth Douglas Hospital</u>, 199 F.3d 1 (1st Cir. 1999); <u>Sunview Condo. Ass'n v. Flexel Int'l, Ltd.</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge
