## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| WHITMAN & COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:14-cv-12047 |
| ) | |
| v. ) | |
| ) | |
| LONGVIEW PARTNERS (GUERNSEY) ) | |
| LIMITED ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO THE AMENDED COMPLAINT

Patrick J. O'Toole, Jr., Esq.
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, MA 02110
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
Email: patrick.otoole@weil.com

David R. Fertig, Esq.
Robert S. Levine, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: david.fertig@weil.com
Email: robert.levine@weil.com

*Attorneys for Defendant Longview Partners (Guernsey) Limited*

Longview Partners (Guernsey) Limited ("Longview Guernsey" or "Defendant"), the Defendant and Counterclaimant in this action, by and through its undersigned attorneys, as and for its answer and affirmative defenses to the Amended Complaint filed by Plaintiff Whitman & Company, Inc. ("Plaintiff" or "Whitman & Co.") on August 5, 2014 in connection with the above-captioned action (the "Amended Complaint"), hereby avers as follows based upon its present knowledge or, where indicated, based upon information and belief. Except as expressly admitted herein, each and every allegation in the Amended Complaint is expressly hereby denied:

## INTRODUCTION

The first paragraph of the Amended Complaint contains Whitman & Co.'s characterization of its allegations to which no response is required. To the extent any response to this introductory paragraph is required, Defendant denies all such allegations.

## PARTIES

1.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Amended Complaint and, on that basis, denies those allegations.

2.     Pursuant to the Order by District Court Judge Burroughs, dated July 20, 2015 (Dkt. 46) (the "MTD Order"), each count in the Amended Complaint asserted against Longview Partners LLP ("Longview LLP") has been dismissed and Longview LLP is no longer a party to this action. To the extent any further response is required, the allegations in this Paragraph are denied.

3.     Defendant admits that Longview Guernsey is an entity organized and existing under the laws of Guernsey and that it currently maintains its principal place of business at P.O. Box 559, Sarnia House, Le Truchot, St Peter Port, Guernsey, GY1 6JG. Defendant further

admits that Longview Guernsey is a registered investment advisor with the SEC. Defendant denies, however, each and every other allegation contained in Paragraph 3 of the Amended Complaint.

4.      Pursuant to the MTD Order, each count in the Amended Complaint asserted against Longview Partners (UK) Limited ("Longview UK") has been dismissed and Longview UK is no longer a party to this action. To the extent any further response is required, the allegations in this Paragraph are denied.

5.      The parties have stipulated to the removal of Longview Partners LP ("Longview LP") as a defendant in this case. *See* Stipulation to Correct Caption and Name of Defendants, filed October 8, 2014 (Dkt. 29). Thus, no response is needed to these allegations. To the extent any further response is required, the allegations in Paragraph 5 of the Amended Complaint are denied.

6.      The parties have stipulated to the removal of Longview Partners Limited as a defendant in this case. *See* Stipulation to Correct Caption and Name of Defendants, filed October 8, 2014 (Dkt. 29). Thus, no response is needed to these allegations. To the extent any further response is required, the allegations in Paragraph 6 of the Amended Complaint are denied.

## JURISDICTION AND VENUE

7.      The allegations contained in Paragraph 7 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 7 of the Amended Complaint.

8.      The allegations contained in Paragraph 8 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive

averment is required. Furthermore, Longview LLP and Longview UK are no longer parties to this action pursuant to the MTD Order and Longview LP and Longview Partners Limited are no longer parties to this action pursuant to a stipulation between the parties. *See* Stipulation to Correct Caption and Name of Defendants, filed October 8, 2014 (Dkt. 29). Thus, no response to these allegations from Longview LLP, Longview UK, Longview LP, and/or Longview Partners Limited is necessary. To the extent any further response is required, the allegations in Paragraph 8 of the Amended Complaint are denied.

9. The allegations contained in Paragraph 9 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 9 of the Amended Complaint.

## STATEMENT OF FACTS

10. Defendant admits that Longview Guernsey and R. Eugene Whitman entered into a contract, styled as an Exclusive Agency Agreement, on January 1, 2006 (as amended on or about January 31, 2007, the "Agreement") in connection with the solicitation of prospective investment advisory clients for Longview Guernsey and Longview LP[1] (collectively "Longview"). Defendant further admits that Whitman & Co. has alleged that such Agreement "is the contract under which Whitman's claims arise in this case." In addition, Defendant avers that the terms of the Agreement speak for themselves and denies any mischaracterizations or incomplete characterizations of those terms. Defendant denies, however, each and every other allegation contained in Paragraph 10 of the Amended Complaint.

---

[1] On July 3, 2012 Longview Partners LP ceased to exist and was succeeded by Longview Partners LLP. *See* Stipulation to Correct Caption and Name of Defendants, filed October 8, 2014 (Dkt. 29).

11.     Defendant admits that, following the death of R. Eugene Whitman, the Agreement was amended by letter agreement dated as of January 31, 2007.  Further answering, Defendant states the terms of the amendment speak for themselves and denies any mischaracterizations or incomplete characterizations of those terms.  Defendant avers, however, that the remaining allegations contained in Paragraph 11 of the Amended Complaint do not constitute factual allegations to which any responsive averment is required. To the extent any responsive pleading is required, Defendant denies each and every other allegation contained in Paragraph 11 of the Amended Complaint.

12.     The allegations contained in Paragraph 12 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 12 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

13.     The allegations contained in Paragraph 13 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 13 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

14.     The allegations contained in Paragraph 14 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment

is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 14 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

15.     The allegations contained in Paragraph 15 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 15 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

16.     The allegations contained in Paragraph 16 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 16 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

17.     The allegations contained in Paragraph 17 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 17 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

18.     The allegations contained in Paragraph 18 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations

or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 18 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

19. The allegations contained in Paragraph 19 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 19 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

20. Defendant denies the allegations contained in Paragraph 20 of the Amended Complaint.

21. The allegations contained in Paragraph 21 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 21 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

22. Defendant admits that The Plan Assets Committee and the Global Benefits Investment Committee under the Master Trust Agreement between Pfizer Inc. and The Northern Trust Company ("Pfizer") appointed Longview Guernsey to perform portfolio management services. Defendant further admits that Pfizer's portfolio was funded with approximately $200

million in assets between 2009 and 2012. Defendant, however, denies each and every other allegation contained in Paragraph 22 of the Amended Complaint.

