UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WHITMAN & COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 1:14-cv-12047-ADB |
| LONGVIEW PARTNERS (GUERNSEY) LIMITED, | ) ) ) ) | |
| Defendant. | ) ) ) ) | |

# PLAINTIFF WHITMAN & COMPANY INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

Dated: Boston, Massachusetts
       September 4, 2015

William L. Prickett (BBO# 555341)
Anne V. Dunne (BBO# 681893)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Facsimile:    (617) 946-4801

Counsel for Plaintiff Whitman & Company, Inc.

Having previously argued that the Agreement between parties here specifies and limits the rights and obligations each party owes to the other (and having succeeded in dismissing Whitman's unjust enrichment claims on that and other grounds), defendant Longview nevertheless tries to assert its own unjust enrichment counterclaims against Whitman. But fairness dictates that what is good for the goose should also be good for the gander. As Longview concedes in its counterclaims, the Agreement governs the parties' rights concerning the Agency Fees at issue. It therefore also governs any remedies to which they are entitled under the Agreement. As such, under Massachusetts law, where such an agreement governs the parties' rights, equitable claims like unjust enrichment and money had and received are barred.

In any event, even if Longview's equitable claims were not legally barred, there is no fact alleged in the counterclaims which could make such claims plausible. The only fact Longview alleges to support its claims is that, in 2013, it chose to enter into an "agreement" with one of its clients, NCRS, to reimburse certain past management fees -- long after the corresponding Agency Fees owed to Whitman were paid to Whitman. There is no allegation that Whitman had any role at all in Longview's 2013 discussions with NCRS or any responsibility for Longview's alleged return of fees to NCRS -- nor could there be, as there was none. Nor does Longview allege any facts which could allow a court, sitting in equity, to find Whitman did anything to make its receipt of the Agency Fees owed under the Agreement unexpected, unjust or unfair in any way. Accordingly, Longview's counterclaims should be dismissed.

**Factual Background to the Counterclaims**

Longview alleges that in October 2005, it approached Eugene Whitman ("Gene Whitman"), who was then President of Whitman, regarding the possibility of serving as its exclusive finder in the United States, Canada and Bermuda. Counterclaims ¶ 21. On January 1, 2006, Gene Whitman and Longview entered into the Agreement at issue here, under which

Whitman would perform services to Longview and its affiliates. Such services, defined in the Agreement as Agency Services, comprised locating potential north American-based client prospects and introducing them to Longview. *Id.* at ¶ 2. In return, Longview agreed to pay Gene Whitman a retainer of $100,000 per year, regardless of whether any funds were committed by any prospective clients to Longview for investment. *Id.* at ¶ 4. In addition to the retainer, Longview agreed to pay Gene Whitman a percentage of all management fees received by Longview for its services (Advisory Services) rendered to clients that were introduced by Whitman. *Id.* at ¶ 5. The Agreement specifies the specific percentage of management fees received by Longview that is owed to Whitman as Agency Fees. The Agreement does not permit Longview to reduce the amount of Agency Fees owed to Whitman after the management fees are received from the client.[1]

Longview alleges that in 2007, subsequent to the introduction and ensuing meetings set up by Gene Whitman, North Carolina Retirement Services ("NCRS") entered into an advisory service agreement with Longview. *Id.* at ¶ 6. NCRS funded its new portfolio at Longview with approximately $834 million in assets between 2007 and 2009. *Id.* at ¶ 7. As a result of NCRS' investment with Longview, Longview received management fees from NCRS for its services to NCRS. As a result, from 2007 until mid-2013, Longview paid Whitman $3.4 million in Agency Fees that were due under the Agreement after the corresponding management fees were paid by NCRS. *Id.* at ¶ 7.

