| | |
|---|---|
| WHITMAN & COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION |
| | ) NO. 1:14-cv-12047 |
| LONGVIEW PARTNERS (GUERNSEY) LIMITED, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

Patrick J. O'Toole, Jr. (BBO #559267)
WEIL, GOTSHAL & MANGES LLP
100 Federal Street, Floor 34
Boston, MA 02110
Tel.: (617) 772-8300
Fax: (617) 772-8333
patrick.otoole@weil.com

David R. Fertig
Robert S. Levine
Robert W. Brown
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
david.fertig@weil.com
robert.levine@weil.com
robert.brown@weil.com

*Attorneys for Longview Partners (Guernsey) Limited*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF RELEVANT FACTS ....................................................................................3

ARGUMENT ..............................................................................................................................6

I.      THE AGREEMENT DOES NOT BAR LONGVIEW GUERNSEY'S
COUNTERCLAIMS BECAUSE THE AGREEMENT DOES NOT COVER THE
SUBJECT MATTER OF THOSE CLAIMS ....................................................................6

II.     CLAIMS FOR MONEY HAD AND RECEIVED AND UNJUST
ENRICHMENT ARE THE PROPER CLAIMS FOR RECOVERING
OVERPAYMENTS UNDER A CONTRACT ..................................................................9

III.    LONGVIEW GUERNSEY'S COUNTERCLAIMS PLAUSIBLY STATE
CLAIMS FOR UNJUST ENRICHMENT AND MONEY HAD AND
RECEIVED..................................................................................................................13

       A.      Longview Guernsey Has Adequately Alleged That Whitman & Co.'s
Enrichment Was Unjust ...................................................................................14

       B.      Longview Guernsey Has Adequately Alleged That There Was a Relation
Between Whitman & Co.'s Enrichment And Longview Guernsey's
Impoverishment ...............................................................................................17

CONCLUSION..........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldous v. Darwin Nat'l Assurance Co.*,
No. 3:13-CV-3310-L, 2015 WL 1879677 (N.D. Tex. Apr. 24, 2015) ...................................12

*Allard v. Citizens Bank*,
608 F. Supp. 2d 160 (D. Mass. 2009) ...............................................................................11, 13

*Allstate Ins. Co. v. Lyons*,
843 F. Supp. 2d 358 (E.D.N.Y. 2012) ......................................................................................12

*Allen v. American Express Co.*,
249 Mass. 177 (1924) ...............................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................................13, 14

*Boswell v. Zephyr Lines, Inc.*,
414 Mass. 241 (1993) .............................................................................................................6, 7

*Brandt v. Wand Partners*,
242 F.3d 6 (1st Cir. 2001)......................................................................................................16, 17

*Brown v. Sallinger*,
214 Mass. 245, 101 N.E. 382 (1913) ........................................................................................10

*CIG Exploration, Inc. v. Hill*,
824 F. Supp. 1532 (D. Utah 1993) *aff'd sub nom. CIG Exploration, Inc. v. Tenneco Oil Co.*,
83 F.3d 431 (10th Cir. 1996) .....................................................................................................12

*In re Citigroup Inc. Capital Accumulation Plan Litig.*,
No. 00CV11921-NG, 2008 WL 3982065 (D. Mass. Aug 8, 2008).........................................17

*Claflin v. Godfrey*,
38 Mass. 1 (1838) .....................................................................................................................10

*Cliffton Equities, Inc. v. Summerlin Asset Mgmt. III, LLC*,
No. CV-12-08131-PCT-PGR, 2012 WL 6570940 (D. Ariz. Dec. 17, 2012) ..........................12

*Comm'r of Ins. v. Jankowski Ins. Agency, LLC*,
61 Mass. App. Ct. 305 (2004)...............................................................................................11, 13

*Cookson Group, PLC v. Flynn*,
52 Mass. App. Ct. 909 (2001) ..............................................................................................11

*Crandell v. White*,
164 Mass. 54 (1895) ...........................................................................................................10

*Erb v. Wainwright*,
No. CIV. A. 99-6275, 2003 WL 21349826 (Mass. Super., Jun. 4, 2003) ........................11, 13

*Farsheed v. Syed*,
85 Mass. App. Ct. 1128 (2014)...............................................................................................7

*Fast Capital Mktg., LLC v. Fast Capital LLC*,
No. CIV. A. H-08-2142, 2008 WL 5381309 (S.D. Tex. Dec. 24, 2008)............................18, 19

*Frontier Mgmt. Co. v. Balboa Ins. Co.*,
658 F. Supp. 987 (D. Mass. 1986) ........................................................................................10

*G.E. Lothrop Theatres Co. v. Edison Elec. Illuminating Co. of Boston*,
290 Mass. 189 (1935) ..........................................................................................................10

*Gill Equip. Co. v. Freedman*,
339 Mass. 303 (1959) ..........................................................................................................10

*Hoyle v. Dimond*,
612 F. Supp. 2d 225 (W.D.N.Y. 2009) ...................................................................................9

*Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc.*,
470 F.3d 14 (1st Cir. 2006)...................................................................................................10

*Lass v. Bank of Am., N.A.*,
695 F.3d 129 (1st Cir. 2012)........................................................................................7, 9, 15

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005)..................................................................................................10

*Massachusetts v. Mylan Labs.*,
357 F. Supp. 2d 314 (D. Mass. 2005) .....................................................................................6

*In re McCabe*,
345 B.R. 1 (D. Mass. 2006) ..................................................................................................11

*Ocasio-Hernandez v. Fortuno-Burset*,
640 F.3d 1 (1st Cir. 2011)......................................................................................................14