23.     Defendant admits that Longview Guernsey made payments it calculated were due to Whitman & Co. pursuant to the Agreement through the second quarter of 2013, but denies each and every other allegation contained in Paragraph 23 of the Amended Complaint.

24.     Defendant denies the allegations contained in Paragraph 24 of the Amended Complaint.

25.     Defendant denies the allegations contained in Paragraph 25 of the Amended Complaint.

26.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks, Pierce, McLendon, Humphrey & Leonard LLP ("Brooks Pierce"), wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 26 of the Amended Complaint and further avers that the terms of the Agreement and the February 5, 2014 email speak for themselves and refers to the Agreement and the February 5, 2014 email for a complete and accurate description of their contents, contexts and meanings.

27.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of

third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 27 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

28. Defendant admits that, by letter dated March 26, 2014, William L. Prickett, an attorney with the law firm of Seyfarth Shaw LLP ("Seyfarth Shaw") purporting to represent Whitman & Co., wrote to Wes J. Camden of Brooks Pierce, purporting to demand payment of amounts allegedly owed under the Agreement. Defendant denies, however, each and every other allegation contained in Paragraph 28 of the Amended Complaint and further avers that the March 26, 2014 letter speaks for itself and refers to the March 26, 2014 letter for a complete and accurate description of its content, context and meaning.

29. The allegations contained in Paragraph 29 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 29 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

30. Defendant admits that Deseret Mutual Benefit Administrators as Trustee for Deseret Mutual Employee Pension Trust ("Deseret") appointed Longview Guernsey to perform portfolio management services. Defendant further admits that Deseret's portfolio was funded

with approximately $35 million in assets between 2009 and 2012. Defendant, however, denies each and every other allegation contained in Paragraph 30 of the Amended Complaint.

31.     Defendant admits that Longview Guernsey made payments it calculated were due to Whitman & Co. pursuant to the Agreement through the second quarter of 2013, but denies each and every other allegation contained in Paragraph 31 of the Amended Complaint.

32.     Defendant denies the allegations contained in Paragraph 32 of the Amended Complaint.

33.     Defendant denies the allegations contained in Paragraph 33 of the Amended Complaint.

34.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 34 of the Amended Complaint and further avers that the terms of the Agreement and the February 5, 2014 email speak for themselves and refers to the Agreement and the February 5, 2014 email for a complete and accurate description of their contents, contexts and meanings.

35.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between

Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 35 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

36. Defendant admits that, by letter dated March 26, 2014, William L. Prickett, an attorney with the law firm of Seyfarth Shaw purporting to represent Whitman & Co., wrote to Wes J. Camden of Brooks Pierce, purporting to demand payment of amounts allegedly owed under the Agreement. Defendant denies, however, each and every other allegation contained in Paragraph 36 of the Amended Complaint and further avers that the March 26, 2014 letter speaks for itself and refers to the March 26, 2014 letter for a complete and accurate description of its content, context and meaning.

37. The allegations contained in Paragraph 37 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 37 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

38. Defendant admits that Utah Retirement Systems ("URS") appointed Longview Guernsey to perform portfolio management services. Defendant further admits that URS' portfolio was funded with approximately $250 million in assets between 2008 and 2012. Defendant, however, denies each and every other allegation contained in Paragraph 38 of the Amended Complaint.

39. Defendant admits that Longview Guernsey made payments it calculated were due to Whitman & Co. pursuant to the Agreement through the second quarter of 2013, but denies each and every other allegation contained in Paragraph 39 of the Amended Complaint.

40. Defendant denies the allegations contained in Paragraph 40 of the Amended Complaint.

41. Defendant denies the allegations contained in Paragraph 41 of the Amended Complaint.

42. Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 42 of the Amended Complaint and further avers that the terms of the Agreement and the February 5, 2014 email speak for themselves and refers to the Agreement and the February 5, 2014 email for a complete and accurate description of their contents, contexts and meanings.

43. Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained

in Paragraph 43 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

44. Defendant admits that, by letter dated March 26, 2014, William L. Prickett, an attorney with the law firm of Seyfarth Shaw purporting to represent Whitman & Co., wrote to Wes J. Camden of Brooks Pierce, purporting to demand payment of amounts allegedly owed under the Agreement. Defendant denies, however, each and every other allegation contained in Paragraph 44 of the Amended Complaint and further avers that the March 26, 2014 letter speaks for itself and refers to the March 26, 2014 letter for a complete and accurate description of its content, context and meaning.

45. The allegations contained in Paragraph 45 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 45 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

46. The allegations contained in Paragraph 46 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 46 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

47. Defendant admits that in June 2007, the Treasurer of the State of North Carolina (the "North Carolina Treasurer") appointed Longview Guernsey to perform portfolio management services for assets controlled by the North Carolina Retirement Systems ("NCRS"). Defendant further admits that NCRS' portfolio was funded with approximately $834 million in assets between 2007 and 2009. Defendant, however, denies each and every other allegation contained in Paragraph 47 of the Amended Complaint.

48. Defendant admits that in June 2007, the North Carolina Treasurer appointed Longview Guernsey to perform portfolio management services for assets controlled by NCRS. Defendant further admits that NCRS' portfolio was funded with approximately $834 million in assets between 2007 and 2009. Defendant, however, denies each and every other allegation contained in Paragraph 48 of the Amended Complaint.

49. Defendant admits that Longview Guernsey made payments it calculated were due to Whitman & Co. pursuant to the Agreement through the second quarter of 2013, but denies each and every other allegation contained in Paragraph 49 of the Amended Complaint.

50. Defendant denies the allegations contained in Paragraph 50 of the Amended Complaint.

51. Defendant denies the allegations contained in Paragraph 51 of the Amended Complaint.

52. Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to

make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 52 of the Amended Complaint and further avers that the terms of the Agreement and the February 5, 2014 email speak for themselves and refers to the Agreement and the February 5, 2014 email for a complete and accurate description of their contents, contexts and meanings.

53. Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 53 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

54. Defendant admits that, by letter dated March 26, 2014, William L. Prickett, an attorney with the law firm of Seyfarth Shaw purporting to represent Whitman & Co., wrote to Wes J. Camden of Brooks Pierce, purporting to demand payment of amounts allegedly owed under the Agreement. Defendant denies, however, each and every other allegation contained in Paragraph 54 of the Amended Complaint and further avers that the March 26, 2014 letter speaks for itself and refers to the March 26, 2014 letter for a complete and accurate description of its content, context and meaning.

55. The allegations contained in Paragraph 55 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations

or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 55 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning. Further answering, Defendant denies the incomplete and/or inaccurate descriptions or characterizations of events and communications, and all other allegations, contained in Paragraph 55 of the Amended Complaint.

56. Defendant admits that in September 2009, Maryland State Retirement and Pension System ("MSRPS") appointed Longview Guernsey to perform portfolio management services. Defendant further admits that MSRPS' portfolio was funded with approximately $200 million in assets in 2009. Defendant, however, denies each and every other allegation contained in Paragraph 56 of the Amended Complaint.

57. Defendant denies the allegations contained in Paragraph 57 of the Amended Complaint.

58. Defendant denies the allegations contained in Paragraph 58 of the Amended Complaint.

59. Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 59 of the Amended Complaint and further avers that the terms

of the Agreement and the February 5, 2014 email speak for themselves and refers to the Agreement and the February 5, 2014 email for a complete and accurate description of their contents, contexts and meanings.

60. Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 60 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

61. Defendant admits that, by letter dated March 26, 2014, William L. Prickett, an attorney with the law firm of Seyfarth Shaw purporting to represent Whitman & Co., wrote to Wes J. Camden of Brooks Pierce, purporting to demand payment of amounts allegedly owed under the Agreement. Defendant denies, however, each and every other allegation contained in Paragraph 61 of the Amended Complaint and further avers that the March 26, 2014 letter speaks for itself and refers to the March 26, 2014 letter for a complete and accurate description of its content, context and meaning.

62. The allegations contained in Paragraph 62 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the

allegations contained in Paragraph 62 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning. Further answering, Defendant avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegation that, subsequent to June 1, 2006, Whitman & Co., through one of its agents, sent "Longview marketing materials" to an unidentified officer of the Washington State Investment Board ("WSIB"). Defendant also denies the incomplete and/or inaccurate descriptions or characterizations of events and communications, and all other allegations, contained in Paragraph 62 of the Amended Complaint.

63. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 of the Amended Complaint and, on that basis, denies those allegations.

64. Defendant admits that on July 6, 2007, Kiira Chernik, an investment analyst at Callan Associates Inc. ("Callan"), wrote to Mark Chapman, then a Financial Analyst at Longview LP, to tell Mark that Longview's Global Equity product had been selected for inclusion in a $250 million Global Growth Search for one of Callan's Defined Benefit clients. Defendant further admits that an email address, whitmanandco@yahoo.com, was cc'd on that July 6, 2007 email from Kiira Chernik. Defendant denies, however, each and every other allegation contained in Paragraph 64 of the Amended Complaint and further avers that the July 6, 2007 email speaks for itself and refers to the July 6, 2007 email for a complete and accurate description of its content, context and meaning.

65. Defendant denies the allegations contained in Paragraph 65 of the Amended Complaint.

66. Defendant admits that, on or about October 21, 2009, individuals from WSIB met with individuals from Longview LP in London, but Defendant denies each and every other allegation contained in Paragraph 66 of the Amended Complaint.

67. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67 of the Amended Complaint and, on that basis, denies those allegations.

68. Defendant admits that in March 2011, WSIB appointed Longview Guernsey to perform portfolio management services. Defendant further admits that WSIB's portfolio was funded with approximately $965 million in assets in 2011. Defendant, however, denies each and every other allegation contained in Paragraph 68 of the Amended Complaint.

69. Defendant denies the allegations contained in Paragraph 69 of the Amended Complaint.

70. Defendant denies the allegations contained in Paragraph 70 of the Amended Complaint.

71. Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 71 of the Amended Complaint and further avers that the terms of the Agreement and the February 5, 2014 email speak for themselves and refers to the

Agreement and the February 5, 2014 email for a complete and accurate description of their contents, contexts and meanings.

72.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 72 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

73.     Defendant admits that, by letter dated March 26, 2014, William L. Prickett, an attorney with the law firm of Seyfarth Shaw purporting to represent Whitman & Co., wrote to Wes J. Camden of Brooks Pierce, purporting to demand payment of amounts allegedly owed under the Agreement. Defendant denies, however, each and every other allegation contained in Paragraph 73 of the Amended Complaint and further avers that the March 26, 2014 letter speaks for itself and refers to the March 26, 2014 letter for a complete and accurate description of its content, context and meaning.

74.     The allegations contained in Paragraph 74 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 74 of the Amended Complaint and refers to the Agreement

itself for a complete and accurate description of its content, context and meaning. Further answering, Defendant denies the incomplete and/or inaccurate descriptions or characterizations of events and communications, and all other allegations, contained in Paragraph 74 of the Amended Complaint.

75. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the Amended Complaint and, on that basis, denies those allegations.

76. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the Amended Complaint—including, but not limited to, lacking knowledge or information concerning the meaning of Whitman "cover[ing] PERSI and its consultant, Callan Associates"—and, on that basis, denies those allegations.

77. Defendant admits that on November 9, 2010, Longview was selected as a finalist for the global equity search being conducted by the Public Employee Retirement System of Idaho ("PERSI"). Defendant denies, however, each and every other allegation contained in Paragraph 77 of the Amended Complaint.

78. Defendant admits that in June 2011, PERSI appointed Longview Guernsey to perform portfolio management services. Defendant further admits that PERSI's portfolio was funded with approximately $244 million in assets in 2011. Defendant, however, denies each and every other allegation contained in Paragraph 78 of the Amended Complaint.