The Agreement was automatically renewed for an additional two-year term on December 31, 2008, pursuant to Section 5, because Whitman had introduced clients who had placed, in aggregate, $200 million or more in investment assets with Longview. *Id.* at ¶ 45. Longview

---

[1] The Agreement was amended in January 2007 after Gene Whitman passed away. *Id.* at ¶ 32. The sole amendment to the Agreement was the substitution of Whitman for Gene Whitman as contracting party and signatory. *Id.* at ¶ 33.

alleges that on October 27, 2010, it sent Whitman a letter informing it that Longview was terminating the Agreement effective December 31, 2010. *Id.* at ¶ 48.[2]

Longview alleges that on December 6, 2013, more than six (6) years after receiving its initial management fees from NCRS, it entered into a "settlement" with the North Carolina Treasurer in which Longview agreed to refund $10 million in management fees received from NCRS. *Id.* at ¶¶ 7, 52, 54.[3] Longview further alleges that at the time it entered into this agreement with NCRS to return management fees, Whitman had received $3.4 million in Agency Fees, which it now claims is an overpayment of $2.1 million. *Id.* at ¶¶ 56, 57. Longview does not explain any basis for the "settlement" with NCRS, or what factual reason there might be for it to conclude that it was "required" to return fees to NCRS. Nor does Longview allege that Whitman had any role in the settlement with NCRS or that Whitman was even aware of the settlement (nor could it). Finally, Longview does not allege that Whitman engaged in any acts which would support any claims of unjust enrichment or monies had and received.

## ARGUMENT

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The pleading standard under Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

---

[2] Because Agency Fees are owed over a five (5) year period following each separate investment by Longview's clients, and because NCRS continued to place additional investments with Longview at least into 2009 (*see Id.* at ¶¶ 7, 43), Agency Fees continued to be owed to Whitman for the ensuing five year period, including after the termination date of the Agreement.

[3] Longview alleges that it agreed to refund NCRS $500,000 per fiscal quarter for a period of 5 years. *Id.* at ¶ 53.

of action will not do.' *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In addition, dismissal is appropriate if the pleading fails to set forth sufficient facts regarding *each* material element of the claims asserted. *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997).

Here, Longview's counterclaims contain no facts that are even consistent with an unjust enrichment claim, much less ones that make the claim plausible.

**I.      LONGVIEW'S COUNTERCLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6)**

Dismissal under Fed. R. Civ. P. 12(b)(6) is warranted with respect to both counts of Longview's counterclaims. To satisfy the five elements of unjust enrichment (or money had and received), Longview must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 179 (D. Mass. 2010) (quoting *LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279, 294–295 (D. Del. 2000)). At best, however, Longview's counterclaims only suggest the first two (2) elements: Whitman's receipt of Agency Fees owed by Longview (an alleged enrichment) and Longview's

reimbursement of management fees to NCRS (an alleged impoverishment). But what is missing from the counterclaims is any factual basis to claim a relationship between this alleged enrichment and the impoverishment more than six years later, that Whitman's receipt of the Agency Fees was in any way unjustified, or that Longview has no legal remedies.

To the contrary, the relationship between Longview and Whitman is governed by the Agreement, which provides Longview with any and all legal remedies to which it is entitled. Accordingly, equitable claims seeking relief that is not permitted under the Agreement are barred. Moreover, there simply are no facts alleged in the counterclaims which support such equitable claims. Longview's decision to return management fees to NCRS was, according to the counterclaims, Longview's alone, and its discussions and alleged "settlement" with NCRS did not benefit Whitman in any way. Longview therefore fails to allege a requisite direct relationship between the Agency Fees paid to Whitman and the amounts returned to NCRS. Finally, there are no facts in the counterclaims which explain how or why Whitman is not justified in retaining the agreed upon Agency Fees paid in exchange for Whitman's services.