*Prot. One Alarm Monitoring, Inc. v. Frost*,
2006 Mass. App. Div. 9 (Dist. Ct. 2006) ................................................................................11

*Reed v. Zipcar, Inc.*,
    883 F. Supp. 2d 329 (D. Mass. 2012) *aff'd*, 527 F. App'x 20 (1st Cir. 2013)....................8, 11

*Roma v. Raito, Inc.*,
    No. 1:13-CV-10297-LTS, 2015 WL 1523098 (D. Mass. Mar. 31, 2015) ........................7, 8, 9

*Santagate v. Tower*,
    64 Mass. App. Ct. 324 (2005) ...........................................................................................11

*Sweeney v. DeLuca*,
    No. 042338, 2006 WL 936688 (Mass. Super. Mar. 16, 2006) .................................................9

*Tyler v. Michaels Stores, Inc.*,
    840 F. Supp. 2d 438 (D. Mass. 2012) ...............................................................................15

*United States v. Breymann*,
    228 F. 808 (D. Mass. 1915) ..............................................................................................11

*Universal Am-Can, Ltd. v. CSI-Concrete Sys., Inc.*,
    No. 11-CV-030-LM, 2012 WL 2627764 (D.N.H. July 5, 2012) .............................................7

*In re Ward*,
    194 B.R. 703 (Bankr. D. Mass. 1996) ..............................................................................6

*Watkins v. Omni Life Sci., Inc.*,
    692 F. Supp. 2d 170 (D. Mass. 2010) ...............................................................................11

**Other Authorities**

17 Mass. Prac., Prima Facie Case § 5.2 (5th ed.) .......................................................................10

Defendant/Counterclaim-Plaintiff Longview Partners (Guernsey) Limited's ("Longview Guernsey") Counterclaims arise from its overpayment of $2.1 million in Agency Fees to Plaintiff/Counterclaim-Defendant Whitman & Company, Inc. ("Whitman & Co."). The Exclusive Agency Agreement (as amended, the "Agreement") entered into between Whitman & Co. and Longview Guernsey expressly provides that in the event that Longview Guernsey entered into an Advisory Service agreement with a Client introduced by Whitman & Co., then Whitman & Co. would be entitled to Agency Fees which are calculated as a percentage of the Management Fees that were received by Longview Guernsey. Longview Guernsey initially paid Whitman & Co. $3.4 million in Agency Fees in connection with portfolio management services Longview Guernsey performed for assets controlled by the North Carolina Retirement System ("NCRS"). Following an investigation by the North Carolina Department of Justice ("NC DOJ") into the use of third-party marketers or placement agents such as Whitman & Co., however, Longview Guernsey was obligated to refund $10 million of the Management Fees it received for portfolio management services it provided in connection with the NCRS' assets. Because Longview Guernsey had previously calculated and paid Whitman & Co. Agency Fees based on Management Fees that did not account for the refund, Longview Guernsey overpaid Whitman & Co. $2.1 million in Agency Fees. Whitman & Co. was not entitled to, and has never reimbursed Longview Guernsey for, the $2.1 million overpayment.

Whitman & Co. makes two baseless arguments to support its Motion to Dismiss. First, Whitman & Co. attempts to simultaneously argue that the Agreement provides an adequate remedy at law, barring Longview Guernsey's Counterclaims, and that there is no basis for Longview Guernsey to claim breach of the Agreement. This argument fails because, among other things, the Agreement does not cover the subject matter of the Counterclaims. Indeed, the

Agreement does not address situations where a refund of Management Fees is required or include any mechanism through which Longview Guernsey could recover overpayments of Agency Fees made to Whitman & Co.  Thus, the Agreement does not provide Longview Guernsey with an adequate remedy at law.  Moreover, even if the contract did address the subject matter of the Counterclaims, which it does not, courts have consistently recognized that the appropriate claims when addressing overpayments under an agreement are counts for money had and received and unjust enrichment.

Second, Whitman & Co. argues that Longview Guernsey failed to adequately plead facts to show that Whitman & Co.'s retention of the $2.1 million was unjust or that there was a "relation between the enrichment and the impoverishment."  According to Whitman & Co., it is justified in retaining the Agency Fees because the parties never expected Whitman & Co. to return any overpayment of Agency Fees.  Whitman & Co.'s arguments are baseless, conclusory and contrary to Longview Guernsey's allegations and the terms of the Agreement.  As the Counterclaims and the Agreement make clear, Whitman & Co. was only entitled to Agency Fees based on the percentage of Management Fees Longview Guernsey actually received.  Here, because Longview Guernsey was required to refund $10 million of its Management Fees to the North Carolina Treasurer, Longview Guernsey overpaid Whitman & Co. by $2.1 million.  Given the plain language of the Agreement, there could be no expectation that Whitman & Co. could simply keep an overpayment of $2.1 million in Agency Fees that were based on Management Fees that Longview Guernsey was required to refund.  Allowing Whitman & Co. to keep the $2.1 million overpayment is contrary to the plain language of the Agreement and to principles of fairness.

Similarly, Whitman & Co.'s assertion that there is no relation between the enrichment and impoverishment alleged in the Counterclaims is based on a fundamental misunderstanding of the impoverishment alleged. Longview Guernsey clearly alleges that the impoverishment was the $2.1 million that Longview Guernsey paid to Whitman & Co., not the money that was refunded to the North Carolina Treasurer. Without question, there is a direct relation between the $2.1 million overpayment Whitman & Co. received from Longview Guernsey (the enrichment) and the amount Longview Guernsey overpaid to Whitman & Co. (the impoverishment)—indeed, they are one in the same. Because the Agreement does not cover the subject matter of the Counterclaims, claims for unjust enrichment and money had and received are the correct claims to recover the $2.1 million overpayment, and Longview Guernsey has plausibly alleged such claims, Whitman & Co.'s Motion to Dismiss should be summarily denied.