79. Defendant denies the allegations contained in Paragraph 79 of the Amended Complaint.

80. Defendant denies the allegations contained in Paragraph 80 of the Amended Complaint.

81.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman."  Defendant denies, however, each and every other allegation contained in Paragraph 81 of the Amended Complaint and further avers that the terms of the Agreement and the February 5, 2014 email speak for themselves and refers to the Agreement and the February 5, 2014 email for a complete and accurate description of their contents, contexts and meanings.

82.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman."  Defendant denies, however, each and every other allegation contained in Paragraph 82 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

83.     Defendant admits that, by letter dated March 26, 2014, William L. Prickett, an attorney with the law firm of Seyfarth Shaw purporting to represent Whitman & Co., wrote to Wes J. Camden of Brooks Pierce, purporting to demand payment of amounts allegedly owed under the Agreement.  Defendant denies, however, each and every other allegation contained in

Paragraph 83 of the Amended Complaint and further avers that the March 26, 2014 letter speaks for itself and refers to the March 26, 2014 letter for a complete and accurate description of its content, context and meaning.

84.     The allegations contained in Paragraph 84 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 84 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

### COUNT I

85.     In answer to the allegations contained in Paragraph 85 of the Amended Complaint, Defendant repeats, realleges and incorporates by reference the responsive averments set forth in Paragraphs 1–84 above, as though fully set forth herein.

86.     The allegations contained in Paragraph 86 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 86 of the Amended Complaint and further avers that the Agreement was properly and effectively terminated, in accordance with its terms, as of December 31, 2010.

87.     The allegations contained in Paragraph 87 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the

allegations contained in Paragraph 87 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

88.     Defendant admits that Pfizer appointed Longview Guernsey to perform portfolio management services.  Defendant further admits that Pfizer's portfolio was funded with approximately $200 million in assets between 2009 and 2012.  Defendant, however, denies each and every other allegation contained in Paragraph 88 of the Amended Complaint.

89.     Defendant denies the allegations contained in Paragraph 89 of the Amended Complaint.

90.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman."  Defendant denies, however, each and every other allegation contained in Paragraph 90 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

91.     The allegations contained in Paragraph 91 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 91 of the Amended Complaint.

## COUNT II

92.     In answer to the allegations contained in Paragraph 92 of the Amended Complaint, Defendant repeats, realleges and incorporates by reference the responsive averments set forth in Paragraphs 1–91 above, as though fully set forth herein.

93.     The allegations contained in Paragraph 93 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 93 of the Amended Complaint and further avers that the Agreement was properly and effectively terminated, in accordance with its terms, as of December 31, 2010.

94.     The allegations contained in Paragraph 94 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 94 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

95.     Defendant admits that Deseret appointed Longview Guernsey to perform portfolio management services.  Defendant further admits that Deseret's portfolio was funded with approximately $35 million in assets between 2009 and 2012.  Defendant, however, denies each and every other allegation contained in Paragraph 95 of the Amended Complaint.

96.     Defendant denies the allegations contained in Paragraph 96 of the Amended Complaint.

97.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers

that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 97 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

98. The allegations contained in Paragraph 98 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 98 of the Amended Complaint.

## COUNT III

99. In answer to the allegations contained in Paragraph 99 of the Amended Complaint, Defendant repeats, realleges and incorporates by reference the responsive averments set forth in Paragraphs 1-98 above, as though fully set forth herein.

100. The allegations contained in Paragraph 100 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 100 of the Amended Complaint and further avers that the Agreement was properly and effectively terminated, in accordance with its terms, as of December 31, 2010.

101. The allegations contained in Paragraph 101 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment

is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 101 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

102.    Defendant admits that URS appointed Longview Guernsey to perform portfolio management services.    Defendant further admits that URS' portfolio was funded with approximately $250 million in assets between 2008 and 2012.  Defendant, however, denies each and every other allegation contained in Paragraph 102 of the Amended Complaint.

103.    Defendant denies the allegations contained in Paragraph 103 of the Amended Complaint.

104.    Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman."  Defendant denies, however, each and every other allegation contained in Paragraph 104 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

105.    The allegations contained in Paragraph 105 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 105 of the Amended Complaint.

## COUNT IV

106.     In answer to the allegations contained in Paragraph 106 of the Amended Complaint, Defendant repeats, realleges and incorporates by reference the responsive averments set forth in Paragraphs 1–105 above, as though fully set forth herein.

107.     The allegations contained in Paragraph 107 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 107 of the Amended Complaint and further avers that the Agreement was properly and effectively terminated, in accordance with its terms, as of December 31, 2010.

108.     The allegations contained in Paragraph 108 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 108 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

109.     Defendant admits that in June 2007, the North Carolina Treasurer appointed Longview Guernsey to perform portfolio management services for assets controlled by NCRS. Defendant further admits that NCRS' portfolio was funded with approximately $834 million in assets between 2007 and 2009.  Defendant, however, denies each and every other allegation contained in Paragraph 109 of the Amended Complaint.

110.     Defendant denies the allegations contained in Paragraph 110 of the Amended Complaint.

111.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman."  Defendant denies, however, each and every other allegation contained in Paragraph 111 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

112.     The allegations contained in Paragraph 112 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 112 of the Amended Complaint.

## COUNT V

113.     In answer to the allegations contained in Paragraph 113 of the Amended Complaint, Defendant repeats, realleges and incorporates by reference the responsive averments set forth in Paragraphs 1–112 above, as though fully set forth herein.

114.     The allegations contained in Paragraph 114 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required.  To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 114 of the Amended Complaint and further avers that the Agreement was properly and effectively terminated, in accordance with its terms, as of December 31, 2010.

115. The allegations contained in Paragraph 115 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 115 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

116. Defendant admits that in September 2009, MSRPS appointed Longview Guernsey to perform portfolio management services. Defendant further admits that MSRPS' portfolio was funded with approximately $200 million in assets in 2009. Defendant, however, denies each and every other allegation contained in Paragraph 116 of the Amended Complaint.

117. Defendant denies the allegations contained in Paragraph 117 of the Amended Complaint.

118. Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 118 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

119. The allegations contained in Paragraph 119 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive

averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 119 of the Amended Complaint.