### A. The Elements of Money Had and Received and Unjust Enrichment are Identical.

"Money had and received is essentially the same claim [as unjust enrichment] but is limited to enrichment by money or its equivalent." *Reed v. Zipcar Inc.,* 883 F. Supp. 2d 329, 334 (D. Mass. 2012) *aff'd*, 527 F. App'x 20 (1st Cir. 2013) (citing *Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc.,* 470 F.3d 14, 17 n. 2 (1st Cir. 2006)). Here, because Longview is only seeking a return of cash, there is no difference between the two claims and they are duplicative.

Accordingly, if an unjust enrichment claim is barred as a matter of law or is not adequately pled, as here, an accompanying money had and received claim fails as well.

### B. The Agreement Governs the Parties Rights Regarding Agency Fees, and Therefore Bars any Equitable Claims for Return of Agency Fees.

An equitable claim, such as money hand and received or unjust enrichment, cannot survive where, as here, an agreement governs the rights of the parties with respect to those funds. *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005) ("An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law"). The existence of the Agreement provides Whitman and Longview with all of their legal remedies regarding Agency Fees. "'Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment.'" *Reed*, 883 F. Supp. 2d at 334 (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006)). Unjust enrichment is an 'equitable stopgap for occasional inadequacies in contractual remedies at law,' in instances where there is no agreement specifying the parties' rights. *Watkins*, 692 F. Supp. 2d at 179 (quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 (1st Cir. 2005) (where contract was not definite enough to be enforceable, QLT's continued assurances of repayment to Mass. Eye and Ear could support an unjust enrichment claim in lieu of a contract claim). Accordingly, Longview cannot assert unjust enrichment (or money had and received) claims. *See In re McCabe*, 345 B.R. 1, 9 (D. Mass. 2006) ("Where the relationship of the parties is governed by contract, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies.").

In a factually analogous case, this Court, in *Reed*, held that a plaintiff cannot maintain claims for unjust enrichment and money had and received where an express agreement governed the relationship. The plaintiff in *Reed* attempted to challenge certain fees charged by defendant Zipcar under the membership agreement. Because the agreement did not provide any right or mechanism to challenge Zipcar's fees, the plaintiff asserted claims for unjust enrichment, money

had and received and unfair and deceptive acts and practices (ch. 93A). *Reed,* 883 F. Supp. 2d at 330-31. Zipcar successfully argued that the claims for unjust enrichment and money had and received should be dismissed because: (1) the fees paid by Reed (and other similarly situated customers) were agreed to under the express terms of the contract and, alternatively, (2) the assertion of ch. 93A claims, although meritless, barred recovery under any equitable causes of action. *Id.* at 334. Judge Gorton agreed with the defendant that the equitable remedies must be dismissed. "Because the Membership Agreement plainly governs the relationship of the parties, Reed is barred from bringing equitable claims sounding in quasi-contract" *Id*. The court further held that, in addition, the "mere availability" of a claim pursuant to ch. 93A -- regardless of its viability -- also barred the equitable claims because it was an additional legal remedy. *Id.*; *see also, e.g., Ruggers, Inc. v. U.S. Rugby Football Union, Ltd.*, 843 F. Supp. 2d 139, 147-48 (D. Mass. 2012) (Gorton, J.) (availability of breach of contract claim, whether meritorious or not, barred claim for equitable relief); *One Wheeler Road Assoc. v. Foxboro Co.*, 843 F. Supp. 792, 799 (D. Mass. 1994) (Young, J.) (available legal remedy barred unjust enrichment claim). Indeed, as the First Circuit noted in its affirmance of *Reed*, "neither equitable ground asserted by Reed can trump the plain terms of the contract willingly entered by both parties. Because Reed neither alleges that the contract is invalid generally or that its provisions are unclear, Reed cannot escape its terms by resort to equity." *Reed*, 527 Fed. Appx. at 24.