## STATEMENT OF RELEVANT FACTS

### A. The Agreement Between Longview Guernsey and Whitman & Co.

Longview Guernsey is an asset management firm that began its business by primarily managing funds on behalf of high net worth individuals. Counterclaims ¶ 15. In 2005, Longview Guernsey and its affiliate, Longview Partners LP[1] ("Longview LP" and, together with Longview Guernsey, "Longview") decided to seek investments from large institutional clients in North America. *Id.* ¶¶ 17–18. Longview was referred to R. Eugene Whitman ("Gene Whitman"), and the parties began discussing a relationship where Gene Whitman would serve as a third-party marketer, or "finder," for Longview. *Id.* ¶¶ 19, 21.

On January 1, 2006 Longview Guernsey entered into an agreement with R. Eugene Whitman ("Gene Whitman"), pursuant to which Gene Whitman agreed to perform "Agency

---

[1] On July 3, 2012, Longview Partners LP ceased to exist and was succeeded by Longview Partners LLP. *See* Stipulation to Correct Caption and Name of Defendants, filed October 8, 2014 (Dkt. 29).

Services" for Longview Guernsey in connection with the solicitation of "Prospective Clients" for Longview. *Id.* ¶¶ 2–3, 25. On January 31, 2007, following Gene Whitman's death, the Agreement was amended solely to substitute Whitman & Co. for Gene Whitman. *Id.* ¶¶ 2, 32–33. Pursuant to the terms of the Agreement, Longview Guernsey agreed to pay Whitman & Co. an annual $100,000, "non-refundable retainer," which was "payable to Whitman under all circumstances," including if no Prospective Client committed funds to Longview's Advisory Services.[2] *Id.* ¶¶ 3–4, 26. In addition, the parties agreed that, in the event Longview Guernsey entered into an Advisory Service agreement with a Client that was "introduced" by Whitman & Co., Whitman & Co. would be entitled to Agency Fees. *Id.* ¶¶ 5, 27. The amount of Agency Fees Whitman & Co. received was based on the Management Fees ultimately received by Longview Guernsey in connection with an Advisory Service agreement, and the calculation was specifically delineated in the Agreement. *Id.* ¶¶ 5, 28. Section 12 of the Agreement provided Longview with sole discretion and control over the Advisory Service relationships and the terms of the Advisory Service agreements. *Id.* ¶ 30.

### B. Longview Guernsey Pursues and Secures Investments from NCRS

After retaining Gene Whitman, Longview Guernsey submitted a response to an Invitation to Apply to the North Carolina Department of State Treasurer ("NC Department of State Treasurer") for a new potential investment opportunity with NCRS. *Id.* ¶ 40. Gene Whitman, along with his consultant, Howard Street Partners, set up meetings for Longview to meet individuals at the NC Department of State Treasurer, including its Chief Investment Officer. *Id.* ¶ 41. On June 15, 2007, the North Carolina Treasurer entered into an Advisory Service agreement, styled as an Investment Management Agreement (the "NCRS IMA"), with Longview

---

[2] Capitalized terms used but not defined herein, shall have the meaning ascribed to them in the Agreement.

Guernsey and appointed Longview Guernsey to perform portfolio management services for assets controlled by NCRS. *Id.* ¶¶ 6, 40. After Longview Guernsey and the North Carolina Treasurer entered into the NCRS IMA, NCRS' portfolio was funded with approximately $834 million in assets between 2007 and 2009. *Id.* ¶¶ 7, 43. Longview Guernsey performed portfolio management services on the NCRS assets, and pursuant to the NCRS IMA, the North Carolina Treasurer paid Longview Guernsey Management Fees. *Id.* Pursuant to the Agreement, Longview Guernsey paid Whitman & Co. Agency Fees, calculated as a percentage of the Management Fees Longview Guernsey received from the North Carolina Treasurer. *Id.*

**C.    Longview Guernsey Agrees to Refund Management Fees to the North Carolina Treasurer, But Whitman & Co. Refuses to Refund the Related Agency Fees to Longview Guernsey**

Longview Guernsey continued to pay Agency Fees to Whitman & Co. in connection with the Management Fees Longview Guernsey received pursuant to the NCRS IMA, including after Longview Guernsey terminated the Agreement on December 31, 2010. *Id.* ¶¶ 7, 43, 48–50. In total, Longview Guernsey paid Whitman & Co. $3.4 million in Agency Fees in connection with the assets in the NCRS' portfolio with Longview. *Id.* ¶¶ 7, 56. Longview Guernsey was still paying Agency Fees to Whitman & Co. when it was contacted by the North Carolina Department of Justice (the "NC DOJ") in 2011 concerning an investigation into Longview's use of third-party marketers such as Gene Whitman and Whitman & Co. *Id.* ¶ 51. After this investigation, Longview Guernsey entered into an agreement with the North Carolina Treasurer (the "North Carolina Agreement"), whereby Longview Guernsey was required to make quarterly payments to the North Carolina Treasurer and refund $10 million of the Management Fees it had already received from the North Carolina Treasurer. *Id.* ¶¶ 7, 52–54. Longview Guernsey has paid $500,000 to the North Carolina Treasurer in every quarter since the quarter ending on December 31, 2013.