**COUNT VI**

120. In answer to the allegations contained in Paragraph 120 of the Amended Complaint, Defendant repeats, realleges and incorporates by reference the responsive averments set forth in Paragraphs 1–119 above, as though fully set forth herein.

121. The allegations contained in Paragraph 121 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 121 of the Amended Complaint and further avers that the Agreement was properly and effectively terminated, in accordance with its terms, as of December 31, 2010.

122. The allegations contained in Paragraph 122 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 122 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

123. Defendant admits that in March 2011, WSIB appointed Longview Guernsey to perform portfolio management services. Defendant further admits that WSIB's portfolio was funded with approximately $965 million in assets in 2011. Defendant, however, denies each and every other allegation contained in Paragraph 123 of the Amended Complaint.

124. Defendant denies the allegations contained in Paragraph 124 of the Amended Complaint.

125.     Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 125 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

126.     The allegations contained in Paragraph 126 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 126 of the Amended Complaint.

## COUNT VII

127.     In answer to the allegations contained in Paragraph 127 of the Amended Complaint, Defendant repeats, realleges and incorporates by reference the responsive averments set forth in Paragraphs 1–126 above, as though fully set forth herein.

128.     The allegations contained in Paragraph 128 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 128 of the Amended Complaint and further avers that the Agreement was properly and effectively terminated, in accordance with its terms, as of December 31, 2010.

129. The allegations contained in Paragraph 129 of the Amended Complaint do not constitute factual allegations but, instead, constitute incomplete and/or inaccurate interpretations or characterizations of the Agreement and/or legal conclusions to which no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegations contained in Paragraph 129 of the Amended Complaint and refers to the Agreement itself for a complete and accurate description of its content, context and meaning.

130. Defendant admits that in June 2011, PERSI appointed Longview Guernsey to perform portfolio management services. Defendant further admits that PERSI's portfolio was funded with approximately $244 million in assets in 2011. Defendant, however, denies each and every other allegation contained in Paragraph 130 of the Amended Complaint.

131. Defendant denies the allegations contained in Paragraph 131 of the Amended Complaint.

132. Defendant admits that, by email dated February 5, 2014, Wes J. Camden, an attorney at the North Carolina law firm Brooks Pierce, wrote to attorney Geoffrey T. Chalmers that, "in view of the recent conclusion to the North Carolina Department of State Treasurer's investigation into the use of third party placement agents and the resultant settlement agreement entered into between Longview Partners and the Treasurer, Longview Partners does not intend to make any further payments to Whitman." Defendant denies, however, each and every other allegation contained in Paragraph 132 of the Amended Complaint and further avers that the February 5, 2014 email speaks for itself and refers to the February 5, 2014 email for a complete and accurate description of its content, context and meaning.

133. The allegations contained in Paragraph 133 of the Amended Complaint do not constitute factual allegations but, instead, constitute legal conclusions to which no responsive

averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 133 of the Amended Complaint.

## COUNT VIII

134. This claim has been dismissed. Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant repeats, realleges, and incorporates by reference the responsive averments set forth in Paragraphs 1-133 above.

135. This claim has been dismissed. Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 135 of the Amended Complaint.

136. This claim has been dismissed. Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 136 of the Amended Complaint.

137. This claim has been dismissed. Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 137 of the Amended Complaint.

138. This claim has been dismissed. Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 138 of the Amended Complaint.

## COUNT IX

139. This claim has been dismissed. Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant repeats, realleges, and incorporates by reference the responsive averments set forth in Paragraphs 1-138 above.

140.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 140 of the Amended Complaint.

141.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 141 of the Amended Complaint.

142.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 142 of the Amended Complaint.

143.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 143 of the Amended Complaint.

144.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 144 of the Amended Complaint.

145.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 145 of the Amended Complaint.

146.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 146 of the Amended Complaint.

## COUNT X

147.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant repeats, realleges, and incorporates by reference the responsive averments set forth in Paragraphs 1-146 above.

148.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 148 of the Amended Complaint.

149.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 149 of the Amended Complaint.

150.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 150 of the Amended Complaint.

151.     This claim has been dismissed.  Accordingly, no responsive averment is required. To the extent any responsive pleading is required, however, Defendant denies the allegation contained in Paragraph 151 of the Amended Complaint.

## FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the existence and terms of the Agreement.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, on the ground and to the extent that Defendant has fully performed its obligations under the Agreement.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's own breach of contract.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by statute.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by public policy.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands and/or estoppel.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the failure of one or more contractual or other conditions precedent.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by setoff or recoupment.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, estoppel, ratification and/or acquiescence.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by indemnity.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate any alleged damages.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's own fraud, fraudulent inducement and/or other tortious or unlawful conduct.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of illegality.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by a failure of consideration.

## NOTICE OF RESERVATION

Defendant hereby gives notice that it intends to rely upon such other and further defenses as may be or become available or apparent during pretrial proceedings in this action, and Defendant expressly hereby reserves its right to amend this Answer and assert all such defenses.

## COUNTERCLAIMS

As and for its Counterclaims against Whitman & Company, Inc. ("Whitman & Co."), Longview Partners (Guernsey) Limited ("Longview Guernsey") states as follows:

## INTRODUCTION

1.       Longview Guernsey is a Guernsey-based asset management firm that offers investment advisory services, consisting of, among other things, portfolio management services (hereinafter "Advisory Services"), primarily to pension funds, insurance companies, savings and loan associations, commingled funds and endowment funds, and trust companies and investment managers serving such institutions ("Clients").

2.       On January 1, 2006, Longview Guernsey entered into an agreement with R. Eugene Whitman ("Gene Whitman"), pursuant to which Gene Whitman agreed to perform certain "Agency Services" for Longview Guernsey in connection with the solicitation of clients for Longview Guernsey and its affiliate, Longview Partners LP[2] ("Longview LP" and, together

---

[2] On July 3, 2012 Longview Partners LP ceased to exist and was succeeded by Longview Partners LLP.  *See* Stipulation to Correct Caption and Name of Defendants, filed October 8, 2014 (Dkt. 29).

with Longview Guernsey, "Longview"). On January 31, 2007, following Gene Whitman's death, said agreement was amended solely to substitute Whitman & Co. for Gene Whitman.