In an apparent effort to evade this rule, Longview alleges that the Agreement does not provide it with an "adequate" legal remedy. *See* Counterclaims ¶ 69. To the contrary, however, the Agreement does provide Longview with all legal remedies for which it bargained and is therefore entitled, including, for example, any claims for breach of the Agreement by Whitman. Counterclaims ¶ 69 should therefore be disregarded because it is a "summary legal conclusion[]

that [is] contradicted or 'belied by the facts alleged [in Longview's counterclaims].'" *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.,* 62 F. Supp. 2d 236, 241 (D. Mass. 1999). Nor is Longview precluded from asserting other claims against Whitman, such as under ch. 93A, to the extent there were any basis to do so -- which there is not.[4] In short, Longview does have legal remedies and the fact that it chose not to obtain, at the bargaining table, a "claw back" right to reimbursement of Agency Fees (under the circumstances it now alleges in the counterclaims) does not equate to a lack of legal remedies. As in *Reed*, Longview willingly entered into the Agreement's clear terms, and cannot now escape those terms by resort to equity.

Similarly, this Court held in *Watkins* that a claim for unjust enrichment could not survive a motion to dismiss where the plaintiff had adequate remedies at law. *Watkins*, 692 F. Supp. 2d at 179. In *Watkins,* the plaintiff asserted claims for breach of implied warranty (Count I), breach of contract (Count II), unjust enrichment and constructive trust (Count III), violations of ch. 93A (Count IV), and violations of the consumer protection laws of all other states (Count V). *Id.* at 173. Judge Stearns dismissed all five counts pursuant to Rule 12(b)(6). *Id.* at 179. In dismissing the claim for unjust enrichment, the court held that because plaintiff "ha[d] an adequate remedy at law, a claim of unjust enrichment is unavailable." *Id.* at 179. The court's ruling in *Watkins*, like *Reed*, demonstrates that it is the mere availability of a remedy at law, not its viability, that bars equitable claims such as money had and received and unjust enrichment.

Here, Longview admits that the parties' relationship, including the calculation of Agency Fees, when they are owed and when they are not, is governed by the Agreement. Counterclaims at ¶¶ 2, 5, 27, 28. As Longview states: "Section 4 of the Agreement provide[s] that Longview Guernsey shall pay Whitman as an agency fee a percentage of all amounts received by Longview

---

[4] Indeed, in one of its Affirmative Defenses (Aff. Def. No. 4), Longview passively asserts that Whitman has, in fact, breached the Agreement. However, Longview does not explain the nature of any such breach or any facts which could support it -- and Whitman is aware of none.

as management fees in respect of Advisory Service agreements entered into between Longview and Clients introduced to Longview by Whitman." Counterclaims at ¶ 28. Further, the Agency Fees are due and payable to Whitman "within 30 days after the receipt by Longview" of the corresponding management fees from the client. Agreement, § 4. By its terms, the Agreement therefore does not allow Longview to seek reimbursement of Agency Fees, that were owed and paid to Whitman, after the fact. For this reason, Longview cannot attempt to sidestep the four corners of the Agreement where it failed to bargain for such a reimbursement right at the outset. *See Reed*, 883 F. Supp. 2d at 334, *aff'd*, 527 Fed. Appx. at 24.

### C. The Counterclaims Fail to Allege Any Facts Which Even Loosely Support, Much Less Make Plausible, That Whitman's Retention of The Agency Fees is Unjust.

Even if the counterclaims were not barred, as a matter of law, by the existence of the Agreement, they still fail to state a claim. Under Massachusetts law, whether a benefit is unjust turns on the reasonable expectations of the parties. *Community Builders, Inc. v. Indian Motorcycle Associates, Inc.*, 44 Mass. App. Ct. 537, 560 (1998).