Because Longview Guernsey was contractually required to refund $10 million of its

Management Fees to the North Carolina Treasurer, Whitman & Co. was entitled to only $1.3

million in Agency Fees under the terms of the Agreement. *Id.* ¶¶ 8, 56. As a result, Longview

Guernsey overpaid Whitman & Co. by $2.1 million. *Id.* Whitman & Co. was not entitled to the

$2.1 million overpayment but has refused to refund the $2.1 million to Longview Guernsey. *Id.*

¶¶ 9, 57, 61, 63, 66, 68. Longview Guernsey now asserts causes of action for money had and

received and unjust enrichment. *Id.* ¶¶ 58–69.

## ARGUMENT

### I. THE AGREEMENT DOES NOT BAR LONGVIEW GUERNSEY'S COUNTERCLAIMS BECAUSE THE AGREEMENT DOES NOT COVER THE SUBJECT MATTER OF THOSE CLAIMS

Whitman & Co. attempts to argue that, even though there is no basis for Longview

Guernsey to claim a breach of the Agreement, the Agreement somehow bars Longview

Guernsey's Counterclaims because it provides an alternative adequate remedy at law. This claim

necessarily fails because it is contrary to the plain terms of the Agreement and well-established

Massachusetts authority.

At the outset, courts are reluctant to dismiss claims where there is doubt as to the

existence of an adequate remedy at law. In fact, courts recognize that "[d]oubts as to the

adequacy of the remedy at law are resolved in favor of granting equitable relief." *In re Ward*,

194 B.R. 703, 711 (Bankr. D. Mass. 1996) (concluding that "courts look quite favorably upon

equitable relief" and that "[t]his has led one author to conclude that the adequate remedy rule is

essentially dead"); *see also Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass.

2005) ("'[A] suit in equity will lie where the remedy at law is not clear or as adequate and

complete as that which equity can afford.'" (quoting *G.E. Co. v. Callahan*, 294 F.2d 60, 64 (1st

Cir. 1961)). Moreover, under Massachusetts law, "[r]ecovery in quantum meruit presupposes

that no valid contract *covers the subject matter* of a dispute." *Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 250 (1993) (emphasis added). Where a contract does not cover the subject matter of a dispute, the contract does not bar claims such as unjust enrichment and money had and received. *See, e.g.*, *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140–41 (1st Cir. 2012) (vacating the dismissal of an unjust enrichment claim where there was a contract between the parties that did not "explicitly address" the subject matter of the dispute); *Roma v. Raito, Inc.*, No. 1:13-CV-10297-LTS, 2015 WL 1523098, at *6 (D. Mass. Mar. 31, 2015) (denying summary judgment on a quantum meruit claim where there was "no dispute that the parties had a valid contract," but where it was unclear if the terms of the employment contract applied to money sought for work done after plaintiff's office was closed).[3] In *Lass*, for example, defendant-mortgagee sought dismissal of an unjust enrichment claim because of the existence of a valid mortgage agreement. 695 F.3d at 140. Plaintiff's claim that defendant "had unfairly, unjustly, and unlawfully forced her and other borrowers to purchase excessive amounts of flood insurance and had improperly profited through kickbacks, commissions, or other compensation paid in connection with the force-placed insurance," however, was not barred by the mortgage agreements because they did not explicitly address "either commissions or, more generally, the Bank's entitlement to profit from its forced placement of insurance." *Id.* at 133, 140 (internal quotation marks omitted). Similarly, in *Roma*, defendant moved for summary judgment on plaintiff's quantum meruit claim where there was "no dispute" that the parties had a valid employment agreement. 2015 WL 1523098, at *6. Part of the recovery sought by plaintiff included payment for work done after

---

[3] *See also Farsheed v. Syed*, 85 Mass. App. Ct. 1128, at *7 n.3 (2014) ("The MOU does not address the situation presented, so it does not stand as a bar to this claim in quasi-contract."); *Universal Am-Can, Ltd. v. CSI-Concrete Sys., Inc.*, No. 11-CV-030-LM, 2012 WL 2627764, at *1 (D.N.H. July 5, 2012) (citing *Boswell* in support of its conclusion that a quantum meruit claim could proceed where the valid contract between the parties did not cover the subject matter of the dispute).

his employment by defendant ostensibly ended. *Id.* The Court denied summary judgment as to this portion of the recovery, reasoning that it was unclear if the terms of the employment agreement applied to this post-employment work. *Id.*

Here, while Whitman & Co. argues that "[t]he existence of the Agreement provides Whitman and Longview with all of their legal remedies regarding Agency Fees," Mot. at 6, Whitman & Co. concedes that there is no provision of the Agreement that covers the "right to reimbursement of Agency Fees (under the circumstances [Longview Guernsey] now alleges in the counterclaims)." Mot. at 8. In fact, the Agreement does not address situations where a refund of Management Fees is required or include any other mechanism through which Longview Guernsey could recover overpayments of Agency Fees made to Whitman & Co. Without such provisions, the Agreement does not provide an alternative adequate remedy at law for, or even contemplate the possibility of, a refund or overpayment.[4]

Whitman erroneously points the Court to *Reed v. Zipcar, Inc.* as a factually analogous case. Mot. at 6–7. *Reed*, however, is inapposite because there, the court dismissed plaintiff's claims for money had and received and unjust enrichment that sought recovery of late fees plaintiff was contractually required to pay defendant. 883 F. Supp. 2d 329, 334 (D. Mass. 2012) *aff'd*, 527 F. App'x 20 (1st Cir. 2013). The express terms of the contract in *Reed* specifically addressed late fees, and Plaintiff's claims were a blatant attempt to override those specific terms. *Id.* at 331 (recognizing that under the agreement, "[m]embers also agree that they will pay a late fee if they fail to return a car on time and may be liable for other charges as described in the Membership Agreement"). Thus, in *Reed*, the agreement between the parties covered the subject