3.     Pursuant to the terms of the January 1, 2006 agreement (as amended, the "Agreement"),[3] Gene Whitman agreed that, "for the purpose of offering the Advisory Services to Prospective Clients and Clients located in the United States, Canada and Bermuda," he (and later Whitman & Co.) would perform "Agency Services" consisting of "marketing the Advisory Services and arranging meetings at which principals of [Longview] will make presentations concerning the Advisory Services to Prospective Clients who, in Whitman's best judgment, will consider committing capital to the Advisory Services."

4.     In consideration of Whitman's agreement to provide such "Agency Services," Longview Guernsey agreed to pay Whitman "a non-refundable retainer" in the amount of one hundred thousand dollars ($100,000.00) per year (the "Retainer"), which, pursuant to the terms of the Agreement, was "payable to Whitman under all circumstances … whether or not funds of Clients [we]re committed to the Advisory Services."

5.     In addition, the parties agreed that, in the event Longview Guernsey actually entered into an Advisory Service agreement with a Client that was "introduced" by Whitman, Whitman would be entitled to "Agency Fees" equal to a contractually stipulated percentage of the management fees ultimately received by Longview Guernsey in respect of such Advisory Service agreement. Indeed, Paragraph 4 of the Agreement provided that, "[i]n addition to the Retainer, [Longview Guernsey] shall pay Whitman as an agency fee (the 'Agency Fee') a percentage of all amounts received by Longview as management fees ('Management Fees') in

---

[3] A true and accurate copy of the Agreement is attached as Exhibit A to the Amended Complaint.

respect of Advisory Service agreements entered into between Longview and Clients introduced to [Longview] by Whitman."

6.  In 2007, following meetings between Longview and investment officers of the North Carolina Retirement System ("NCRS") that had been set up by Gene Whitman, the NCRS entered into an Advisory Service agreement with Longview Guernsey pursuant to which NCRS appointed Longview Guernsey to perform portfolio management services for assets controlled by the NCRS.

7.  NCRS' portfolio was funded with approximately $834 million in assets between 2007 and 2009.  The Treasurer of the State of North Carolina (the "North Carolina Treasurer") paid Longview Guernsey Management Fees in connection with the funding of NCRS' portfolio with approximately $834 million in assets between 2007 and 2009.  In turn, pursuant to the Agreement, Longview Guernsey paid Whitman & Co. $3.4 million in Agency Fees, as a percentage of the Management Fees Longview Guernsey received from the North Carolina Treasurer in connection with the funding of NCRS' portfolio with approximately $834 million in assets between 2007 and 2009.  On December 6, 2013, however, Longview Guernsey entered into an agreement with the North Carolina Treasurer (the "North Carolina Agreement"), pursuant to which Longview Guernsey was obligated to refund $10 million of the Management Fees it had received from the NCRS.

8.  In light of the contractually required refund of such Management Fees, the Agency Fees to which Gene Whitman and Whitman & Co. were contractually entitled under the Agreement totaled only $1.3 million rather than the $3.4 million that Longview Guernsey had paid.  Accordingly, Longview Guernsey paid Whitman & Co. approximately $2.1 million more in Agency Fees than Longview Guernsey rightfully owed under the Agreement.

9.      Longview Guernsey therefore files this Counterclaim to recover the excess money that Whitman & Co. has received and is not entitled to and which, in equity and good conscience, should be returned to Longview Guernsey.

## PARTIES

10.     Defendant/Counterclaimant Longview Guernsey is a foreign corporation organized and existing under the laws of Guernsey. Longview Guernsey currently maintains its principal place of business at P.O. Box 559, Sarnia House, Le Truchot, St. Peter Port, Guernsey GY1 6JG. Longview Guernsey is a registered investment advisor with the SEC.

11.     Plaintiff/Counterclaim-Defendant Whitman & Co. is a domestic corporation organized and existing under the laws of the Commonwealth of Massachusetts. Whitman & Co. maintains its principal place of business at 11 Oak Street, #46, Wellesley, Massachusetts 02482. Upon information and belief, Whitman & Co. was founded by Gene Whitman who served as its President until his death in January 2007. Ralph E. Whitman Jr. ("Chip Whitman"), Gene Whitman's son, has served as Whitman & Co.'s President since his father's death.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because complete diversity exists between Longview Guernsey and Whitman & Co., and the amount in controversy exceeds the $75,000 jurisdictional minimum. The Court also has subject matter jurisdiction under 28 U.S.C. § 1367, because this Counterclaim forms part of the same case or controversy under Article III of the United States Constitution as the claims within the Court's original jurisdiction. This Counterclaim is compulsory under Fed. R. Civ. P. 13(a) because this Counterclaim arises from the same transaction or occurrence as the claims brought by the Plaintiff/Counterclaim-Defendant Whitman & Co.

13.     Whitman & Co. is subject to personal jurisdiction in this district because it is a domestic corporation organized and existing under the laws of the Commonwealth of Massachusetts.

14.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because Whitman & Co. is a domestic corporation with its principal place of business in Massachusetts.

## FACTUAL ALLEGATIONS

### A.     The Agreement

15.     Longview Guernsey is an asset management firm based in Guernsey, a British crown dependency located in the English Channel.

16.     Longview Guernsey was founded in 2001 and, during its initial years of operation, the overwhelming majority of its clients were high net worth individuals.

17.     In 2005, Longview decided to seek large institutional clients.

18.     Longview believed that, in order to break into the North American market and secure investments from institutional clients, it needed to retain an individual that knew and had direct relationships with those institutional clients.

19.     With these qualities in mind, another investment firm based in the United Kingdom recommended that Longview contact Gene Whitman.

20.     At the time that Longview first considered retaining him, Gene Whitman was retired, was not actively involved in the third-party marketing business, and was not acting as a "finder" or third-party marketer for any investment management organizations.   Before his retirement, however, Gene Whitman had been actively involved in the third-party marketing business.

21.     In October 2005, Longview approached Gene Whitman and they discussed the possibility of Gene Whitman serving as a third-party marketer or "finder" in the United States, Canada, and Bermuda.