There is nothing the counterclaims to suggest that, at the time the Agreement was signed, the parties expected Whitman to return any Agency Fees paid in exchange for its services, or to give Longview a discount as a result of any events that were outside of Whitman's control. Longview received the benefit of Whitman's extensive efforts to introduce many potential clients, including NCRS. Therefore, Longview cannot reasonably claim that the NCRS-related Agency Fees paid to Whitman were not expected, or that the benefit Whitman received in return for its extensive and successful efforts was unjust or unexpected. *See, e.g.*, *Wit Corp v. Weber*, No. Civ.A. 00-0089, 2001 WL 492155 (Mass. Super. Ct. Apr. 25, 2001) (building supply company had no reasonable expectation that homeowner, as opposed to the contractor who purchased the items on credit, would be responsible for payment; accordingly unjust enrichment

claim against homeowner dismissed). Whatever reasons Longview had for agreeing to return some of its management fees back to NCRS, years after the fact, was Longview's decision and not the role or decision of Whitman. Nor does Longview's reimbursement of management fees to NCRS in any way devalue or diminish the consideration that Whitman provided to Longview. Longview expressly agreed that it would pay Whitman for any management fees received by a Whitman-introduced client as soon as those fees were received from the client.

Further, there are no allegations in the counterclaims which describe any direct or causal relationship between Whitman's alleged enrichment and Longview's alleged impoverishment. *See Watkins*, 692 F. Supp. 2d at 179; *see also, e.g.*, *Metcap Securities LLC v. Pearl Senior Care, Inc.*, No. Civ.A. 2129-VCN, 2007 WL 1954442, at *2 (Del. Ch. 2007) ("there must be some relationship or connection between th[e] enrichment and impoverishment. Without some relationship, it is difficult to understand why the recipient's retention of the benefit would constitute an 'injustice.'"). Here, the counterclaims simply allege that the Agency Fees were paid, as required under the Agreement, for Whitman's services. On the other hand, the refund to NCRS -- six years later -- was for some sort of "settlement" between NCRS and Longview (not Whitman). The is no causal connection between the two. Moreover, in expanding upon this necessary relationship between the enrichment and impoverishment, the *Metcap Securities* court noted that a direct relationship can be shown where the party seeking to recover the funds acted *for* the other party's benefit (without any consideration in return), thereby making the defendant's retention of those funds unjust. *Id.* at *2-3. Here, Longview's decision to return management fees to NCRS did not in any way benefit Whitman. Instead, any benefit was for Longview or its relationship with NCRS.

Massachusetts courts also allow unjust enrichment claims in situations where the benefit sought to be recovered was obtained by mistake of fact or law. *Corcoran Mgmt. Co., Inc. v. Town of Framingham*, No. 021836, 2003 WL 21960676 (Mass. Super. Ct. July 3, 2003) (finding of unjust enrichment where benefit of trash removal was provided by town due to mistake of fact). Here, there was neither a mistake of fact nor law. The amount of fees paid to Whitman was based on the express terms negotiated and agreed to by Longview under the Agreement. *See* Counterclaims ¶ 5. There is no allegation in the counterclaims that the Agency Fees paid to Whitman were based on any sort of mistake by Longview.

In short, Longview's counterclaims do not allege any facts which in any way suggest, much less make plausible, that Whitman's retention of the Agency Fees paid under the Agreement is inequitable or unjust. *See Twombly*, 550 U.S. at 559.

## CONCLUSION

For all the reasons stated above, Whitman respectfully requests that Longview's counterclaims be dismissed, with prejudice.

Dated:  September 4, 2015    Respectfully submitted,

/s/ *Anne V. Dunne*
William L. Prickett (BBO# 555341)
Anne V. Dunne (BBO# 681893)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA  02210-2028
Telephone:    (617) 946-4800
Facsimile:    (617) 946-4801

Counsel for Plaintiff Whitman & Company, Inc.

## CERTIFICATE OF SERVICE

  I, Anne V. Dunne, hereby certify that the above document was served upon the following counsel electronically, by ECF, on September 4, 2015:

Patrick J. O'Toole, Jr., Esq.
WEIL, GOTSHAL & MANGES LLP
100 Federal Street
Boston, MA 02110

/s/ *Anne V. Dunne*
Anne V. Dunne