---

[4] Indeed, Whitman & Co. argues that there are no facts to support a claim that it breached the Agreement, further undermining the notion that the Agreement provides Longview Guernsey with all its legal remedies. *See* Mot. at 8 n.4.

matter of plaintiff's claims.  In contrast here, the Agreement has no express terms governing the situation of a refund of Management Fees or an overpayment to Whitman & Co.  Accordingly, the present case more closely resembles *Lass* and *Roma* because, while it is clear there is a valid contract between Whitman & Co. and Longview Guernsey, it is equally clear that that contract does not "cover the subject matter of the dispute" at the heart of Longview Guernsey's Counterclaims—the overpayment of Agency Fees.[5]  *See Lass*, 695 F.3d 129 at 140–41; *Roma*, 2015 WL 1523098, at *6.  The claims asserted by Longview Guernsey were intended to fill these very gaps in a contractual relationship.  *See Sweeney v. DeLuca*, No. 042338, 2006 WL 936688, at *8 (Mass. Super. Mar. 16, 2006) ("A claim of unjust enrichment provides for an equitable remedy, which is meant to fill in remedial gaps when no adequate remedy at law is present." (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992))).  Because the Agreement does not provide Longview Guernsey with an adequate remedy at law to recover the $2.1 million overpayment, it does not and cannot bar Longview Guernsey's claims for unjust enrichment and money had and received.  Accordingly, Whitman & Co.'s Motion to Dismiss should be denied.

## II.  CLAIMS FOR MONEY HAD AND RECEIVED AND UNJUST ENRICHMENT ARE THE PROPER CLAIMS FOR RECOVERING OVERPAYMENTS UNDER A CONTRACT

Moreover, there can be no doubt that claims for money had and received and unjust enrichment are the appropriate claims to recover overpayments under a contract.  To properly

---

[5] Indeed, courts have held that claims for unjust enrichment and money had and received are proper where the plaintiff did not plead breach of contract because a contract either did not exist or did not apply.  *See Hoyle v. Dimond*, 612 F. Supp. 2d 225, 231 (W.D.N.Y. 2009) ("Although the existence of a valid and enforceable contract *governing a particular subject matter* generally precludes recovery in quasi contract, where there is a bona fide dispute as to the existence of a contract *or the application of a contract* in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract, and will not be required to elect his or her remedies.  Here, the plaintiff may properly plead unjust enrichment and money had and received *as he has not pled a claim for breach of contract*." (emphases added)).

state a claim for money had and received, a plaintiff need only allege (1) that the defendant has obtained money, and (2) that, under such circumstances, in equity and good conscience the money should be returned to plaintiff. *See Frontier Mgmt. Co. v. Balboa Ins. Co.*, 658 F. Supp. 987, 993 (D. Mass. 1986) (citing *Suncook Mills v. U.S.*, 44 F. Supp. 744, 747 (D. Mass.1942)). "The count for money had and received is broad and includes all money received by the defendant which in equity and good conscience belongs to plaintiff." *G.E. Lothrop Theatres Co. v. Edison Elec. Illuminating Co. of Boston*, 290 Mass. 189, 192 (1935). *See also* 17 Mass. Prac., Prima Facie Case § 5.2 (5th ed.). Similarly, for a claim for unjust enrichment there must be "unjust enrichment of one party and unjust detriment to another party." *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 n.7 (1st Cir. 2005) (internal quotation marks and citations omitted). The First Circuit has observed that although money had and received is rooted in common law it is "very close in character" to unjust enrichment which derives from equity jurisprudence. *Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc.*, 470 F.3d 14, 21 (1st Cir. 2006).[6]

Longview Guernsey alleges that the Agreement provides that Whitman & Co. was only entitled to Agency Fees based on the Management Fees Longview Guernsey ultimately received. Thus, because the North Carolina Agreement required Longview Guernsey to refund $10 million of the Management Fees it initially received from NCRS, Whitman & Co. was overpaid by $2.1 million, and equity and good conscience require that Whitman & Co. return the $2.1 million overpayment. This is the precise situation to which Massachusetts courts have recognized that

---

[6] As a result, some Massachusetts courts have treated money had and received as a contract action, while others have characterized it in the nature of equity. *Compare Gill Equip. Co. v. Freedman*, 339 Mass. 303, 303 (1959) ("This is an action of contract for money received by the defendant to the plaintiff's use.") *and Allen v. American Express Co.*, 249 Mass. 177, 178 (1924) ("This is an action of contract for money had and received.") *and Crandell v. White*, 164 Mass. 54, 59 (1895) ("An action for money had and received is an action of contract."), *with Brown v. Sallinger*, 214 Mass. 245, 248 (1913) ("[A]n action for money had and received is in the nature of an equitable remedy . . . ."), *and Claflin v. Godfrey*, 38 Mass. 1, 6 (1838) ("[Money had and received] is often called an equitable action . . .").

claims for money had and received and unjust enrichment rightfully apply.[7] *Allard v. Citizens Bank*, 608 F. Supp. 2d 160, 174–75 (D. Mass. 2009) (recognizing money had and received "is appropriate when one party to a contract mistakenly overpays another"); *Comm'r of Ins. v. Jankowski Ins. Agency, LLC*, 61 Mass. App. Ct. 305, 305–07 (2004) (endorsing money had and received as the proper grounds for recovery of commissions which had been previously paid by an insurance company to an agent where the insurance policies which were the basis for the commissions were subsequently cancelled and the premiums refunded); *United States v. Breymann*, 228 F. 808, 810 (D. Mass. 1915) (observing that plaintiff may have a claim "in the nature of an action for money had and received to recover payments made by it under a mistake of fact" where defendant was paid more than he was entitled to, which, under the contract, could not have been discovered until after payment was made); *Erb v. Wainwright*, No. CIV. A. 99-6275, 2003 WL 21349826, *16 (Mass. Super., Jun. 4, 2003) (denying an attorney's motion for summary judgement on an unjust enrichment claim where the estate of a former client sought to recover attorney fees allegedly "overpaid" under express, written retainer and contingency fee agreement).[8]