22.     Following these discussions, Gene Whitman agreed to come out of retirement and serve as Longview Guernsey's "finder," or third-party marketer.

23.     The Agreement was primarily drafted by Gene Whitman and Gene Whitman's counsel.  Before the Agreement was executed, there were discussions between Longview and Gene Whitman concerning the terms of the Agreement, and Gene Whitman suggested that the Agreement was a typical finder's fee agreement.

24.     Before the Agreement was executed, Chip Whitman was not involved in any discussions concerning the terms of the Agreement.

25.     Gene Whitman and Longview Guernsey then entered into the Agreement, which was between Longview Guernsey and Gene Whitman and was dated January 1, 2006.

26.     Under the terms of the Agreement, in return for serving as Longview Guernsey's third-party marketer or "finder," Gene Whitman would receive the Retainer, which, pursuant to the terms of the Agreement, was "payable to Whitman under all circumstances … whether or not funds of Clients [we]re committed to the Advisory Services."

27.     The Agreement also provided that Gene Whitman would receive an Agency Fee in the event Longview Guernsey actually entered into an Advisory Service agreement with a Client that was "introduced" by Whitman.  The Agency Fee was a percentage of all amounts Longview received from Clients as Management Fees "in respect of Advisory Service agreements entered into between Longview and Clients introduced to [Longview] by Whitman."

28.     Specifically, Section 4 of the Agreement provided that Longview Guernsey shall pay Whitman as an agency fee a percentage of all amounts received by Longview as management fees in respect of Advisory Service agreements entered into between Longview and Clients introduced to Longview by Whitman.

29.     The Agreement also provided, in Section 9, that Gene Whitman agreed to perform his duties under the Agreement in a manner consistent with all applicable laws and regulations.

30.     Additionally, Section 12 of the Agreement provided that Longview had complete discretion and control over the Advisory Service relationships with Prospective Clients and Clients, including the decision to enter into an Advisory Service agreement with a Prospective Client and the terms of any Advisory Service agreement between Longview and a Client.

31.     Upon information and belief, while he acted as a third-party marketer for Longview Guernsey, Gene Whitman did not serve as a third-party marketer or "finder" for any entity other than Longview Guernsey.

**B.      After Gene Whitman's Death, Chip Whitman Assumes Control of Whitman**

32.     Following Gene Whitman's death in January 2007, the Agreement was amended on January 31, 2007.

33.     The amendment only substituted Whitman & Co. for Gene Whitman as the contracting party in the Agreement. Thus, whereas before the amendment the signatories to the Agreement were Longview Guernsey and Gene Whitman, after the amendment the signatories to the Agreement were Longview Guernsey and Whitman & Co. There were no other changes to the Agreement.

34.     Upon information and belief, when the amendment to the Agreement was signed in 2007, until the Agreement was terminated on December 31, 2010, Chip Whitman served as Whitman & Co.'s President and its sole employee.

35.     From 1984-2004, Chip Whitman worked for General Electric Capital Corporation and General Electric Asset Management (collectively "GE").  During his work with GE, Chip Whitman did not work as a third-party marketer or "finder."

36.     Upon information and belief, prior to 2005, Chip Whitman had not worked for Whitman & Co.

37.     Prior to 2005, Chip Whitman had not been in the third-party marketing business and did not have experience as a third-party marketer or "finder."

38.     Upon information and belief, after the amendment to the Agreement was signed in 2007 until the Agreement terminated in 2010, Chip Whitman did not serve as a third-party marketer or "finder" for any entity other than Longview Guernsey.

### C.     Longview Guernsey Pursues and Secures Investments from NCRS

39.     In 2006, Gene Whitman hired Howard Street Partners to help him solicit Prospective Clients for Longview and, upon information and belief, agreed, pursuant to an oral agreement, to pay Howard Street Partners 30% of the Agency Fee that Gene Whitman received from Longview Guernsey for Clients that Howard Street Partners helped introduce to Longview.  Also, upon information and belief, after Gene Whitman's death in January 2007 and the execution of the amendment to the Agreement, Whitman & Co. increased the percentage of the Agency Fee it paid to Howard Street Partners to 50%.

40.     On January 3, 2007, Longview Guernsey submitted a response to an Invitation to Apply to the North Carolina Department of State Treasurer ("NC Department of State Treasurer") for a new potential investment opportunity with NCRS.  In particular, Longview Guernsey applied to become an investment manager for NCRS's Equity Total Return product.

41.     Gene Whitman, with the help of Howard Street Partners, set up meetings for Longview to meet the Chief Investment Officer at the NC Department of State Treasurer.

42.     On June 15, 2007, the North Carolina Treasurer entered into an Investment Management Agreement ("IMA") with Longview Guernsey and appointed Longview Guernsey to perform portfolio management services for assets controlled by NCRS.

43.     Following the execution of the IMA, NCRS' portfolio was funded with approximately $834 million in assets between 2007 and 2009. The North Carolina Treasurer paid Longview Guernsey Management Fees in connection with the funding of NCRS' portfolio with approximately $834 million in assets between 2007 and 2009. In turn, pursuant to the Agreement, Longview Guernsey paid Whitman & Co. Agency Fees, as a percentage of the Management Fees Longview Guernsey received from the North Carolina Treasurer in connection with the funding of NCRS' portfolio with approximately $834 million in assets between 2007 and 2009.

**D.     The Agreement Terminates**

44.     Section 5 of the Agreement provided that the Agreement was effective as of January 1, 2006 and would continue for a three-year Initial Term that would expire on December 31, 2008.

45.     Pursuant to Section 5, the Initial Term was automatically renewed for an additional two-year term if by the end of the Initial Term, Clients introduced by Whitman & Co. had placed, in aggregate, $200 million or more with Longview (the "Second Renewal Term").

46.     Additionally, Section 5 provided that after the Second Renewal Term, the Agreement will be renewed automatically for one-year terms "unless prior to the date which is 30 days prior to the expiration of the Initial Term or any successive Renewal Term, either party delivers written notice of termination to the other parties."