---

[7] Whitman & Co.'s opposition relies almost exclusively on cases that do not even involve claims for money had and received. *See, e.g.*, *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005) (framing a claim for equitable restitution as a claim for unjust enrichment in a child support case with no mention of money had and received); *In re McCabe*, 345 B.R. 1, 9 (D. Mass. 2006) (granting summary judgment on an unjust enrichment claim in a bankruptcy case with no mention of money had and received); *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 179 (D. Mass. 2010) (concluding an unjust enrichment claim fails in a defective design putative class action with no mention of money had and received). The one exception, *Reed v. Zipcar, Inc.*, is factually distinct and rejected a claim that attempted to override the express terms of a contract specifically governing late fees. *See Reed*, 883 F. Supp. at 331, 334.

[8] *See also Prot. One Alarm Monitoring, Inc. v. Frost*, 2006 Mass. App. Div. 9, at *1 (Dist. Ct. 2006) (characterizing a statement of the elements of an action for money had and received as the "correct rule of law pertinent to the issues and applicable to the evidence" where a mistake of fact resulted in overpayment on a valid contract); *Cookson Group, PLC v. Flynn*, 52 Mass. App. Ct. 909, 911 (2001) (holding that where a landlord receives money under a written lease agreement "which in equity and good conscience belongs to the [lessee]," an action for money had and received will lie).

Courts in other jurisdictions have also consistently followed this well-established principle and have recognized that, even where an agreement exists, principles of equity allow for unjust enrichment and money had and received claims where such causes of action are based on alleged overpayments on that agreement. *See Aldous v. Darwin Nat'l Assur. Co.*, No. 3:13-CV-3310-L, 2015 WL 1879677, at *5 (N.D. Tex. Apr. 24, 2015) (recognizing "overpayments under a contract" as an exception to the general rule that "a party cannot pursue equitable theories of recovery when an express contract governs the dispute."); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 376 (E.D.N.Y. 2012) ("[W]here one party to a contract accidentally pays another more than the contract requires, the overpayer has an unjust enrichment claim to recover the excess."); *CIG Exploration, Inc. v. Hill*, 824 F. Supp. 1532, 1546 (D. Utah 1993), *aff'd sub nom. CIG Exploration, Inc. v. Tenneco Oil Co.*, 83 F.3d 431 (10th Cir. 1996) (determining, while analyzing the proper statute of limitations to apply, that "[t]he essence of [plaintiff's] claims for mistake, restitution/unjust enrichment, monies had and received, and overpayment is that [plaintiff] mistakenly paid excess royalties to Defendants" where plaintiff was seeking reimbursement of monies previously paid to defendants due to a settlement plaintiff subsequently entered into with a third party).[9]

This is precisely what Longview Guernsey has alleged. Longview Guernsey alleges it paid Whitman & Co. $3.4 million in Agency Fees because that amount was the "percentage of . . . Management Fees Longview Guernsey received from the North Carolina Treasurer in connection with the funding of NCRS' portfolio." Counterclaims ¶ 7. Longview Guernsey paid that amount in Agency Fees to Whitman & Co. under the belief that it was entitled to the entire

---

[9] *Accord Cliffton Equities, Inc. v. Summerlin Asset Mgmt. III, LLC*, No. CV-12-08131-PCT-PGR, 2012 WL 6570940, at *1, *2 (D. Ariz. Dec. 17, 2012) ("The defendant's position is that it has not received the benefit of its bargain under the contracts since it has mistakenly overpaid the plaintiff under the terms of the contracts . . . . [T]he plaintiff has not persuaded the Court that the unjust enrichment counterclaim has been improperly raised . . . .").

amount it received from the North Carolina Treasurer in Management Fees. *Id.* ¶¶ 7–8. Ultimately, however, Longview Guernsey was obligated to refund $10 million in Management Fees to the North Carolina Treasurer pursuant to the North Carolina Agreement. *Id.* ¶ 7. Thus, Longview Guernsey overpaid Whitman & Co. $2.1 million in Agency Fees because its original payment was calculated without taking into account the $10 million refund of Management Fees that Longview Guernsey was required to make. *Id.* ¶ 8. After accounting for the refund of Management Fees, the terms of the parties' Agreement entitled Whitman & Co. only to $1.3 million in Agency Fees, not the $3.4 million Longview Guernsey actually paid. Thus, Whitman & Co. received $2.1 million more than it was rightfully owed under the Agreement. *Id.* ¶ 8–9. As Whitman & Co. has not returned the $2.1 million that it was overpaid under the Agreement, Longview Guernsey is entitled to recover the overpayment and has pled the proper claims. *See Allard*, 608 F. Supp. 2d at 174–75; *Jankowski*, 61 Mass. App. Ct. at 305–07 (2004); *Erb*, 2003 WL 21349826 at *16. Accordingly, Whitman & Co.'s Motion to Dismiss should be denied because courts have consistently recognized that a claim of an overpayment under an agreement is the precise situation where claims for money had and received and unjust enrichment apply.

## III. LONGVIEW GUERNSEY'S COUNTERCLAIMS PLAUSIBLY STATE CLAIMS FOR UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). Even after the Supreme Court's decisions in *Iqbal* and *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff is still only subject to a notice pleading standard, which requires only "[a] 'short and plain' statement" with "enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 11–12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). And, in evaluating a motion to dismiss, a court must treat all factual allegations, other than those that merely parrot the elements of a cause of action, as true, "even if seemingly incredible." *Id.* at 12. Nor should the court "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely.'" *Id.* at 12–13 (quoting *Twombly*, 550 U.S. at 556).