47.     Whitman & Co. and Longview Guernsey agreed that the Initial Term provided for in the Agreement was automatically renewed for two years because Clients introduced by

Whitman & Co. had placed, in aggregate, more than $200 million with Longview. The Second Renewal Term expired on December 31, 2010.

48.     Pursuant to Section 5 of the Agreement, on October 27, 2010, Longview Guernsey sent Whitman & Co. a letter informing it that Longview Guernsey was terminating the Agreement effective December 31, 2010.

49.     The Agreement terminated on December 31, 2010.

50.     Following the termination of the Agreement, Longview Guernsey continued to pay Whitman & Co. Agency Fees based on Management Fees Longview Guernsey received from the funding of NCRS' portfolio with approximately $834 million in assets between 2007 and 2009.

**E.     Longview Guernsey Enters Into an Agreement with NCRS to Refund Management Fees**

51.     In 2011, the North Carolina Department of Justice (the "NC DOJ") contacted Longview as part of an investigation into the historical use of third-party marketers, or placement agents, such as Gene Whitman and Whitman & Co.

52.     On December 6, 2013, Longview Guernsey entered into the North Carolina Agreement.

53.     Pursuant to the North Carolina Agreement, Longview Guernsey agreed to, among other things, refund $500,000 in Management Fees each quarter, beginning and including the fiscal quarter ending December 31, 2013 and continuing for every fiscal quarter for a period of five years.

54.     Under the North Carolina Agreement, Longview Guernsey is required to refund a total of $10 million in Management Fees to the North Carolina Treasurer.

55.    Longview Guernsey has paid $500,000 to the North Carolina Treasurer in every quarter since the quarter ending on December 31, 2013.

56.    At the time that Longview Guernsey entered into the North Carolina Agreement, it had paid, and Whitman & Co. received, $3.4 million as Agency Fees in connection with the investments by the North Carolina Treasurer.  But, in light of the North Carolina Agreement, Whitman was only entitled to $1.3 million in Agency Fees.  Accordingly, Whitman & Co. received $2.1 million from Longview Guernsey that it was not entitled to receive.

57.    Whitman & Co. was not entitled to the $2.1 million overpayment it received from Longview Guernsey and has not refunded that amount to Longview Guernsey.

**COUNT I**

**ACTION FOR MONEY HAD AND RECEIVED**

58.    Longview Guernsey repeats, realleges, and incorporates by reference Paragraphs 1 through 57 above.

59.    Longview Guernsey entered into the North Carolina Agreement with the North Carolina Treasurer and agreed to refund $10 million in Management Fees it received from the North Carolina Treasurer.

60.    Although Longview Guernsey paid and Whitman & Co. received $3.4 million as Agency Fees in connection with the funding of NCRS' portfolio with approximately $834 million in assets between 2007 and 2009, Whitman & Co. was only entitled to $1.3 million as Agency Fees.  Accordingly, Whitman & Co. received $2.1 million from Longview Guernsey that it was not entitled to receive.

61.    Whitman & Co. was not entitled to the $2.1 million overpayment it received from Longview Guernsey and has not refunded that amount to Longview Guernsey.

62. Whitman & Co. thus received money which in equity and good conscience belonged to Longview Guernsey, and Whitman & Co. should be required to return it to Longview Guernsey.

63. Whitman & Co. has not refunded any portion of the Agency Fees it received from Longview Guernsey.

WHEREFORE, Longview Guernsey demands judgment against Whitman & Co. in an amount to be determined at trial, plus interest, costs, expenses, including reasonable attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT II

### UNJUST ENRICHMENT

64. Longview Guernsey repeats, realleges, and incorporates by reference Paragraphs 1 through 63 above.

65. Although Longview Guernsey paid, and Whitman & Co. received, $3.4 million as Agency Fees in connection with the NCRS investment, Whitman & Co. was only entitled to receive $1.3 million as Agency Fees. Accordingly, Whitman & Co. received $2.1 million from Longview Guernsey that it was not entitled to receive.

66. Whitman & Co. was not entitled to the $2.1 million overpayment it received from Longview Guernsey and has not refunded that amount to Longview Guernsey.

67. Whitman & Co. has not refunded any portion of the Agency Fees it received from Longview Guernsey.

68. Whitman & Co. would be unjustly enriched if Whitman & Co. were allowed to retain the $2.1 million in the Agency Fees that it was paid and to which it was not entitled.

69. Longview Guernsey does not have an adequate remedy at law because the Agreement does not expressly provide a mechanism through which Longview Guernsey may recover overpayments made to Whitman & Co.

WHEREFORE, Longview Guernsey demands judgment against Whitman & Co. in an amount to be determined at trial, plus interest, costs, expenses, including reasonable attorneys' fees and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Longview Guernsey seeks judgment:

a.   Dismissing the Amended Complaint, and each cause of action asserted against it, with prejudice;

b.   Awarding Longview Guernsey its costs and disbursements of this action, including permitted attorneys' fees;

c.   Entering judgment in favor of Longview Guernsey and against Whitman & Co. on each of the above counterclaims, in an amount to be determined at trial;

d.   Awarding Longview Guernsey pre-judgment and post-judgment interest on the damage amounts on the above counterclaims; and

e.   Granting Longview Guernsey such other and further relief as this Court deems just and proper.

LONGVIEW GUERNSEY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

Dated:  August 3, 2015        Respectfully submitted,

/s/ Patrick J. O'Toole, Jr.
Patrick J. O'Toole, Jr. (BBO # 559267)
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, MA 02110
Tel.: (617) 772-8300
Fax: (617) 772-8333
Email: patrick.otoole@weil.com

David R. Fertig
Robert S. Levine
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
Email: david.fertig@weil.com
Email: robert.levine@weil.com

*Attorneys for Longview Partners (Guernsey)
Limited*

## CERTIFICATE OF SERVICE

I, Patrick J. O'Toole, hereby certify that on the 3rd day of August, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification and that I served the foregoing by mail upon any counsel of record not receiving electronic notification:

William L. Prickett, Esq.
Anne V. Dunne, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800
wprickett@seyfarth.com
adunne@seyfarth.com


/s/ Patrick J. O'Toole, Jr.
Patrick J. O'Toole, Jr.