While conceding that Longview Guernsey adequately alleged enrichment, for Whitman & Co., and impoverishment, by Longview Guernsey, Whitman & Co. erroneously claims that Longview Guernsey did not plausibly allege claims for unjust enrichment or money had and received because Longview Guernsey failed to allege facts that Whitman & Co.'s enrichment was unjust or that there was a relation between Whitman & Co.'s enrichment and Longview Guernsey's impoverishment. Mot. at 9–11. Both of these arguments are baseless.

### A.   Longview Guernsey Has Adequately Alleged That Whitman & Co.'s Enrichment Was Unjust

Whitman & Co. erroneously asserts that, even though Longview Guernsey refunded Management Fees it received, Whitman & Co. was justified in keeping the $2.1 million overpayment because "[t]here is nothing [in] the counterclaims to suggest that, at the time the Agreement was signed the parties expected Whitman to return any Agency Fees paid in exchange for its services, or to give Longview a discount as a result of any events that were outside of Whitman's control." Mot. at 9. This argument, however, ignores both the clear allegations in Longview Guernsey's Counterclaims and the plain language of the Agreement,

which demonstrates that the parties only intended Whitman & Co. to be entitled to Agency Fees if Longview Guernsey received Management Fees.[10]

The plain language of the Agreement provides that Longview Guernsey would pay, and Whitman & Co. would receive, "as an [Agency Fee] a percentage of all amounts received by Longview as [Management Fees] in respect of Advisory Service agreements entered into between Longview and Clients introduced to [Longview Guernsey] and/or Longview by Whitman." Agreement ¶ 4; Counterclaims ¶ 28. Thus, the Agreement dictates and sets the parties' expectations that Whitman & Co.'s only entitlement to Agency Fees is a percentage of Management Fees Longview Guernsey actually received. The Agreement also provides that Longview had complete discretion and control over the relationship between Longview and its Clients. Counterclaims ¶ 30; Agreement ¶ 12. Longview's discretion permitted it to dictate the terms of any Advisory Service agreement between Longview and a Client, including the amounts that Longview Guernsey could charge for Management Fees. Counterclaims ¶ 30; Agreement ¶ 12.

Thus, when Longview Guernsey entered into an agreement with a Client requiring Longview Guernsey to refund Management Fees--as was its right to do under the Agreement-- there was no reason that Whitman & Co. would be entitled to keep the inflated amount of Agency Fees that it was previously paid. This is particularly true where the required refund of Management Fees followed and was the result of an investigation of the NC DOJ into the use of entities such as Whitman & Co. Counterclaims ¶¶ 7, 51–57. Whitman & Co. claims that its

---

[10] The "absence of justification" element of an unjust enrichment claim "turns on the reasonable expectations of the parties." *See Lass*, 695 F.3d at 140 (citing *Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 44 Mass. App. Ct. 537 (1998)); *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451 (D. Mass. 2012) (stating that the reasonable expectations of the parties usually means "that the parties were dealing with each other in such a way, or in such circumstances, that reasonable people would expect payment by the defendant to the plaintiff for some benefit conferred by the plaintiff on the defendant").

efforts entitled it to "the NCRS-related Agency Fees," Mot. at 9, but ignores that the parties'

Agreement entitles Whitman & Co. only to Agency Fees with respect to Management Fees

Longview Guernsey actually received.  As a result of the refund, Longview Guernsey actually

received less Management Fees.  However, because Whitman & Co.'s Agency Fees were

originally calculated based on a larger amount of Management Fees than Longview Guernsey

ultimately received, Whitman & Co. was overpaid by $2.1 million.  The $2.1 million

overpayment could not have been paid to Whitman & Co. "in exchange for its services," Mot. at

9, because it was above and beyond what the parties agreed Whitman & Co. would be entitled to

under the Agreement.  The parties certainly did not expect that Whitman & Co. would receive

Agency Fees in respect of Management Fees that Longview Guernsey did not receive.  That is

the situation the Counterclaims seek to rectify.

Whitman & Co. erroneously claims that its receipt of the full amount of Agency Fees was

just because the North Carolina Agreement that required Longview Guernsey to reimburse

Management Fees "was Longview's decision and not the role or decision of Whitman."  Mot. at

10.  Whitman & Co.'s argument misses the point.  As the Counterclaims make clear, the refund

of Management Fees followed and was the result of the NC DOJ investigation into the use of

placement such as Whitman & Co.  Counterclaims ¶¶ 51–57.  Moreover, the Agreement

expressly provides that Longview has sole and complete discretion to dictate the terms of any

Advisory Service agreement, including the amounts Longview Guernsey could charge for

Management Fees.  Finally, whether Whitman & Co. played any role in Longview Guernsey's

refund to NCRS or committed any wrongdoing has no bearing on whether Whitman & Co. is

justified in keeping the Agency Fees.  *See Brandt v. Wand Partners*, 242 F.3d 6, 16 (1st Cir.

2001) ("[U]njust enrichment does not always require a finding of wrongdoing by the

defendant.").[11]  Both Whitman & Co. and Longview Guernsey knew and agreed that Whitman & Co. was only entitled to receive Agency Fees based on a percentage of Management Fees.  As a result of the refund, Longview Guernsey ultimately received less in Management Fees.  However, Whitman & Co. was previously paid based on those Management Fees that Longview Guernsey was required to refund.[12]  Accordingly, Longview Guernsey adequately pled that there is no justification for Whitman & Co. to keep the $2.1 million overpayment of Agency Fees.

B.     **Longview Guernsey Has Adequately Alleged That There Was a Relation Between Whitman & Co.'s Enrichment And Longview Guernsey's Impoverishment**

Whitman & Co. further claims there is no "direct or causal relationship" between the alleged enrichment--Whitman & Co.'s receipt of Agency Fees--and what it views as the alleged impoverishment--Longview Guernsey's refund of Management Fees to NCRS.  Mot. at 10.  Whitman & Co., however, woefully misreads the Counterclaims because it fails to properly identify the alleged impoverishment.  As plainly spelled out in the Counterclaims, Longview Guernsey seeks "to recover the excess money that Whitman & Co. has received" because "Longview Guernsey paid Whitman & Co. approximately $2.1 million more in Agency Fees than Longview Guernsey rightfully owed under the Agreement," not the money that was refunded to the North Carolina Treasurer.  *See* Counterclaims ¶¶ 8–9.  This $2.1 million

---

[11] *Accord In re Citigroup Inc. Capital Accumulation Plan Litig.*, No. 00CV11921-NG, 2008 WL 3982065, at *18 (D. Mass. Aug 8, 2008) (applying Texas law and holding "money had and received is an equitable cause of action which 'belongs conceptually to the doctrine of unjust enrichment.' . . . The quasi-contractual claim is 'not premised on wrongdoing, but seeks to determine to which party, in equity, justice, and law, the money belongs, and it seeks to prevent unconscionable loss to the payor and unjust enrichment to the payee.'").

[12] While Longview Guernsey did not need to plead the existence of a connection between the North Carolina Agreement and Whitman & Co.'s conduct to adequately assert its Counterclaims, it, in fact, plausibly pled a connection.  Indeed, Longview Guernsey's Counterclaims assert, among other things, that (1) Whitman & Co. was involved in securing the investment from NCRS, (2) starting in 2011, the NC DOJ conducted an investigation related to the use of placement agents such as Whitman & Co., and (3) following the investigation, Longview Guernsey entered into the North Carolina Agreement requiring Longview Guernsey refund $10 million in Management Fees.  Counterclaims ¶¶ 39–43, 51–53.

overpayment to Whitman & Co *in light of* Longview Guernsey's required refund of $10 million

in Management Fees to NCRS that followed the NC DOJ's investigation into the use of entities

such as Whitman & Co. is the impoverishment alleged in the Counterclaims.  There is of course

an obvious and undeniable relationship between Longview Guernsey's overpaying Whitman &

Co. $2.1 million in Agency Fees based on Management Fees Longview Guernsey ultimately did

not receive (the impoverishment) and Whitman & Co.'s being overpaid that amount in Agency

Fees (the enrichment).

Whitman & Co.'s misunderstanding of the impoverishment Longview Guernsey actually

alleges also leads it to misapply the law.  Whitman & Co. points out that "a direct relationship

can be shown where the party seeking to recover the funds acted *for* the other party's benefit

(without any consideration in return), thereby making the defendant's retention of those funds

unjust."  Mot. at 10 (citing *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, No. CIV.A. 2129-VCN,

2007 WL 1954442, at *2 (Del. Ch. June 29, 2007)).  Whitman & Co. then concludes that

"Longview's decision to return management fees to NCRS did not in any way benefit Whitman."

*Id.*  But, the refund to NCRS is not the impoverishment alleged by Longview Guernsey; it is the

overpayment of Agency Fees to Whitman & Co. because Longview Guernsey had initially paid

Whitman & Co. based on Management Fees that it was required to refund.  The $2.1 million

overpayment most certainly benefited Whitman & Co.  Thus, there is a clear relationship

between the alleged impoverishment and enrichment here.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss should be denied.[13]

---

[13] In the event the Court is inclined to grant Whitman & Co.'s Motion to Dismiss it should do so without prejudice to Longview Guernsey's right to amend their pleading.  *See Fast Capital Mktg., LLC v. Fast Capital LLC*, No. CIV. A. H-08-2142, 2008 WL 5381309, at *18 (S.D. Tex. Dec. 24, 2008) (granting motion to dismiss claim for unjust

Dated:  October 2, 2015                          Respectfully submitted,


                                                 /s/ Patrick J. O'Toole, Jr.
                                                 Patrick J. O'Toole, Jr. (BBO # 559267)
                                                 WEIL, GOTSHAL & MANGES LLP
                                                 100 Federal Street, Floor 34
                                                 Boston, MA 02110
                                                 Tel.: (617) 772-8300
                                                 Fax: (617) 772-8333
                                                 Email: patrick.otoole@weil.com

                                                 David R. Fertig
                                                 Robert S. Levine
                                                 Robert W. Brown
                                                 WEIL GOTSHAL & MANGES LLP
                                                 767 Fifth Avenue
                                                 New York, New York 10153
                                                 Tel.: (212) 310-8000
                                                 Fax: (212) 310-8007
                                                 Email: david.fertig@weil.com
                                                 Email: robert.levine@weil.com
                                                 Email: robert.brown@weil.com

                                                 *Attorneys for Longview Partners (Guernsey)*
                                                 *Limited*

---

enrichment, yet allowing plaintiff to amend "to allege a breach of contract claim against [defendant] based on nonpayment of fees").

<u>**CERTIFICATE OF SERVICE**</u>

I, Patrick J. O'Toole, hereby certify that on the 2nd day of October, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification and that I served the foregoing by mail upon any counsel of record not receiving electronic notification:

William L. Prickett, Esq.
Anne V. Dunne, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800
wprickett@seyfarth.com
adunne@seyfarth.com

/s/ Patrick J. O'Toole, Jr.
Patrick J. O'Toole, Jr.